STEVE W. BERMAN (*pro hac vice* to be filed)
SEAN R. MATT (*pro hac vice* to be filed)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

Christopher R. Pitoun (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

*Counsel for Plaintiffs and Class*

[Additional Counsel listed on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ROBERTA BILBREY, JIMMY BANH, LAWRENCE GOLDMAN, MARK PEOPLES, JAMAL SAMAHA, GEORGE QUINLAN, GARY HANNA, CINDY ORTIZ, ALEXIS CHISARI, MICHAEL BRUMER, DAVE JAHSMAN, JOHN BARTHOLOMEW, VIMAL LAWRENCE, KAYCE KLEEHAMER, MARK KLEIN, BRIAN KLEIN, CHARLES DENARO, ADAM PRYOR, SRIKARTHIK SUBBARAO, DANIEL ALLAN, ERIC FADEN, HAMILTON HINES, AND KRISTEN GRATTON, on behalf of themselves and all others similarly situated, | Case No.: 2:19-cv-05984 RGK (ASx) **CLASS ACTION** **FIRST AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | |
| AMERICAN HONDA MOTOR CO., INC., a California corporation, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THIS ACTION ................................................................ 1

II.   JURISDICTION AND VENUE ......................................................... 4

III.  PARTIES ........................................................................................ 4

    A.   Plaintiffs ................................................................................ 4

        1.   Arizona Plaintiff .......................................................... 4

            a.   Roberta Bilbrey ................................................ 4

        2.   California Plaintiff ........................................................ 6

            a.   Jimmy Banh ..................................................... 6

        3.   Florida Plaintiff ........................................................... 9

            a.   Lawrence Goldman ........................................... 9

        4.   Georgia Plaintiff ........................................................ 10

            a.   Mark Peoples ................................................. 10

        5.   Illinois Plaintiffs ...................................................... 12

            a.   Jamal Samaha ................................................ 12

            b.   George Quinlan ............................................. 14

        6.   Massachusetts Plaintiff .............................................. 15

            a.   Gary Hanna .................................................... 15

        7.   Nevada Plaintiff ......................................................... 17

            a.   Cindy Ortiz .................................................... 17

        8.   New Jersey Plaintiff .................................................. 18

            a.   Alexis Chisari ................................................ 18

        9.   New York Plaintiffs ................................................... 20

            a.   Michael Brumer .............................................. 20

            b.   Dave Jahsman ............................................... 21

        10.  North Carolina Plaintiffs ......................................... 24

            a.   John Bartholomew .......................................... 24

        b.      Vimal Lawrence ..................................................... 25

    11.  Ohio Plaintiff ............................................................. 27

        a.      Kayce Kleehamer ................................................ 27

    12.  Oregon Plaintiffs ...................................................... 28

        a.      Mark Klein ........................................................... 28

        b.      Brian Klein ........................................................... 30

    13.  Pennsylvania Plaintiff ............................................. 32

        a.      Charles Denaro .................................................... 32

    14.  Tennessee Plaintiff ................................................... 34

        a.      Adam Pryor .......................................................... 34

    15.  Texas Plaintiffs ......................................................... 36

        a.      Srikarthik Subbarao ........................................... 36

        b.      Daniel Allan ......................................................... 38

    16.  Virginia Plaintiffs .................................................... 40

        a.      Eric Faden ............................................................ 40

        b.      Hamilton Hines ................................................... 42

        c.      Kristen Gratton ................................................... 44

B.    Defendants.......................................................................... 46

IV.  FACTUAL ALLEGATIONS................................................................ 48

A.    The Infotainment System ................................................. 48

B.    The Infotainment System Does Not Function as Represented ............. 50

C.    Defendant Knew of the Infotainment System Defect Before Plaintiffs Purchased and/or Leased the Vehicles......................................... 55

    1.    Pre-Release Design, Manufacturing, and Testing Data ............. 56

    2.    Warranty Claims Data ............................................. 57

    3.    Complaints Made Directly to Honda................................ 60

    4.    Complaints Collected by NHTSA ................................ 63

    5.    Customer Complaints on Internet Forums ....................... 67

6.    Acknowledgements of the Problem by Honda Representatives, Dealers, and Technicians ............................................................. 71

D.    Unfulfilled Promises Regarding Android Auto Compatibility .............. 73

E.    Defendant's Warranties and Response to the Defect ........................... 78

V.    CHOICE OF LAW ALLEGATIONS ...................................................... 79

VI.    CLASS ACTION ALLEGATIONS ........................................................ 80

VII.    CLAIMS ................................................................................................. 84

A.    Claims Brought on Behalf of the Nationwide Class ............................ 84

COUNT I BREACH OF EXPRESS WARRANTY— MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301, *ET SEQ.*) ............................. 84

COUNT II BREACH OF IMPLIED WARRANTY— MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301, *ET SEQ.*) ............................. 87

COUNT III VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) ..................... 89

COUNT IV VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) ................................. 92

COUNT V FRAUD BY CONCEALMENT (BASED ON CALIFORNIA LAW)... 95

COUNT VI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE § 2314) ................................... 98

B.    Claims Brought on Behalf of the California Class ............................... 99

COUNT VII VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*) ............................. 99

a.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have. ...................................... 101

ii.    Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another. ................................................................................ 101

iii.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised. ......................................... 101

iv.    Cal Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not. ......................................................... 101

COUNT VIII VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) ............................. 103

COUNT IX FRAUD BY CONCEALMENT (BASED ON CALIFORNIA LAW).........................................................................................................106

COUNT X BREACH OF EXPRESS WARRANTY  (BASED ON CALIFORNIA LAW) ...................................................................................109

COUNT XI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE § 2314)..................................111

    C.      Claims Brought on Behalf of the Arizona Class...................................113

COUNT XII VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV. STAT. § 44-1521 ET SEQ.) ......................................................113

COUNT XIII  BREACH OF EXPRESS WARRANTY  (ARIZ. REV. STAT. § 47-2313) ...............................................................................................114

COUNT XIV  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY  (ARIZ. REV. STAT. § 47-2314).........................116

    D.      Claims Brought on Behalf of the Florida Class ...................................117

COUNT XV VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE  PRACTICES ACT  (FLA. STAT. § 501.201, *ET SEQ.*)................117

COUNT XVI FRAUDULENT CONCEALMENT  (BASED ON FLORIDA LAW)........................................................................................................119

COUNT XVII BREACH OF EXPRESS WARRANTY (FLA. STAT. § 672.313) ...............................................................................................122

COUNT XVIII BREACH OF IMPLIED WARRANTY (FLA. STAT. § 672.314) ...............................................................................................124

COUNT XIX UNJUST ENRICHMENT (BASED ON FLORIDA LAW)............126

    E.      Claims Brought on Behalf of the Georgia Class...................................126

COUNT XX  VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT  (GA. CODE ANN. § 10-1-390 ET SEQ.) ....................126

COUNT XXI  BREACH OF EXPRESS WARRANTY (BASED ON GEORGIA LAW)........................................................................................128

COUNT XXII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (GA. CODE. ANN. §§ 11-2-314 AND 11-2A-212)........................................................................................................................130

    F.      Claims Brought on Behalf of the Illinois Class ...................................131

COUNT XXIII VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, *ET SEQ.* AND 720 ILCS 295/1A) .................................................................................131

COUNT XXIV BREACH OF EXPRESS WARRANTY  (BASED ON
    ILLINOIS LAW)............................................................................... 132

COUNT XXV BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY (810 ILCS §§ 5/2-314 AND 5/2A-212) ................. 133

    G.     Claims Brought on Behalf of the Massachusetts Class ...................... 134

COUNT XXVI VIOLATIONS OF THE MASSACHUSETTS  CONSUMER
    PROTECTION ACT (MASS. GEN. LAWS CH. 93A) .............................. 134

COUNT XXVII BREACH OF EXPRESS WARRANTY (MASS. GEN. LAWS
    CH. 106, § 2-313)............................................................................ 135

COUNT XXVIII BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (MASS. GEN. LAWS CH. 106, § 2-314) ............. 137

    H.     Claims Brought on Behalf of the Nevada Class ................................. 138

COUNT XXIX  VIOLATION OF THE NEVADA DECEPTIVE TRADE
    PRACTICES ACT (NEV. REV. STAT. § 598.0903, *ET SEQ*.) ................... 138

COUNT XXX BREACH OF EXPRESS WARRANTY  (BASED ON
    NEVADA LAW)............................................................................... 140

COUNT XXXI BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (BASED ON NEVADA LAW)............................. 142

    I.     Claims Brought on Behalf of the New Jersey Class ............................ 143

COUNT XXXII VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
    (N.J.S.A. § 56:8-1, *ET SEQ*.) ........................................................... 143

COUNT XXXIII BREACH OF EXPRESS WARRANTY  (BASED ON NEW
    JERSEY LAW) ................................................................................ 146

COUNT XXXIV BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY (N.J. STAT. ANN. § 12-314) ................................ 148

    J.     Claims Brought on Behalf of the New York Class............................... 149

COUNT XXXV VIOLATIONS OF NEW YORK GENERAL BUSINESS
    LAW § 349 (N.Y. GEN. BUS. LAW § 349) .................................................. 149

COUNT XXXVI FRAUDULENT CONCEALMENT (BASED ON NEW
    YORK LAW) ................................................................................... 152

COUNT XXXVII BREACH OF EXPRESS WARRANTY  (BASED ON NEW
    YORK LAW) ................................................................................... 155

COUNT XXXVIII BREACH OF IMPLIED WARRANTY (N.Y. U.C.C. LAW
    § 2-314) ......................................................................................... 157

    K.     Claims Brought on Behalf of the North Carolina Class ...................... 158

1

COUNT XXXIX VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. GEN. STAT. §75.1-1) ..... 158

2

3

COUNT XL BREACH OF EXPRESS WARRANTY  (BASED ON NORTH CAROLINA LAW).................................................................................... 161

4

COUNT XLI BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.C. GEN. STAT. § 25-2-314) ............................ 163

5

L.      Claims Brought on Behalf of the Ohio Class ..................................... 164

6

7

COUNT XLII VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT (OHIO REV. CODE §§ 1345.01, *ET SEQ.*) ......................................... 164

8

COUNT XLIII BREACH OF EXPRESS WARRANTY (OHIO REV. CODE § 1302.26).......................................................................................... 167

9

10

COUNT XLIV BREACH OF IMPLIED WARRANTY IN TORT (BASED ON OHIO LAW)........................................................................................ 169

11

M.      Claims Brought on Behalf of the Oregon Class ................................. 169

12

COUNT XLV VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (OR. REV. STAT. § 646.605 ET SEQ.) ........................ 169

13

COUNT XLVI BREACH OF EXPRESS WARRANTY ....................................... 171

14

15

COUNT XLVII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (ORS 72.3140) ........................................................ 172

16

N.      Claims Brought on Behalf of the Pennsylvania Class ........................ 173

17

18

COUNT XLVIII VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, *ET SEQ.*)................................................................................................ 173

19

COUNT XLIX BREACH OF EXPRESS WARRANTY  (BASED ON PENNSYLVANIA LAW)............................................................................ 176

20

21

COUNT L BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (PA. U.C.C.  §2314) ......................................................................... 178

22

O.      Claims Brought on Behalf of the Tennessee Class.............................. 179

23

COUNT LI VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 (TENN. CODE ANN. § 47-18-101, *ET SEQ.*) ..................... 179

24

25

COUNT LII BREACH OF EXPRESS WARRANTY (BASED ON TENNESSEE LAW) ................................................................................ 180

26

COUNT LIII BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (TENN. CODE §§ 47-2-314 AND 47-2A-212)..... 182

27

P.      Claims Brought on Behalf of the Texas Class.................................... 183

28

COUNT LIV VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT (TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*) ............................... 183

COUNT LV BREACH OF EXPRESS WARRANTY  (TEX. BUS. & COM. CODE § 2.313)........................................................................ 185

COUNT LVI BREACH OF IMPLIED WARRANTY  (BASED ON TEXAS LAW)............................................................................................ 188

Q.    Claims Brought on Behalf of the Virginia Class ................................. 189

COUNT LVII VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VA. CODE ANN. §§ 59.1-196, *ET SEQ.*) ............... 189

COUNT LVIII BREACH OF EXPRESS WARRANTY (VA. CODE ANN. § 8.2-313) .......................................................................... 190

COUNT LIX BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (VA. CODE ANN. § 8.2-314)................................ 192

PRAYER FOR RELIEF ............................................................................ 193

JURY DEMAND ..................................................................................... 193

All allegations made in this Complaint are based upon information and belief except those allegations that pertain to Plaintiffs, which are based on personal knowledge. Each allegation in this Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## I.    NATURE OF THIS ACTION

1.    Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased or leased a 2019 or 2020 Acura RDX vehicle (the "Vehicles" or "Class Vehicles") manufactured by defendant American Honda Motor Co., Inc. ("Honda" or "Defendant").

2.    The defect at issue in this case relates to what is known in the automobile industry as an "infotainment system." Such systems are designed to attract buyers who want to manage available technology while on the road, while minimizing distractions and maximizing safety.

3.    Defendant's previous-generation dual-screen infotainment system was controlled by a combination of direct touch, buttons, and a dial. However, when the third generation Acura RDX was released in the summer of 2018, the Vehicles were equipped with a new single high definition 10.2-inch display controlled by a touchpad.

4.    The screen is the gateway between the user and the Vehicle's safety, navigation, communications, entertainment features. The Vehicles' infotainment system allows the vehicle owner to operate the audio system (including the radio); use the GPS navigation technology; operate the backup camera; and operate a Bluetooth-enabled mobile telephone or other device.

5.    However, the Vehicles contain a defect that causes many of the Vehicles' features associated with the infotainment system (e.g., the navigation system, audio

system, backup camera, Bluetooth, Apple CarPlay) to malfunction.  As documented by widespread consumer complaints, this defect has plagued the infotainment system since its launch.  Defendant knew about the defect well before the Vehicles' launch.

6.    As a result of the defect, the Vehicles' infotainment system frequently freezes or crashes, rendering many of the Vehicles' features inoperable.  This poses a safety risk because when the system malfunctions, unexpected audio or video errors can cause the driver to become distracted.  Indeed, even under the best of conditions when infotainment-type systems are working properly, using them can create dangerous distractions.[1]  The chance of distraction is magnified when the systems do not work properly.  The defect can also render safety-related systems (including backup camera functions) to fail.

7.    Defendant has long known or should have known of the Vehicles' infotainment system problems from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendant, collected by the National Highway Transportation Safety Administration ("NHTSA"), and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources.  Yet Defendant failed to disclose and actively concealed the Vehicles' infotainment system defect from the public, and continues to manufacture, distribute, and sell the Vehicles without disclosing the defect.

8.    Under the Vehicles' New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal

---

[1] *See, e.g.*, Strayer, D. L., Cooper, J. M., Turrill, J., Coleman, J. R., & Hopman, R. J., Measuring Cognitive Distraction in the Automobile III: A Comparison of Ten 2015 In-Vehicle Information Systems. Washington, DC: AAA Foundation for Traffic Safety (2015) (found at https://pdfs.semanticscholar.org/7bc7/04c103b3eb5b84aa90d1509472bf222b862c.pdf).

use."[2] The infotainment systems in the defective Vehicles, which share identical infotainment system technology, are defective in material or workmanship under normal use.

9.     Honda has not found a solution to the infotainment system defect.  Instead, Honda tells Vehicle owners to wait for a forthcoming "software update" to fix the infotainment problems, or alternatively simply replaces defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement.  In fact, Honda's authorized dealerships are routinely discouraging Vehicle owners from bringing their Vehicles to the dealership because there is nothing the dealership can do to repair the defect.

10.     Additionally, the Vehicles were originally scheduled to launch with both Android Auto and Apple CarPlay connectivity as standard features.[3] Defendant distributed pre-release promotional materials to dealers touting the Vehicles' Android Auto compatibility, and those dealers in turn shared that information with consumers to promote the Vehicles.  But when the Vehicles went on sale in 2018, they came equipped with only Apple CarPlay. Defendant claimed at the time that Android Auto compatibility was temporarily delayed while Defendant worked to make Android Auto compatible with the Vehicles' new touchpad control scheme.  Defendant both directly and indirectly through its authorized dealers promised, and continues to promise, prospective buyers that Android Auto would be made available to all Vehicle owners

---

[2]A true and correct copy of the New Vehicle Limited Warranty is available at https://owners.acura.com/Documentum/Warranty/Handbooks/2019_Acura_Warranty_Basebook_BWL07532.pdf.

[3] Android Auto and Apple CarPlay are software application suites compatible with many manufacturers' infotainment systems, including the infotainment systems found in the defective Vehicles.  It enables an infotainment system to act as a controller for Android and Apple mobile phones, and provides access to applications on the phones (including music, messaging, maps, and podcasts, among others).

FIRST AMENDED COMPLAINT                    - 3 -
010811-12/1194995 V1

through a software update "soon."[4]  Yet more than a year has passed since the Vehicles were released and Vehicle owners and lessees are still waiting to receive the important feature Defendant promised.

11.    Plaintiffs bring this action for violation of relevant state consumer protection acts and for breach of express and implied warranties on behalf of a nationwide class and state classes of Vehicle lessees and owners.  Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## II.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendant are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant is a resident of Torrance, California, which is located in this district.

## III.    PARTIES

A.    **Plaintiffs**

      1.    **Arizona Plaintiff**

           a.    **Roberta Bilbrey**

14.    Plaintiff Roberta Bilbrey is an Arizona citizen residing in Phoenix, Arizona.

15.    Plaintiff Bilbrey purchased a new 2019 Acura RDX in October 2018 from Acura of Tempe in Tempe, Arizona.

---

[4] https://twitter.com/acura/status/1031742301675167745?lang=en (last accessed June 17, 2019) (Acura tweet dated November 21, 2018: "Once developed & certified, we'll roll out Android Auto to the RDX & make the update avail. To owners who've already purchased the '19 model").

16. Prior to purchasing the Vehicle, Plaintiff Bilbrey researched it first on Acura's website, and was intrigued by its sporty look and impressive sound system. Next, she researched the vehicle on NHTSA's website, and when she saw it did not have any recalls, she began seriously considering it. She then conducted general searches online for reviews on the Vehicle and she did not find any bad reviews. At the time she bought the Vehicle, Plaintiff Bilbrey had also considered and researched the BMW 3-series, Toyota Avalon and 4Runner, and Subaru Forrester and Outback. She eliminated the BMW and Subaru because they had mechanical issues. She would have chosen a Toyota but for the fact that it did not have Android Auto. Plaintiff Bilbrey ultimately bought the Acura RDX because of its technology (including the Android Auto feature), its affordability, its smaller engine, and Honda's reputation. At no point during her research and conversations with the dealership was Plaintiff Bilbrey informed by Defendant or anyone else about any defects associated with the infotainment system.

17. When purchasing the Vehicle at the dealership, the salesman told Plaintiff Bilbrey that Android Auto would be available for the Vehicle by the end of 2018 or beginning of 2019. This was an important feature for Plaintiff Bilbrey because she owns an Android phone and was seeking a car with Android Auto compatibility. The salesman also assured Plaintiff Bilbrey that the Vehicle would get an update to the infotainment system in the same timeframe that would affect certain features of the Vehicle, like collision avoidance and stability traction. To date, Android Auto and the other features are still not available on the Vehicle.

18. None of the representations received by Plaintiff Bilbrey contained any disclosure relating to any defect in the infotainment system. Nor did they disclose that Android Auto would not be available for nearly a year, if not longer. Had Defendant disclosed that the infotainment system in the Vehicle was defective preventing the full use of the Vehicle and posing safety risks, Plaintiff Bilbrey would not have purchased it, or would have paid less for the Vehicle. Similarly, had Defendant disclosed that

Android Auto would not be made available to purchasers for at least a year (and perhaps longer), Plaintiff Bilbrey would not have purchased it, or would have paid less for the Vehicle.

19.    Plaintiff Bilbrey began experiencing problems with the infotainment system almost immediately after purchasing her vehicle. The screen often displays "system error," a problem that has worsened since the most recent update; now, the screen simply goes black. Once, while Plaintiff Bilbrey was driving, the screen and the instrument cluster went blank. She tried to reboot the system and she drove five miles or so before the infotainment system came back on. She has also tried to connect her phone via the USB jack and the system does not recognize her phone.

20.    Additionally, Plaintiff Bilbrey owns an Android-based mobile phone, and Defendant's promise to release Android Auto "soon" was an important consideration for her in choosing to purchase the Vehicle.  It has been nearly a year since Plaintiff Bilbrey purchased the Vehicle and still no software update has been released containing Android Auto.  She has considered getting an iPhone in order to be able to use her phone in the Vehicle.

21.    Plaintiff Bilbrey has contacted Acura Tech Support about these issues, but received no answer other than to take the vehicle to the dealership. But when she did that, the dealership had no fix either.

22.    Plaintiff Bilbrey has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

      **2.**      **California Plaintiff**

             **a.**      **Jimmy Banh**

23.    Plaintiff Jimmy Banh is a California citizen residing in Fillmore, California.

24.    Plaintiff Banh purchased a new 2019 Acura RDX in September 2018 from Acura of Alhambra.

25.    Prior to purchasing the Vehicle, Plaintiff Banh researched the Vehicle and its infotainment system online.  Plaintiff Banh specifically recalls visiting Acura.com and reading that Android Auto was "coming soon" to the 2019 RDX.  Plaintiff Banh also read multiple professional reviews of the Vehicle, including those on edmunds.com and caranddriver.com. None of the websites contained any disclosure from Defendant regarding any defects associated with the infotainment system.

26.    Plaintiff Banh also visited the showrooms of multiple Acura dealerships to learn about the Vehicle and its infotainment system.  For example, Plaintiff Banh visited Gold Coast Acura in August 2018 and took a long test drive of the Vehicle.  During the visit, the salesperson told Plaintiff Banh that Android Auto was coming within a "few weeks or months." This was a very important feature for Plaintiff Banh because Plaintiff Banh owns an Android phone and was seeking a car with Android Auto compatibility.

27.    At the time, Plaintiff Banh was deciding between purchasing a 2019 Acura RDX and a competing model from Infiniti.  Plaintiff Banh chose to purchase the Acura specifically because of its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

28.    Plaintiff Banh visited Acura of Alhambra to test drive a second 2019 Acura RDX.  During the visit, the dealer reiterated that Android Auto was to be released for the 2019 RDX "soon," in a "few weeks to a month."  Based on this representation, Plaintiff Banh purchased the Vehicle.

29.    None of the representations received by Plaintiff Banh contained any disclosure relating to any defect in the infotainment system.  Nor did Defendant or Defendant's agents disclose that Android Auto would not be available for at least 12 months, if not longer.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, preventing the full use of the Vehicle and posing safety risks,

Plaintiff Banh would not have purchased it, or would have paid less for the Vehicle. Similarly, had Defendant disclosed that Android Auto would not be made available to purchasers for at least 12 months (and perhaps longer), Plaintiff Banh would not have purchased it, or would have paid less for the Vehicle.

30.    Plaintiff Banh began experiencing problems with the infotainment system within days of owning the Vehicle.  When he started the Vehicle, the infotainment system would often take up to a full minute for audio to begin playing.  Plaintiff Banh called his dealer to ask about this delay and was told it was "normal."

31.    The infotainment system also sporadically freezes, shuts off, and becomes inoperative while driving.  When using voice commands, Plaintiff Banh frequently encounters "unavailable" and "still loading" messages.

32.    Additionally, Plaintiff Banh owns an Android-based mobile phone, and Defendant's promise to release Android Auto "soon" was an important consideration for him in choosing to purchase the Vehicle.  It has been 12 months since Plaintiff Banh purchased the Vehicle and still no software update has been released containing Android Auto.  Plaintiff Banh has been forced to use an adaptor, USB stick, and MP3 player to listen to music.  But the Vehicle's infotainment system often has trouble identifying these sources during start up, which causes the screen to display a message that reads "initializing … not found."  The problem can sometimes be resolved by unplugging and then re-plugging the source.   But even then, the system's Bluetooth connection frequently drops during telephone calls.

33.    Plaintiff Banh has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.  Plaintiff sent a statutory notice letter on July 10, 2019.

### 3.    Florida Plaintiff

#### a.    Lawrence Goldman

34.    Plaintiff Lawrence Goldman is a Florida citizen residing in St. Augustine, Florida.

35.    Plaintiff Goldman purchased a new 2019 Acura RDX in September 2018 from Duval Acura in Jacksonville, Florida.

36.    Prior to purchasing the Vehicle, Plaintiff Goldman researched the Vehicle and its infotainment system online.  Plaintiff Goldman's online research included reviewing Acura's website, caranddriver.com, automobilemag.com, and roadandtrack.com, among other websites. None of the websites contained any disclosure from Defendant regarding any defects in the infotainment system.

37.    The Vehicle's infotainment system was a particularly important feature to Plaintiff Goldman's wife, who visited the dealership four times before purchasing the Vehicle to examine the infotainment system, make sure it was user-friendly, and learn how to use it.  During these visits, the salesperson showed Mrs. Goldman how to use the infotainment system and explained its features and functionality.  At no point did the salesperson disclose that the Vehicle's infotainment system was defective.

38.    Plaintiff Goldman selected and ultimately purchased the Vehicle in large part based on the features of the infotainment system, as represented by Defendant.

39.    Had Defendant disclosed that the infotainment system in the Vehicle suffered from a defect that would prevent the full use of its features and pose safety risks for Plaintiff Goldman and his family, Plaintiff Goldman would not have purchased it, or would have paid less for the Vehicle.

40.    Within weeks of purchasing the Vehicle, Plaintiff Goldman experienced numerous problems with the infotainment system.  The system takes an excessively long time to boot up, and is prone to freezing up, especially when a phone is connected to the Vehicle's USB port.  As a result, Plaintiff Goldman no longer uses the Vehicle's USB

port out of fear that it will cause the infotainment to crash again.  As a result, Plaintiff cannot utilize Google Maps or the Vehicle's Apple CarPlay functionality.

41.    When Plaintiff Goldman took the Vehicle to the dealer to address the infotainment system problems, he was told that "everyone is having issues," that "nothing can be done" until a new software update is released fixing the issues, and "it's in Acura's hands."

42.    In February 2019, Plaintiff Goldman called Acura's corporate office to inquire as to when a software update was to be released.  Plaintiff Goldman was told, "we're working on it" and expect it to be released "next month."  To date, Plaintiff Goldman has received no such software update that remedies the defect.

43.    Plaintiff Goldman has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**4.    Georgia Plaintiff**

      **a.    Mark Peoples**

44.    Plaintiff Mark Peoples is a Georgia citizen residing in Atlanta, Georgia.

45.    Plaintiff Peoples leased his 2019 Acura RDX in June 2018 from Ed Voyles Acura.

46.    Prior to leasing the Vehicle, Plaintiff Peoples researched the Vehicle and its infotainment system online.  Plaintiff Peoples specifically recalls visiting Acura's website and downloaded the press kit and related information about the 2019 Acura RDX, which outlined the changes from the prior RDX model and highlighted the new infotainment system.  Plaintiff Peoples also viewed first drive videos on YouTube and reviewed additional information about the 2019 Acura RDX from either Motor Trend or Edmunds. None of these sources of information disclosed any defects with the Vehicle's infotainment system.

47.    The sales representative at Ed Voyles Acura also demonstrated the infotainment system to Plaintiff Peoples prior to leasing the Vehicle but did not disclose any defects.

48.    The infotainment system in the 2019 Acura RDX was an important feature to Plaintiff Peoples because Georgia is a "hands free" state, and it is illegal to drive holding a mobile phone to your ear.  But, because of the defect at issue here, drivers are forced to use their phone manually as a result of the infotainment system's constant failures. Plaintiff Peoples considers the infotainment system defect to be a safety hazard.

49.    None of representations received by Plaintiff Peoples contained any disclosure from Defendant regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Peoples would not have leased it, or would have paid less for the Vehicle.

50.    Plaintiff Peoples experienced problems with the infotainment system soon after leasing the Vehicle.  For example, sometimes when he starts the Vehicle, instead of the music coming on immediately, a message is displayed on the infotainment system stating that it is "Initializing." It has taken as long as 30 minutes before the music begins. On other occasions upon starting his Vehicle, the infotainment system displays "can't read USB" and does not function.  Plaintiff Peoples has also experienced: (1) periodic "frozen" infotainment screen failures; (2) periodic "black" infotainment screen failures; and (3) Apple CarPlay failures.

51.    Because of the problems he was experiencing with the Vehicle's infotainment system, Plaintiff Peoples brought the Vehicle to Ed Voyles Acura sometime around June 2019.  During that visit to the dealership, Plaintiff Peoples spoke to an Acura technician who told him that this was a known issue and Acura is working on it.  Plaintiff Peoples also called the dealership's service manager sometime around the end of July 2019 to see what the dealership could do since none of the repair attempts were successful.  The service manager told Plaintiff Peoples that he would follow up

with Acura corporate and call him back. The service manager called Plaintiff Peoples the next day and told him that he had spoken to a regional Acura representative who indicated that a new software update was going to be released in two weeks and it should fix the problems.

52.     To date, Plaintiff Peoples' Acura RDX continues to experience the problems described above.

53.     Plaintiff Peoples has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**5.     Illinois Plaintiffs**

**a.     Jamal Samaha**

54.     Plaintiff Jamal Samaha is an Illinois citizen residing in Chicago, Illinois.

55.     Plaintiff Samaha purchased a certified pre-owned 2019 Acura RDX in May 2019 from Pauly Acura.

56.     Prior to purchasing the Vehicle, Plaintiff Samaha researched the Vehicle and its infotainment system online.  Plaintiff Samaha specifically recalls visiting Acura.com and reading that Android Auto would be coming "soon" for the 2019 Acura RDX.    Plaintiff also researched the Vehicle on cars.com, motortrend.com, cargurus.com, and cnet.com. None of these sources contained any disclosure from Defendant regarding any defects associated with the infotainment system.

57.     Plaintiff Samaha is a medical sales representative who drives frequently for work.  Accordingly, the Vehicle's infotainment system is a critical consideration in purchasing a vehicle because Plaintiff Samaha needs the vehicle to provide live traffic updates, real-time route guidance, and seamless hands-free operation of phone calls, text messages, and audio controls.

58.     Android Auto was a very important feature to Plaintiff Samaha because he owns an Android phone and wanted a car with Android Auto compatibility.   When

Plaintiff Samaha asked the dealership when the Android Auto software update would be released, the representative told him the "summer" 2019.

59.    Plaintiff Samaha chose to purchase the Vehicle specifically because of its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

60.    None of the representations received by Plaintiff Samaha contained any disclosure regarding any defect in the infotainment system.  Nor did they disclose that Android Auto would not be available for many months, if ever.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Samaha would not have purchased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available to purchasers for many months (if ever), Plaintiff Samaha would not have leased it, or would have paid less for the Vehicle.

61.    Plaintiff Samaha began experiencing problems with the Vehicle's infotainment system shortly after purchasing the Vehicle.  The system frequently lags.  And without Android Auto, Plaintiff Samaha is forced to rely on the Vehicles' navigation system, which does not provide adequate real time traffic and route updates, responds slowly to inputs, and often provides erroneous route guidance.

62.    When Plaintiff Samaha purchased the Vehicle, he did so based on Defendant's representation that a software update was forthcoming that would make the Vehicle Android Auto compatible.  It has been months since he purchased the Vehicle and there has been no such update.

63.    Plaintiff Samaha has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

1

      **b.**    **George Quinlan**

2       64.    Plaintiff George Quinlan is an Illinois citizen residing in Elmwood Park,

3   Illinois.

4       65.    Plaintiff Quinlan purchased a new 2019 Acura RDX in November 2018

5   from Ed Napleton Acura.

6       66.    Prior to purchasing the Vehicle, Plaintiff Quinlan researched the Vehicle

7   and its infotainment system online.   Plaintiff Quinlan specifically recalls visiting

8   Acura.com, caranddriver.com, acurazine.com, and other internet sources. None of the

9   websites contained any disclosure from Defendant regarding any defects in the

10  infotainment system.

11      67.    The Vehicle's infotainment system was a very important feature for

12  Plaintiff Quinlan. Plaintiff Quinlan selected and ultimately purchased the Vehicle in

13  large part because of the features of the infotainment system, as represented by

14  Defendant.

15      68.    None of representations received by Plaintiff Quinlan contained any

16  disclosure from Defendant regarding any defects in the infotainment system.   Had

17  Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff

18  Quinlan would not have purchased it, or would have paid less for the Vehicle

19      69.    Plaintiff Quinlan experienced problems with the infotainment system

20  within two days of owning the Vehicle. The screen periodically freezes or turns black.

21  The system is abnormally slow to boot up.  When making phone calls, the microphone

22  cuts out every three or four minutes.  Plaintiff Quinlan frequently experiences error

23  messages, such as "system function unavailable."  When listening to music through

24  Apple CarPlay, the music cuts in and out.  On one occasion, Plaintiff Quinlan turned off

25  the Vehicle but screen did not shut off, causing Plaintiff Quinlan to fear that his battery

26  would be fully drained by the morning.

27

28

70.    Plaintiff Quinlan considers the infotainment system defect to be a safety hazard.  Plaintiff Quinlan lives in a "hands free" area and it is illegal to drive holding a mobile phone to your ear.  But drivers are forced to use their phone manually as a result of the infotainment system's constant failures.  Additionally, as a result of the Vehicle's frequent "System Drive Mode Change Unavailable" error message, Plaintiff Quinlan does not know which drive mode the Vehicle is in (e.g., snow, comfort, sport, sport plus), which can be dangerous in inclement weather.

71.    Plaintiff Quinlan has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**6.    Massachusetts Plaintiff**

   **a.    Gary Hanna**

72.    Plaintiff Gary Hanna is a citizen of Massachusetts residing in North Grafton, Massachusetts.

73.    Plaintiff Hanna purchased a 2019 Acura RDX in November 2018 from Acura of Auburn.

74.    Prior to purchasing the Vehicle, Plaintiff Hanna researched the Vehicle and its infotainment system online, including on Defendant's website. None of the websites contained any disclosure from Defendant regarding any defects associated with the infotainment system.

75.    Because Plaintiff Hanna owns an Apple phone, he was particularly interested in the Vehicle's Apple CarPlay feature.

76.    Plaintiff Hanna selected and ultimately purchased the Vehicle in large part based on the features of the infotainment system, as represented by Defendant.

77.    None of the representations received by Plaintiff Hanna contained any disclosure relating to any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle suffered from a defect that prevents the full

use of its features, Plaintiff Hanna would not have purchased it, or would have paid less for the Vehicle.

78.    Plaintiff Hanna started experiencing various problems with the infotainment system within days of purchasing the Vehicle.  The infotainment system frequently freezes or crashes, rendering many of the Vehicle's features inoperable. The system is also slow to boot up, and the display screen is known to simply go black during use.  The Apple CarPlay feature frequently disconnects, and when Plaintiff Hanna makes phone calls, the call recipient often cannot hear Plaintiff Hanna's voice.

79.    In approximately May 2019, Plaintiff Hanna's infotainment system froze and became unresponsive.  Plaintiff Hanna called his dealer and spoke with a service representative.  She was not surprised that the system had frozen and was immediately familiar with the problem.  The representative instructed Plaintiff Hanna how to disconnect and reconnect the Vehicle's battery to reboot the system. Because Plaintiff Hanna's infotainment system has now become frozen on four different occasions, Plaintiff Hanna carries a wrench in the Vehicle at all times.

80.    Plaintiff Hanna has also taken the Vehicle back to the dealer to address the infotainment system problems.  The dealer updated the software to their newest version but the infotainment system continues to malfunction.

81.    Plaintiff Hanna considers the infotainment system defect to be a safety hazard.  Massachusetts is a "hands free" state and it is illegal to drive holding a mobile phone to your ear.  But drivers are forced to use their phone manually as a result of the infotainment system's constant failures.

82.    Plaintiff Hanna has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 7.    Nevada Plaintiff

#### a.    Cindy Ortiz

83.    Plaintiff Cindy Ortiz is a citizen of Nevada residing in Las Vegas, Nevada.

84.    Plaintiff Ortiz purchased a 2019 Acura RDX in March 2019 from Cardinale Way Acura.

85.    Plaintiff Ortiz selected and ultimately purchased the Vehicle in substantial part based on the features of the infotainment system, as represented by Defendant and Defendant's authorized dealer.

86.    None of the representations received by Plaintiff Ortiz contained any disclosure regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle suffered from a defect that prevents the full use of its features, Plaintiff Ortiz would not have purchased it, or would have paid less for the Vehicle.

87.    Plaintiff Ortiz started experiencing various problems with the infotainment system within days of purchasing the Vehicle.  The infotainment system screen periodically turns blue and crashes, rendering many of the Vehicle's features inoperable.  The system also does not recognize voice commands properly.  And on two separate occasions, the infotainment system remained on after the Vehicle was turned off, thereby draining the Vehicle's battery and rendering the Vehicle unable to start.

88.    Plaintiff Ortiz has taken the Vehicle back to the dealership on four occasions to address the infotainment system issues, but nothing has been fixed.  The service representative told Plaintiff Ortiz that Defendant is aware of the problems and s "working on" a software fix, but that Defendant is refusing to release replacement parts for the infotainment system.

89.    When Plaintiff Ortiz called Defendant directly through its toll-free 800 telephone number, she was told by Defendant there was no fix currently available but

FIRST AMENDED COMPLAINT

010811-12/1194995 V1

- 17 -

1  that Defendant is "working on it."   To date, Plaintiff Ortiz continues to experience
2  regular infotainment system malfunctions.

3       90.    Plaintiff Ortiz has suffered an ascertainable loss as a result of Defendant's
4  wrongful conduct associated with the infotainment system including, but not limited to,
5  overpayment and diminished value of the Vehicle.

6       **8.    New Jersey Plaintiff**

7            **a.    Alexis Chisari**

8       91.    Plaintiff Alexis Chisari is a citizen of New Jersey residing in Secaucus,
9  New Jersey.

10      92.    Plaintiff Chisari leased a new 2019 Acura RDX in March 2019 from Open
11  Road Acura.

12      93.    Prior to leasing the Vehicle, Plaintiff Chisari researched the Vehicle and
13  its infotainment system online.  Plaintiff Chisari specifically recalls visiting Acura.com
14  and reading that Android Auto was an available feature for the 2019 Acura RDX.
15  Plaintiff also reviewed the 2018 New York Auto Show booklet, Kelly Bluebook, and
16  other internet sources. None of these sources contained any disclosure from Defendant
17  regarding any defects associated with the infotainment system.

18      94.    Plaintiff Chisari recalls reading customer complaints posted on internet
19  forums about problems with the infotainment system.  Plaintiff Chisari visited Park
20  Avenue Acura and told the representative that she had read complaints online about the
21  infotainment system.  The representative assured her that he had not seen or experienced
22  of any issues with the infotainment system.

23      95.    Thereafter, Plaintiff Chisari visited Open Road Acura, where she asked the
24  salesperson if the Vehicle was equipped with Android Auto.  This was a very important
25  feature to Plaintiff Chisari because she owns an Android phone and wanted a car with
26  Android Auto compatibility.   The salesperson told her that the software update was
27  coming "soon." Plaintiff Chisari subsequently found Defendant's tweet online similarly

28

promising that a software update was coming soon to make the Vehicles Android Auto compatible.

96.    Plaintiff Chisari chose to lease the Vehicle specifically because of its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

97.    None of the representations received by Plaintiff Chisari contained any disclosure regarding any defect in the infotainment system.  Nor did they disclose that Android Auto would not be available for many months, if ever.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Chisari would not have leased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available to purchasers for many months (if ever), Plaintiff Chisari would not have leased it, or would have paid less for the Vehicle.

98.    Plaintiff Chisari began experiencing problems with the Vehicle's infotainment system shortly after leasing the Vehicle.  The screen frequently freezes, experiences delays, and displays error messages like "audio unavailable."  When she listens to music through the system's USB port, the music frequently pauses and skips songs. The infotainment system controls on the steering wheel also frequently become unresponsive.  And when Plaintiff attempts to connect her iPod to the infotainment system via USB, the screen displays "initializing" but a connection is never made.

99.    When Plaintiff Chisari previously called her dealer about these issues, it advised her that she could bring the Vehicle in but "probably nothing could be done" until a software fix is released.

100.   Plaintiff Chisari's infotainment system's display also remains in "day" setting even at night.  Plaintiff took the Vehicle to the dealer to address this issue.  But the supposed repair did not resolve it.

101.   When Plaintiff Chisari leased the Vehicle, she did so based on Defendant's representation that the infotainment system functioned and that a software update was forthcoming that would make the Vehicle Android Auto compatible.  It has been many months since she leased the Vehicle and there has been no such update.

102.   Plaintiff Chisari has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

### 9.   New York Plaintiffs

#### a.   Michael Brumer

103.   Plaintiff Michael Brumer is a citizen of New York residing in Bayside, New York.

104.   Plaintiff Brumer leased a 2019 Acura RDX in April 2019 from Paragon Acura.

105.   Prior to leasing the Vehicle, Plaintiff Brumer researched the Vehicle online.  He reviewed the Vehicle's features on acura.com and watched various car reviews on YouTube.com. None of the websites contained any disclosure from Defendant regarding any defects associated with the infotainment system.

106.   Because Plaintiff Brumer has an Apple phone, he was particularly interested in the Vehicle's Apple CarPlay feature.

107.   Plaintiff Brumer selected and ultimately leased the Vehicle, in part, because of the features of the infotainment system, as represented by Defendant.

108.   None of the representations received by Plaintiff Brumer contained any disclosure regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment system was defective, Plaintiff Brumer would not have leased it, or would have paid less for the Vehicle

109.   Plaintiff Brumer started experiencing problems with the infotainment system within days of leasing the Vehicle.  For instance, the Apple CarPlay constantly

cuts out, and the heads-up display turn by turn directions are frequently out of sync with the primary navigation display.  When Plaintiff Brumer makes phone calls, the call recipient often cannot hear Plaintiff Brumer's voice.  And Plaintiff Brumer has found that if he turns the Vehicle off when the infotainment system is playing satellite radio, when he restarts the Vehicle it displays a "system function error."  When Plaintiff Brumer is listening to Sirius radio, the toggle on the steering wheel does not change stations.  To correct the situation, he either has to restart the Vehicle or use the display/touchpad to select two favorite Sirius stations.  The toggle switch then works and allows him to change stations.

110.    On May 29, 2019, Plaintiff Brumer took the Vehicle back to Paragon Acura and spoke with a service representative who told him that there was nothing the dealer could do about the Apple CarPlay problems, but that the dealer "might" be able to fix the phone and audio problems.  After spending two hours working on the Vehicle, the dealer returned it to Plaintiff Brumer.  However, the "fix" did not work; the phone and audio problems returned two days later.

111.    Plaintiff Brumer has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

### b.    Dave Jahsman

112.    Plaintiff Dave Jahsman is a citizen of New York residing in Cazenovia, New York.

113.    Plaintiff Jahsman leased a 2019 Acura RDX in June 2018 from Crest Acura.

114.    Prior to leasing the Vehicle, Plaintiff Jahsman researched the Vehicle and its infotainment system online.  Plaintiff Jahsman's online research included reviewing Acura's website, caranddriver.com, and Edmunds.com, among other websites. None of

the websites contained any disclosure from Defendant regarding any defects in the infotainment system.

115.    Plaintiff Jahsman selected and ultimately leased the Vehicle in substantial part based on the features of the infotainment system, as represented by Defendant and Defendant's authorized dealer.

116.    None of the representations received by Plaintiff Jahsman contained any disclosure regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle suffered from a defect that prevents the full use of its features, Plaintiff Jahsman would not have leased it.

117.    Plaintiff Jahsman started experiencing various problems with the infotainment system within days of leasing the Vehicle.  The system frequently experiences delays, displays messages like "initializing," "can't read USB," and "AM loading."  Moreover, the Navigation system often gives directions that contradict the Heads-up Display.

118.    Plaintiff Jahsman returned the Vehicle to the dealership many times to address issues with the infotainment system.  On most of these visits, the dealership told him there was nothing it could do to fix the issue and instructed him to wait for a software update from Defendant.

119.    Frustrated by the numerous infotainment system problems, Plaintiff Jahsman dropped the Vehicle off at the service department on June 4, 2019 and told the service representative that he did not want the Vehicle back until the infotainment system defects were fixed.  When the dealership called Plaintiff Jahsman on June 15th and told him that they were still waiting for Defendant to release a software update, Plaintiff demanded that the dealership replace the defective Vehicle.  The dealership denied Plaintiff Jahsman's request for a replacement Vehicle and told Plaintiff Jahsman to call Defendant's corporate office directly.

120.   Plaintiff Jahsman had already tried to contact Defendant directly through its toll-free 800 telephone number on multiple occasions.  For instance, on or about July 18, 2018, Plaintiff Jahsman called and the customer service representative asked him questions about issues he was encountering, assigned a case number, and said Defendant would get back in touch with him.  But Defendant never followed up with Plaintiff Jahsman.  So, Plaintiff called again, gave the customer service representative the same information about issues he was encountering, and was told that a representative would be contacting him.  Again, nobody from Defendant returned Plaintiff Jahsman's call.

121.   Plaintiff Jahsman subsequently received a letter stating that Defendant had tried to reach him but had the wrong phone number so his case had been closed. On July 31, 2018, Plaintiff Jahsman sent Defendant a letter setting forth his correct contact information and documenting many defects.  Plaintiff Jahsman also called customer service to inform them to expect the letter.  Defendant did not respond to the letter.

122.   On August 17, 2018, Plaintiff Jahsman again called Defendant's customer service department, who said the case had been reopened and someone would get back to him within two business days.  No one ever called.

123.   On November 9, 2018 Plaintiff Jahsman called Defendant for an update and to report numerous additional problems. After multiple calls without a call back Plaintiff finally reached a Honda representative on November 14. Plaintiff followed up with an email summary and photographic evidence that was requested.  Once again Defendant did not respond. To date, Plaintiff Jahsman continues to experience regular infotainment system malfunctions.

124.   On June 17, 2019, Plaintiff Jahsman called Defendant again to demand a replacement Vehicle.  Plaintiff Jahsman was assigned a case number.  The following day, a case manager called Plaintiff Jahsman to inform him that there is no solution for the problems and Crest Acura had declined Plaintiff Jahsman's request for a replacement Vehicle and recommended that Plaintiff wait for a software update to be

released to fix the Vehicle's infotainment system problems.  The case manager could not state when the software update would be released or even promise that the software update would fix all of the infotainment system's problems.  The case manager also declined Plaintiff's request that Defendant document its current inability to fix the infotainment system's issues in writing.

125.  Plaintiff Jahsman has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**10.  North Carolina Plaintiffs**

**a.  John Bartholomew**

126.  Plaintiff John Bartholomew is a citizen of North Carolina residing in Apex, North Carolina.

127.  Plaintiff Batholomew leased a 2019 Acura RDX in September 2018 from Leith Acura.

128.  Prior to leasing the Vehicle, Plaintiff Bartholomew was particularly interested in the Vehicle's infotainment system and Apple CarPlay feature.  Plaintiff Bartholomew discussed the infotainment system's features at length with the dealer's internet sales manager.

129.  Plaintiff Bartholomew selected and ultimately leased the Vehicle in substantial part based on the features of the infotainment system, as represented by Defendant and Defendant's authorized dealer.

130.  None of the representations received by Plaintiff Bartholomew contained any disclosure regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle suffered from a defect that prevents the full use of its features, Plaintiff Bartholomew would not have leased it, or would have paid less for the Vehicle.

131.   Plaintiff Bartholomew started experiencing various problems with the infotainment system within days of leasing the Vehicle.  The infotainment system frequently freezes or crashes, rendering many of the Vehicle's features inoperable. The system is also slow to boot up, and the display screen is known to simply go black during use.   The infotainment system's screen frequently displays errors, such as "radio unavailable."

132.   Plaintiff Bartholomew estimates that he has stopped by his dealership about 20 times to address issues with the infotainment system.  On most of these visits, the dealership told him there was nothing it could do to fix the issue and instructed him to wait for a software update from Defendant.  One time, the service department kept the Vehicle for three days and replaced a part.  But the infotainment system continues to malfunction regularly.

133.   When Plaintiff Bartholomew called the Defendant directly through its toll-free 800 telephone number, he was told that there was a software update "coming" that would fix problems.  To date, Plaintiff Bartholomew continues to experience regular infotainment system malfunctions.

134.   Plaintiff Bartholomew has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**b.    Vimal Lawrence**

135.   Plaintiff Vimal Lawrence is a citizen of North Carolina residing in Greensboro, North Carolina.

136.   Plaintiff Lawrence leased a 2019 Acura RDX in October 2018 from Crown Acura Greensboro.

137.   Prior to leasing the Vehicle, Plaintiff Lawrence researched the Vehicle and its infotainment system online. He reviewed the Vehicle's features on acura.com and watched various car reviews on YouTube.com. None of the websites contained any

disclosure from Defendant regarding any defects associated with the infotainment system.

138.   The Vehicle's infotainment system was a very important feature for Plaintiff Lawrence. Plaintiff Lawrence required an infotainment system with easy interfacing and no issues controlling navigation, audio, and telephone functions.

139.   Plaintiff Lawrence owns an Android phone and wanted a car with Android Auto compatibility. When Plaintiff Lawrence leased the Vehicle, the dealer assured Plaintiff Lawrence that Android Auto would be made available "by the end of the year [2018]."  Plaintiff Lawrence also saw Defendant's twitter feed stating that Android Auto would be released "soon."

140.   Plaintiff Lawrence chose to lease the Vehicle because of its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

141.   None of the representations received by Plaintiff Lawrence contained any disclosure relating to any defect in the infotainment system.  Nor did they disclose that Android Auto would not be available for many months, if ever.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Lawrence would not have leased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available for many months (if ever), Plaintiff Lawrence would not have leased it, or would have paid less for the Vehicle.

142.  Plaintiff Lawrence began experiencing problems with the Vehicle's infotainment system shortly after he leased the Vehicle.  Occasionally, when Plaintiff Lawrence starts the Vehicle, the infotainment system stalls on a "loading" screen. Usually the "loading" screen will disappear if Plaintiff Lawrence shuts the Vehicle off, waits 10 seconds, and restarts the Vehicle.  The infotainment system also often fails to connect with Plaintiff Lawrence's phone via Bluetooth.  When Plaintiff Lawrence

attempts to change drive modes, the system displays an "option is not available" error message. And occasionally the navigation system fails to recognize inputs from the touchpad.

143. When Plaintiff Lawrence leased the Vehicle, he did so based on Defendant's representation that a software update was forthcoming that would make the Vehicle Android Auto compatible. It has been many months since he purchased the Vehicle and there has been no such update.

144. Plaintiff Lawrence has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**11.    Ohio Plaintiff**

     **a.    Kayce Kleehamer**

145. Plaintiff Kayce Kleehamer is an Ohio citizen residing in Centerville, Ohio.

146. Plaintiff Kleehamer purchased a new 2019 Acura RDX in June 2019 from Superior Acura of Dayton in Dayton, Ohio.

147. Prior to purchasing the Vehicle, Plaintiff Kleehamer researched its safety ratings, gas mileage, and ratings from J.D. Byrider and other sources. At no point during her research and conversations with the dealership was Plaintiff Kleehamer informed by Defendant or anyone else about any defects associated with the infotainment system.

148. When purchasing her vehicle at the dealership, Plaintiff Kleehamer asked about Android Auto for the Vehicle. The salesperson told her it was "coming soon." This was an important feature for Plaintiff Kleehamer because she owns an Android phone and was seeking a car with Android Auto compatibility.

149. None of the representations received by Plaintiff Kleehamer contained any disclosure relating to any defect in the infotainment system. Nor did they disclose that Android Auto would not be available for at least three months, if not longer. Had Defendant disclosed that the infotainment system in the Vehicle was defective,

preventing the full use of the Vehicle and posing safety risks, Plaintiff Kleehamer would not have purchased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available to purchasers for at least three months (and perhaps longer), Plaintiff Kleehamer would not have purchased it, or would have paid less for the Vehicle.

150.   Plaintiff Kleehamer began experiencing problems with her Vehicle's infotainment system within two or three weeks of purchase. When she starts the Vehicle, the infotainment system screen stays black for a minute or more before launching.  On other occasions, the screen shows that it is "loading" for a minute or longer before launching. Plaintiff Kleehamer's Sirius Radio also cuts out suddenly for a minute or so for no explainable reason.

151.   Additionally, Plaintiff Kleehamer owns an Android-based mobile phone, and Defendant's promise to release Android Auto "soon" was an important consideration for her in choosing to purchase the Vehicle.  It has been three months since Plaintiff Kleehamer purchased the Vehicle and still no software update has been released containing Android Auto.  Plaintiff Kleehamer has been forced to plug her phone in via USB to listen to music. This connection method renders the infotainment screen useless for purposes of using her phone while in the vehicle.

152.   Plaintiff Kleehamer has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**12.   Oregon Plaintiffs**

      **a.   Mark Klein**

153.   Plaintiff Mark Klein is a citizen of Oregon residing in Portland, Oregon.

154.   Plaintiff Klein purchased a 2019 Acura RDX in August 2018 from Ron Tonkin Acura located in Portland, Oregon.

155.   Prior to purchasing the Vehicle, Plaintiff Klein reviewed Acura's press release about the 2019 Acura RDX, which discussed the benefits of the updated infotainment system, including that it would have Apple Carplay.  When Plaintiff Klein visited Ron Tonkin Acura to view the Vehicle, the salesperson reiterated the benefits of the new infotainment system (including Apple Carplay), and the salesperson demonstrated the infotainment system, and showed Plaintiff Klein the port to plug in his iPhone.  Plaintiff Klein also read several reviews (e.g., Consumer Reports, Car and Driver, and Edmunds) about the Vehicle prior to purchasing it.

156.   None of the information he reviewed (including the Acura press release) or the information received from salesperson at Ron Tonkin Acura contained any disclosure from Defendant relating to any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Klein would not have purchased it, or would have paid less for the Vehicle.

157.   The Vehicle's infotainment system was a very important feature for Plaintiff Klein because he is an information technology professional and was attracted to the Vehicle's high-tech offerings.

158.   Plaintiff Klein chose to purchase the Vehicle based in significant part on its infotainment system and because Defendant represented that the Vehicle was Apple CarPlay compatible.

159.   Soon after purchasing the Vehicle, Plaintiff Klein began experiencing problems with the infotainment system.  For example, CarPlay began to fail routinely such that it would simply stop functioning during each use.  Also, the infotainment system takes at least 20 to 30 seconds to boot-up when the Vehicle is started, and often takes more than one minute.  Another problem with the infotainment system is that the screen will repeatedly flash between night mode and day mode while driving.  This "flashing" screen creates a dangerous and distracting annoyance to the driver, resulting in a very real safety concern.  The infotainment screen also will repeatedly flash a "Drive

mode change unavailable" warning even though the Vehicle's engine and mechanical components appear to be driving normally.

160.   Plaintiff Klein took his Vehicle to Ron Tonkin Acura in December 2018 because of these problems with the infotainment system. The dealership's service technician told Plaintiff Klein that an over-the-air update would be issued soon by Acura to remedy all the defects.  While Acura did issue an update in January 2019, the problems described above continued and the performance of the Vehicle's infotainment system did not improve.  Because of the continuing infotainment system problems, Plaintiff Klein again took the Vehicle to Ron Tonkin Acura in July, 2019.  Again, the dealership's service technician told Plaintiff Klein that Acura will be releasing a new software update soon to address all of the problems. The update was released in August, 2019; however, the infotainment system problems were not fixed.  Plaintiff Klein also contacted Acura customer service department at least three separate times to inquire about the repeated infotainment system defects he was experiencing with his Vehicle. During one of these communications, Acura customer service told Plaintiff Klein to stop using Apple CarPlay in order to correct the distracting and dangerous "flashing" infotainment system screen.  Plaintiff Klein followed these instructions; however, the "flashing" screen persisted.  Acura customer service also repeatedly told Plaintiff Klein that soon-to-be-released software updates would address all of his concerns.   To date, none of the software updates have corrected the defects described above.

161.   Plaintiff Klein has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

### b.   Brian Klein

162.   Plaintiff Brian Klein is an Oregon citizen residing in Salem, Oregon.

163.   Plaintiff Klein purchased a new 2019 Acura RDX in January 2019 from Acura of Salem in Salem, Oregon.

164.   Prior to purchasing the Vehicle, Plaintiff Klein researched the Vehicle online at Acura's website.  Defendant's website did not disclose any defects in the infotainment system.

165.   The Vehicle's infotainment system, specifically Apple Car Play, was a particularly important feature to Plaintiff Klein, who was considering other Acura models. He told the dealer when he was shopping that the vehicle must have Apple Car Play or it was a deal breaker for him. The salesperson showed Plaintiff Klein how to use the infotainment system and explained there was a learning curve to it.  At no point in his research and dealership visit, however, did Defendant or anyone else disclose to Plaintiff Klein that the Vehicle's infotainment system was defective.

166.   Plaintiff Klein selected and ultimately purchased the Vehicle in large part based on the features of the infotainment system, as represented by Defendant and Defendant's agents.

167.   Had Defendant disclosed that the infotainment system in the Vehicle suffered from a defect that would prevent the full use of its features and pose safety risks for Plaintiff Klein, he would not have purchased it, or would have paid less for the Vehicle.

168.   About five months after purchasing the Vehicle, Plaintiff Klein began experiencing numerous problems with the infotainment system.  After he plugs his phone in to Apple Car Play, the system boots up, but then (about ten to twenty seconds in) the music stops, at which point the screen also goes blank and states the iPhone is disconnected. The system will continue to restart and then go off again until Plaintiff Klein finally turns the car off and resets the system. Rebooting requires Plaintiff Klein to shut the car off, open and close his door, wait thirty seconds, push to start the car, and hope it will work. To date, this problem has been happening with increasing frequency. The Vehicle also has a navigation defect: the directions displayed between the gauges and the "heads up" display do not match those displayed on the infotainment screen.

Finally, there are several defects with the infotainment screen itself: (1) the screen constantly dims from day to night mode; (2) when swiping on the screen the action is delayed; (3) when music is playing it will go from loud to soft unexplainably; and (4) the warning "drive mode unavailable" will often flash unexpectedly on the screen. All of these bugs are very distracting for Plaintiff Klein while driving.

169.    Plaintiff Klein has repeatedly taken his Vehicle into the dealership and emailed or called the dealership and Defendant about these issues. Both have been dismissive of his claims. Neither Defendant nor the dealership have told him that a fix is coming.

170.    Plaintiff Klein has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**13.    Pennsylvania Plaintiff**

      **a.    Charles Denaro**

171.    Plaintiff Charles Denaro is a citizen of Pennsylvania residing in Glen Mills, Pennsylvania.

172.    Plaintiff Denaro purchased a 2019 Acura RDX in March 2019 from Piazza Acura.

173.    Prior to purchasing the Vehicle, Plaintiff Denaro researched the Vehicle and its infotainment system online, including on acura.com. None of the websites contained any disclosure from Defendant regarding any defects associated with the infotainment system.

174.    The Vehicle's infotainment system was a very important feature for Plaintiff Denaro.

175.    Plaintiff Denaro owns an Android phone and wanted a car with Android Auto compatibility.  The dealer assured Plaintiff that Android Auto would be made

available soon.   Plaintiff Denaro subsequently called Defendant and was told that Android Auto would be released in the summer 2019.

176.   Plaintiff Denaro chose to purchase the Vehicle based in significant part on its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

177.   None of the representations received by Plaintiff Denaro contained any disclosure from Defendant regarding any defect in the infotainment system.  Nor did they disclose that Android Auto would not be available for many months, if ever.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Denaro would not have purchased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available for many months (if ever), Plaintiff Denaro would not have purchased it, or would have paid less for the Vehicle.

178.   Plaintiff Denaro began experiencing problems with the Vehicle's infotainment system within weeks of owning the Vehicle.   The system frequently experiences delays, displays messages like "initializing" and "still downloading," and refuses to disconnect phone calls. The system frequently fails to work when using the USB port to play music through an iPod. Plaintiff Denaro's navigation screen always turns on in day mode at night and has to be manually switched to night mode each time.

179.   When Plaintiff Denaro approached his dealer about these problems, he was told to contact Acura technical support.  Plaintiff Denaro subsequently called Acura technical support, but they failed to fix the problems.

180.   When Plaintiff Denaro purchased the Vehicle, he did so based on Defendant's representation that a software update was forthcoming that would make the Vehicle Android Auto compatible.  It has been many months since he purchased the Vehicle and there has been no such update.

181.   Plaintiff Denaro has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**14.    Tennessee Plaintiff**

        **a.    Adam Pryor**

182.   Plaintiff Adam Pryor is a citizen of Tennessee residing in Hermitage, Tennessee.

183.   Plaintiff Pryor leased a 2019 Acura RDX in January 2019 from Gary Force Acura.

184.   Prior to leasing the Vehicle, Plaintiff Pryor researched the Vehicle and its infotainment system online. He reviewed the Vehicle's features on acura.com and watched various car reviews on YouTube.com. None of the websites contained any disclosure from Defendant regarding any defects associated with the infotainment system.

185.   The Vehicle's infotainment system was a very important feature for Plaintiff Pryor.

186.   Plaintiff Pryor owns an Android phone and wanted a car with Android Auto compatibility. Plaintiff Pryor researched the Vehicle's infotainment system on Defendant's website and recalls that it stated that the Vehicle features both Apple CarPlay and Android Auto compatibility. Moreover, when Plaintiff Pryor leased the Vehicle, the dealer assured Plaintiff Pryor that Android Auto would be made available in a "couple months."

187.   Plaintiff Pryor chose to lease the Vehicle because of its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

188.   None of the representations received by Plaintiff Pryor contained any disclosure relating to any defect in the infotainment system.  Nor did they disclose that

FIRST AMENDED COMPLAINT
010811-12/1194995 V1

- 34 -

Android Auto would not be available for many months, if ever.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Pryor would not have leased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available to purchasers for many months (if ever), Plaintiff Pryor would not have purchased it, or would have paid less for the Vehicle.

189.  Plaintiff Pryor began experiencing problems with the Vehicle's infotainment system the first day he leased the Vehicle.  The infotainment system frequently freezes or crashes, rendering many of the Vehicle's features inoperable. The system is also slow to boot up, and the display screen is known to simply go black during use.  The backup camera is slow to appear on the screen when the Vehicle is put into reverse, and often freezes rendering the backup camera non-operable.  When an iPod is plugged into the infotainment system via USB port, often the audio system plays a loud high-pitched noise.

190.  Plaintiff Pryor considers the infotainment system defect to be a safety concern, because its various malfunctions distract the driver.

191.  Plaintiff Pryor returned to the dealership a few days after leasing his vehicle to have the dealer address the infotainment system malfunctions.  The service manager told Plaintiff Pryor that he had seen such malfunctions before in other Vehicles. The service manager phoned Honda corporate and was told it is a "known issue" and that Defendant was "working on it." The service manager kept the Vehicle overnight to "reset" the system.  Plaintiff Pryor subsequently visited the help page on Defendant's website and located instructions to "reset" the infotainment system himself.  However, despite multiple attempts to fix the infotainment system by resetting, Plaintiff Pryor continues to experience frequent malfunctions.

192.  When Plaintiff Pryor purchased the Vehicle, he did so based on Defendant's representation that a software update was forthcoming that would make the

Vehicle Android Auto compatible.  It has been many months since he purchased the Vehicle and there has been no such update.

193.   Plaintiff Pryor has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**15.    Texas Plaintiffs**

      **a.    Srikarthik Subbarao**

194.   Plaintiff Srikarthik Subbarao is a citizen of Texas residing in Little Elm, Texas.

195.   Plaintiff Subbarao leased a 2019 Acura RDX in February 2019 from Vandergriff Acura.

196.   Prior to leasing the Vehicle, Plaintiff Subbarao researched the Vehicle and its infotainment system online, including acura.com, Edmunds.com, Carfax.com, and internet forums. None of the websites contained any disclosure from Defendant relating to any defects in the infotainment system.

197.   However, Plaintiff Subbarao found several complaints posted by Vehicle owners about the infotainment system malfunctioning.

198.   The Vehicle's infotainment system was a very important feature for Plaintiff Subbarao.  Accordingly, Plaintiff Subbarao asked the sales manager at Vandergriff Acura about the online complaints.  The sales manager assured Plaintiff Subbarao that there was nothing wrong with the Vehicle's infotainment system.

199.   Plaintiff Subbarao owns an Android phone and wanted a car with Android Auto compatibility. Before Plaintiff Subbarao leased the Vehicle, the dealer assured Plaintiff that Android Auto would be made available in "February 2019."

200.   Plaintiff Subbarao chose to lease the Vehicle in significant part because of its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

201.    None of the representations received by Plaintiff Subbarao contained any disclosure regarding any defect in the infotainment system.  Nor did they disclose that Android Auto would not be available for many months, if ever.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Subbarao would not have leased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available to purchasers for many months (if ever), Plaintiff Subbarao would not have purchased it, or would have paid less for the Vehicle.

202.    Plaintiff Subbarao began experiencing problems with the Vehicle's infotainment system the day he took delivery of the Vehicle.  The system regularly experiences delays, and encounters connection errors.  And when Plaintiff Subbarao attempts to connect a device to the infotainment system via USB, the screen displays "initializing" but a connection is often never made.  To correct the issue, Plaintiff Subbarao must remove the USB and plug it back in, or if that does not work, reset the entire system.  The navigation system also frequently loses his position and provides erroneous driving directions.

203.    Plaintiff Subbarao considers the infotainment system defect to pose a safety concern, because its various malfunctions distract the driver.

204.    Plaintiff Subbarao dropped the Vehicle off at McDavid Acura in May 2019 to address the infotainment system problems.  When Plaintiff Subbarao picked the Vehicle back up four days later, the system continued to malfunction.  Plaintiff Subbarao returned back to the dealership and had the technician drive the Vehicle to confirm that none of the issues had been resolved.  Two weeks later, Plaintiff Subbarao got a phone call from the service manager, who said that he had contacted Defendant and that it is "working on" a fix for the infotainment system defect, and that a software defect is "coming."

205. When Plaintiff Subbarao leased the Vehicle, he did so based on Defendant's representation that a software update was forthcoming that would make the Vehicle Android Auto compatible.  It has been many months since he purchased the Vehicle and there has been no such update.

206. Plaintiff Subbarao has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

### b.    Daniel Allan

186. Plaintiff Daniel Allan is a citizen of New Mexico residing in Las Cruces, New Mexico.

187. Plaintiff Allan purchased a 2019 Acura RDX from David McDavid Acura located in Austin, Texas in August, 2018.

188. Prior to purchasing the Vehicle, Plaintiff Allan reviewed Acura's website and reviewed the Vehicle's features.  Plaintiff Allan owned a 2014 Acura RDX prior to purchasing the 2019 Acura RDX.  The display screen and related functions in the 2014 Acura RDX worked quite well and seamlessly functioned via Bluetooth with his phone.  Plaintiff Allan expected the same performance from the 2019 Acura RDX's infotainment system. While visiting an Acura dealer prior to purchasing the Vehicle, Plaintiff Allan test drove a 2019 Acura RDX.  During the test drive, the salesperson touted and reviewed the new infotainment system with Plaintiff Allan including the new touch pad control.

189. A functioning infotainment system was very important to Plaintiff Allan when deciding to purchase the 2019 Acura RDX because he maintained a Sirius XM subscription which he intended to transfer to his new Vehicle and because he often receives and makes phones calls while driving, thus routinely making use of the hands-free and Bluetooth functions.

190.    None of the representations received by Plaintiff Allan or the information he reviewed about the Vehicle prior to his purchase contained any disclosure regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle suffered from a defect that prevents the full use of its features, Plaintiff Allan would not have purchased it, or would have paid less for the Vehicle.

191.    Plaintiff Allan began experiencing problems with the Vehicle's infotainment system in September 2018, only two or three weeks following the purchase. Plaintiff Allan has experienced the following problems with his Vehicle's infotainment system: (1) the infotainment screen goes black; (2) the infotainment screen freezes; (3) when starting the Vehicle, the infotainment system/screen is very slow to boot up often taking 2 to 5 minutes to boot up especially when the last audio source was XM/Sirius channel.  During this delay the screen displays a spinning circle and he cannot access any audio source (AM, FM, Sirius/XM); (4) the navigation function does not work unless it is linked to Apple CarPlay which then depletes Plaintiff Allan's data plan; (5) when he switches from Sirius/XM to FM, the infotainment system automatically switches back to Sirius/XM; (6) his phone will not function via Bluetooth; and (7) the infotainment system's frequent caller list function does not work.

192.    Because of the problems he routinely experienced with his Vehicle's infotainment system, Plaintiff Allan took his Vehicle to Fox Acura in El Paso.  The service technician at the dealership suggested that Plaintiff Allan use Apple CarPlay to access his frequent caller list since the infotainment system is compatible with Apple CarPlay.  However, when the dealership's technician attempted to connect Plaintiff Allan's phone to the infotainment system though Apple CarPlay, it did not work. Plaintiff Allan took his Vehicle back to Fox Acura on April 23, 2019 because of the "FM unavailable" message that the infotainment system routinely generated.  The dealership salesperson told Plaintiff Allan other Vehicle owners are having this problem and that while a system reboot will correct the problem for a few hours, the problem

reoccurs.    The salesperson then rebooted the infotainment system, but the "FM unavailable" message returned the next day.   In May, 2019, Plaintiff Allan returned to Fox Acura because of the "FM unavailable" message.   The dealership performed a reboot; however, the message returned within a few weeks. Plaintiff Allan returned to the Acura dealership a third time in August, 2019 because of the poorly functioning infotainment system.   The Acura dealership performed another reboot.   Once again, however, the problems returned soon thereafter.

193.   Plaintiff Allan also has called Acura customer service about the defective infotainment system. This first call was on or around April 22, 2019 to find out what could be done to address the "FM unavailable" issue.  Acura customer care told Plaintiff Allan that someone from Acura would call him back on this issue, but no one from Acura called Plaintiff Allan.  Then on August 2, 2019, Plaintiff Allan again reached out to Acura customer service to discuss the problems with the infotainment system.   The Acura customer care representative told Plaintiff Allan that a software update will be issued soon although she could not tell Plaintiff Allan when that would occur or what problems it would address.

194.   Plaintiff Allan has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**16.    Virginia Plaintiffs**

      **a.    Eric Faden**

207.   Plaintiff Eric Faden is a Virginia citizen residing in Roanoke, Virginia.

208.   Plaintiff Faden purchased a 2019 Acura RDX in February 2019 from Duncan Acura.

209.   Prior to purchasing the Vehicle, Plaintiff Faden was considering competing vehicles from BMW, Toyota, Ford, and Dodge.

210.   Plaintiff Faden researched the Vehicle and its infotainment system online — including acura.com — before deciding to purchase the Vehicle. None of the websites contained any disclosure from Defendant relating to any defects in the infotainment system.

211.   The Vehicle's infotainment system was a very important feature for Plaintiff Faden.

212.   Plaintiff Faden owns an Android phone and wanted a car with Android Auto compatibility. Before Plaintiff Faden purchased the Vehicle, the dealer assured Plaintiff that Android Auto would be made available "soon."  Plaintiff Faden received similar assurances from Defendant on twitter and on internet forums where Vehicle owners' shared what Defendant and Defendant's dealers had told them.  However, after Plaintiff purchased the Vehicle, he noticed that references to Android Auto began disappearing from Defendant's website and marketing materials.

213.   Plaintiff Faden chose to purchase the Vehicle because of its infotainment system and because Defendant represented that the Vehicle would soon feature Android Auto.

214.   None of the representations received by Plaintiff Faden contained any disclosure regarding any defect in the infotainment system.  Nor did they disclose that Android Auto would not be available for many months, if ever.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Faden would not have purchased it, or would have paid less for the Vehicle.  Similarly, had Defendant disclosed that Android Auto would not be made available for many months (if ever), Plaintiff Faden would not have purchased it, or would have paid less for the Vehicle.

215.   Plaintiff Faden began experiencing problems with the Vehicle's infotainment system three days after purchasing the Vehicle.  The screen frequently

freezes, experiences delays, and encounters connection errors.  The navigation system frequently crashes, loses his position, and provides erroneous driving directions.

216.   Plaintiff Faden considers the infotainment system defect to be a safety concern, because its various malfunctions distract the driver.

217.   Plaintiff Faden visited the help page on Defendant's website and found instructions to "reset" the infotainment system.  Plaintiff Faden followed the instructions but continues to experience frequent malfunctions.

218.   When Plaintiff Faden purchased the Vehicle, he did so based on Defendant's representation that a software update was forthcoming that would make the Vehicle Android Auto compatible.  It has been many months since he purchased the Vehicle and there has been no such update.

219.   Plaintiff Faden has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

### b.    Hamilton Hines

220.   Plaintiff Hamilton Hines is a citizen of Virginia residing in McLean, Virginia.

221.   Plaintiff Hines purchased a 2019 Acura RDX in February 2019 from Pohanka Acura.

222.   Prior to purchasing the Vehicle, Plaintiff Hines researched the Vehicle and its infotainment system online.  Plaintiff Hines recalls visiting Acura.com, cars.usnews.com, jdpower.com, cars.com, and other internet sources. None of the websites contained any disclosure from Defendant regarding any defects in the infotainment system.

223.   The Vehicle's infotainment system was the "main reason" Plaintiff Hines decided to purchase the Vehicle.  Plaintiff Hines is a travelling salesman and believed

that the Vehicle's advanced infotainment system features would assist Plaintiff Hines conduct work on the road.

224.   None of representations received by Plaintiff Hines contained any disclosure regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment system in the Vehicle was defective, Plaintiff Hines would not have purchased it, or would have paid less for the Vehicle.

225.   Plaintiff Hines experienced problems with the infotainment system within the first couple days after owning the Vehicle. The system periodically freezes — rendering all controls inoperable — and the screen randomly turns black.  The system is abnormally slow to boot up.  Navigation is sufficiently slow that Plaintiff Hines no longer uses it. The backup camera is abnormally slow to appear on the screen when the Vehicle is put into reverse.  When Plaintiff Hines makes phone calls, the call recipient often cannot hear Plaintiff Hine's voice.  When listening to music through a device attached to the USB port, the audio frequently skips and disconnects.

226.   Plaintiff Hines' dealer subsequently replaced the infotainment system under warranty, but the problems persist.  According to the service record, Defendant is aware of the issue and working on a software fix, but that no fix is currently available.

227.   Plaintiff Hines has contacted Defendant on many occasions regarding the infotainment system defect and Defendant refuses to buy the Vehicle back from Plaintiff Hines pursuant to Virginia's lemon law.  According to a letter Plaintiff Hines received in response to his lemon law request, "American Honda Motor Co. recognizes that comfort and convenience features can be part of the ownership experience and is currently developing a product update to address the infotainment contention you had experienced.  Your servicing dealer ship will make you aware once the update is made available."

228.    Plaintiff Hines has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

c.    **Kristen Gratton**

229.    Plaintiff Kristen Gratton is a citizen of Virginia residing in Alexandria, Virginia.

230.    Plaintiff Gratton purchased a 2019 Acura RDX from Rosenthal Acura in May 2019.

231.    Prior to purchasing the Vehicle, Plaintiff Gratton reviewed Acura's website and reviewed the Vehicle's features. The website touted the fact that the infotainment system included Apple CarPlay and had Bluetooth connectivity.  Plaintiff Gratton also reviewed information about the Vehicle on the Kelly Blue Book website.

232.    During her visit to the Acura dealer and prior to purchasing the Vehicle, the salesperson demonstrated the infotainment system in the Vehicle for Plaintiff Gratton. Plaintiff Gratton asked the salesperson whether the infotainment system worked with the Waze directions and traffic app through Apple CarPlay and was told that it does.

233.    Plaintiff Gratton selected and ultimately purchased the Vehicle in substantial part based on the features offered by the infotainment system, as represented by Defendant and Defendant's authorized dealer.  The features of the infotainment system, as represented by Defendant and Defendant's agents, were extremely important to Plaintiff Gratton because she has a 2.5-hour daily commute and wanted the ability to link the Vehicle's infotainment system directly to her iPhone through Apple CarPlay so she could listen to her music and utilize her directions apps at her convenience.

234.    None of the representations received by Plaintiff Gratton or the information she reviewed about the Vehicle prior to her purchase contained any disclosure regarding any defects in the infotainment system.  Had Defendant disclosed that the infotainment

system in the Vehicle suffered from a defect that prevents the full use of its features, Plaintiff Gratton would not have purchased it, or would have paid less for the Vehicle.

235.    Plaintiff Gratton began experiencing problems with the Vehicle's infotainment system the day after she drove it home from the Acura dealer.  While her iPhone was plugged into the infotainment system and was playing music via Apple CarPlay, the Vehicle's sound system made a loud beep, then the infotainment system froze and no audio could be heard.  The entire infotainment system simply stopped responding and no audio came out.  Additional problems with the infotainment system arose soon thereafter. For instance, Plaintiff Gratton has experienced the screen going black, and the screen freezing (including when using the navigation system).  The system also boots up very slowly, which causes the backup camera to load video so slowly as to make the safety system dangerous.  Additionally, the Bluetooth phone function does not work consistently, and when Plaintiff Gratton uses the Apple CarPlay phone feature, the call recipient often cannot hear her voice.  Indeed, Apple CarPlay routinely freezes and becomes unresponsive whenever Plaintiff Gratton plays music or uses navigation apps like Waze.  Plaintiff Gratton believes that the back-up camera and the infotainment system screen freezes while the Vehicle is in motion constitutes safety hazards.

236.    Because of these problems, Plaintiff Gratton took her Vehicle to Radley Acura for service in mid-June 2019.  When she checked her Vehicle in for the service appointment and was lining up a loaner vehicle, the dealership's service technician asked Plaintiff Gratton if the service appointment was related to problems with the Vehicle's infotainment system.  When Plaintiff Gratton responded in the affirmative, the service technician told her there was nothing the dealership could do to repair the infotainment system at this time, that the dealership's only recourse would be to perform a "hard reset" of the system, and that a "hard reset" is not a permanent solution.  The technician told Plaintiff Graton that Acura corporate is aware of the problems and is

"working on it."  About a week later, Plaintiff Gratton took her Vehicle to a different Acura dealer (Rosenthal Acura) to address the problems with the infotainment system. Rosenthal Acura performed a "hard reset" of the system.  Within two hours of leaving Rosenthal Acura, however, the problems with the infotainment system returned.

237.   Plaintiff Gratton also has called Acura customer service approximately two dozen times to seek a solution to the infotainment system defects.   During these communications, Acura customer service simply told Plaintiff Gratton that "a software update is coming."  When Plaintiff Gratton inquired as to what the "update" will address and when it will be issued, Acura customer service responded that the release would be available during the summer of 2019, but that there was no information available regarding which problems the "update" will address.

238.  To date, Plaintiff Gratton continues to routinely experience the problems described above with her Vehicle's infotainment system.

239.  Plaintiff Gratton has suffered an ascertainable loss as a result of Defendant's wrongful conduct associated with the infotainment system including, but not limited to, overpayment and diminished value of the Vehicle.

**B.    Defendants**

240.  Defendant American Honda Motor Company, Inc. is a California corporation, and is a North American subsidiary of Honda Motor Company, Ltd. Defendant is headquartered in Torrance, California and maintains central operations in California.

241.  Defendant first opened in the United States as a storefront selling Honda motorcycles in Los Angeles, California in 1959. By 1968, Defendant had sold its millionth motorcycle. Starting in 1969, Defendant began marketing and selling automobiles, with its operations still centered in California.

242.  By 1991, Defendant added production to its U.S. operations and oversaw all aspects of production, including research and development, from its headquarters in

California. As a center point of Honda's global operations, Defendant made nearly $2 billion in capital investments in California and exported hundreds of millions of dollars in vehicles and other technology from its exclusive port facilities on the West Coast, at Port Hueneme, California, in 2015.

243.   In 1986, Defendant created its first luxury name marque, Acura. By 2006, Defendant established research and development facilities dedicated solely to its vehicles in Torrance, California with related facilities dedicated solely to the creation of "future Honda and Acura automobile and mobility design concepts" in downtown Los Angeles, California.

244.   From its headquarters in Torrance, Defendant combines product sales, service, and coordinating functions for Honda in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Acura-brand automobiles. The decisions regarding the marketing and sale of the infotainment system, and decisions regarding the disclosure or non-disclosure of the defect were in whole or substantial part made by Defendant in California and were purposefully emanated by Defendant in California.

245.   In this Complaint, when reference is made to any act, deed or conduct of Defendant or Honda, the allegation means that Defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees, or repre-sentatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

246.   Honda sells cars in part via communications that it authorized its dealers to make about Honda vehicles, including the defective Vehicles discussed herein.  This includes authorizing Honda dealers to distribute brochures and other marketing and promotional material.  Honda, through its authorized dealers, has and had the opportunity to disclose all material facts relating to the defective Vehicles.

## IV.   FACTUAL ALLEGATIONS

### A.   The Infotainment System

247.   The Acura RDX is a perennial top seller in the premium compact SUV segment with cumulative U.S. sales exceeding 370,000 units since its debut in 2006.

248.   The current, third generation of the Acura RDX was released in June 2018 (2019 model year).

249.   According to Defendant's website, the "all-new RDX" was redesigned to be "more luxurious," featuring a "driver-focused cabin and groundbreaking technology."[5]

250.   These Vehicles are equipped with a suite of advanced new technologies, including an all-new infotainment system featuring an Android-based operating system, a high-mounted 10.2-inch full-HD display, and a touchpad ("Acura True Touchpad Interface") with the first-ever application of absolute-positioning in a driving environment.   According to Honda, absolute positioning departs from traditional touchpad interfaces by using one-to-one mapping to deliver a more intuitive and driver-oriented user experience.   This system replaced the infotainment system from the second generation RDX, which featured two screens controlled by a combination of direct touch, buttons, and a dial.

_____

[5] https://www.acura.com/2019/rdx (last accessed June 20, 2019).

251.  The following photographs depicts the display and touchpad as they appear to a driver:



252.  The centerpiece of the Vehicles' infotainment system is a 10.2-inch screen located above the center stack, depicted in the photograph below:



1    253.   Unlike a more traditional touchscreen-controlled system, the Vehicles'

2    infotainment system is controlled by a touchpad that is located to a driver's right side,

3    immediately below the console. The touchpad is divided into two sections, the smaller

4    of which controls a shortcut menu that is located to the right of the main display screen:



16    254.   As previously discussed, the infotainment system plays a critical role in

17    modern vehicles.   It is the gateway between the user and the Vehicle's safety,

18    navigation, communications, entertainment features.   Among other operations, the

19    Vehicles' infotainment system allows the Vehicle owner to operate the audio systems

20    in the Vehicle; use the GPS navigation technology; operate the backup camera; and

21    operate a Bluetooth-enabled mobile telephone or other device.

22    **B.    The Infotainment System Does Not Function as Represented**

23    255.   The Vehicles' infotainment system contains a defect that causes many of

24    the Vehicles' features (e.g., the navigation system, audio system, backup camera) to

25    frequently malfunction.

26    256.   Because the Vehicles' infotainment systems are responsible for a wide

27    variety of vehicle functions (including navigation, audio, video, hands-free phone,

28

backup cameras, etc.), the defect causes a wide range of problems for the Vehicles. For instance, the defect can cause the entire center console to freeze or lag while the Vehicle is in motion, thereby posing a substantial distraction to the driver. The defect is also known to cause the infotainment system to remain on even when the Vehicle is turned off, thereby draining the Vehicle's battery and rendering the Vehicle inoperable.

257. These problems pose a safety risk because when the system malfunctions, unexpected audio or video — or a blank or blue infotainment screen — can cause the driver to become distracted. Indeed, even under the best of conditions when infotainment-type systems are working properly, using them can create dangerous distractions.

258. It is the practice of car manufacturers to monitor online complaints. Beginning almost immediately after the Vehicles' launch is June 2018, countless complaints[6] have been posted online regarding the infotainment problems:

- "Just bought our new 2019 RDX less than 24 hours ago and am having an issue with the infotainment system. We were driving on the highway using spotify through apple carplay and the system suddenly disconnected from carplay. When we went to reconnect it display a message stating it could not perform that function while in motion...okay so we pulled over shut the car off and noticed the system did not power off. Turned the car back on and tried other functions, both the radio and statelite radio displayed 'could not connect' or 'tuner unavailable'. *We've called the dealership and they are going to check it out in the morning, in the meantime I am not sure what to do as it is sitting in my driveway with the infotainment system powered on, hopefully it won't the battery overnight.*" (Complaint posted on acurazine.com dated June 20, 2018).

- "It was nice while it lasted for about 2 days and 100 miles of usage, then it died. Started the car and the screen just has a pulsing white circle, tried everything I could think of but nothing worked. The backup camera is still functional but every aspect of infotainment is

---

[6] All typographical errors contained in the consumer complaints quoted in this Complaint are from the original. All emphasis is added.

unavailable. *I will call the dealer in the morning and I'm a little concerned as I have seen quite a few threads about infotainment issues for a vehicle that has only been out for ~1 month.*" (Complaint posted on acurazine.com dated July 4, 2018).

- "I had my system freeze a week ago, and it stayed on even after stopping the car. I would up pulling the audio fuse, under the dash in the larger fuse box, 3rd fuse from upper right. *I took it in to service, of course they found nothing. Asked about a reset option, they didn't know of one.*" (Complaint posted on acurazine.com dated July 31, 2018).

- "*Almost EVERY single day I have an issue with this infotainment system. Radio unavailable. Tuner not found, Messages shriek. Yesterday it was 'Device not connected' which I have had before*. It's the one that makes me laugh because I get it and yet my phone has connected and is streaming music by Bluetooth. Never had a phone call come through while I've had this message so perhaps that it what it is referring to. Usually I can get rid of it but shutting down the car, opening the door, closing it, and then restarting. But not yesterday. Message was there for a full 25 minutes while driving to an appointment…." (Complaint posted on acurazine.com dated October 27, 2018).

- "Then it was the Infotainment system. It regularly locks up when trying to change stations regardless of the fact that Acura has sent over the air updates to try to address the issue. *Having worked in technology for over 30 years, I can tell you that in my opinion, Acura skimped on the processor and ram that is badly needed to make this system work the way it should*." (Complaint posted on Edmunds.com dated March 22, 2019).

- "*Everything went black including the instrument cluster. Then it started flashing the whole way home*. Shutting off and restarting didn't help. Already had the infotainment system replaced and it still doesn't work right, among all the other issues I've had. I'm at my breaking point with this POS." (Complaint posted on acurazine.com dated March 12, 2019).

- "*It seems like each day I get a new infotainment error.* Now my tuner wouldn't change from FM to XM and multiple times the navigation route failed. If next weeks update doesn't fix all these issues I'm

reaching my breaking point with this car" (Complaint posted on acurazine.com dated December 8, 2018).

- "Car Play navigation started periodically freezing up and became frequently slow to launch or didn't launch at all (giving an 'unavailable' notice) or *crashing after a loud sound at unpredictable and awkward times*. Sometimes it would start up again the next day, sometimes simultaneously disabled the Acura nav and radio at the same time, annoying on long stretches of highway." (Complaint posted on Edmunds.com dated February 8, 2019).

- "We've only had this car about three weeks, and so far this is the first new car purchase I've ever considered trying to find my way out of…. *The infotainment system in this car is garbage. It crashes from time to time, the Nav system is antequated…. The radio will just say 'loading' on startup sometimes. Requiring the power to by cycled. Sound is very inconsistent from source to source. Strange digital pops when talking over BT.  Everyday it's something new*. All of this is while using Apple Car Play or an Android phone paired of BT. With some research, I've found many reporting the same issues. To top it off, dealers are helpless as there's no way for them to fixed this. This isn't new technology. Just new in this car, and regardless of price point it's shameful that it operates so poorly." (Complaint posted on Edmunds.com dated November 3, 2018).

- "***Don't buy this vehicle!!*** I have had more problems with this car than any other previous vehicle. The navigation system seems to do it's own thing from time to time. I recently tried to use Apple Carplay which was working for about 4 days before it completely stopped working and messed up the system. I turned off the vehicle which left my screen on. I rebooted the system and now my radio will not even work." (Complaint posted on Edmunds.com dated May 17, 2019).

- "*My screen freezes and fails all the time*. To protect myself I started videoing all the noises and issues." (Complaint posted on Edmunds.com dated March 27, 2019).

259.    Notably, these Complaints demonstrate that the infotainment system defect manifests almost immediately upon purchasing the Vehicle:

- "Enjoyed it while I had it, but *after driving less than 25 miles and owning for under 3 hours*, the Infotainment center flashed between

the home screen and 'touchpad is not available.'  After restarting, the Infotainment center screen was completely dead.  Volume/power button on console didn't work.  Now in a loaner while dealer diagnoses the problem.  Highly disappointed with Acura quality control as this is not an isolated incident." (Complaint posted on Edmunds.com dated July 25, 2018).

- "Wanted to add my experience with this - *the day after we bought my wife's RDX* we were driving using carplay/apple podcast and heard a small *zap* noise and the audio portion of the infotainment stopped working. We could still use the car's nav system, but every audio source said unavailabe. We couldn't turn the radio off either - pulled over, stopped, opened doors and the screen still stayed on. Got done with our drive and disconnected and reconnected negative battery terminal and that did the trick to turn it off and get it turned back on and working again." (Complaint posted on acurazine.com dated September 6, 2018).

- "I've had the vehicle only a couple of weeks and I'm already regretting my purchase.  It is fun to drive, but I've had several issues.  *On my second day*, Apple CarPlay wouldn't work.  Then after pairing my iPhone X to the Bluetooth, my contacts were not available. (Complaint posted on Edmunds.com dated September 2, 2018).

- "This happened to me yesterday after *just 1 week* with our new RDX. The dealership didn't know anything about this issue. Surprise!" (Complaint posted on acurazine.com dated November 30, 2018).

260.    According to many consumers, the infotainment system defect renders the Vehicles unsafe to drive.

- "I traded in my leased 2016 RDX (which I absolutely loved) for the 2019 after seeing all the cool new features, especially the new Info system.  I hate to say it but I have had nothing but problems since driving it off the lot back in March.  *The whole screen freezes on a regular basis....  It's very distracting as its totally unexpected.  I usually try to play with it trying to get it to work again...NOT SAFE.*..as I am not watching the road,  The last time I took it to the dealer they showed me how to reset it by pulling the fuse out and plugging it back in.  It's crazy that this is the solution for a $40,000 car. I tried contacting Acura and they said all I can do is keep bringing it in

to the dealer until there is a recall...which isn't guaranteed.  Really?" (Complaint posted on Edmunds.com dated May 21, 2019).

- "I have had the Infotainment issues on the 2019 RDX since I took delivery July 3rd. ***It's been highly distracting and at times dangerous***.... So they are replacing the whole infotainment system supposedly tomorrow. But it leads me to think, Honda/Acura has taken almost 9 months to rectify the problem. Shouldn't we as Owners or Lessees qualify for some amount of consideration or compensation as an important part of the car has not worked for 8-9 months? Thoughts re a Class Action suit?" (Complaint posted on acurazine.com dated March 11, 2019)

- "I had nothing on computer screen. It's now working again but frequent messages of LOADING which takes several minutes or FUNCTION NOT NOT AVAILABLE with steering wheel controls. Often I drive miles with no access to screen as it spins. …. Car been in shop several days. ***I'm afraid to drive too far from home for fear screen will go out again*** …. (Complaint posted on Edmunds.com dated November 4, 2018)."

- "Technology systems experience random failures, at various times sometimes when driving. Functionality can sometimes be restored by stopping the car and restarting the engine. Sometimes the vehicle must sit for hours with engine off to restore functionality. System failures include dashboard lighting, vehicle display screen, and heads-up display. Numerious dealer visits have provided no solution till today when I was informed that that this is a software issue and that a software vehicle update is required. However this is not available, has not been available for around since November 2018 when I bought my car and no timeline has been offered for this update. ***I regard this as a safety and driver distraction issue that can lead to collisions. Acura needs to place a higher priority on this issue in order to provide owners with a safer driving environment.***" (Complaint posted on Edmunds.com dated February 14, 2019).

## C.    Defendant Knew of the Infotainment System Defect Before Plaintiffs Purchased and/or Leased the Vehicles

261.    Defendant has long known or should have known of the Vehicles' infotainment system problems from multiple sources. These sources include pre-release

design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendant, collected by NHTSA, and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources.  Yet, Defendant failed to disclose and actively concealed the Vehicles' infotainment system defect from the public, and continued to manufacture, distribute, and sell the Vehicles. Defendant continues to fail to disclose and actively conceals this defect from consumers prior to purchase or lease.

### 1.    Pre-Release Design, Manufacturing, and Testing Data

262.   It is standard practice for automobile manufacturers to engage in extensive pre-launch testing of its vehicles.  Honda did so for the defective Vehicles and tested the operation of the infotainment systems prior to selling the defective Vehicles.  Given the immediacy and frequency of consumer complaints about the infotainment system contained in the defective Vehicles, it is apparent that Honda knew about the defect before the defective Vehicles were sold or leased.

263.   Moreover, during the decision-making process of switching from the previous-generation's dual-screen infotainment system controlled by a combination of direct touch, buttons, and a dial to the new single high definition 10.2-inch display system controlled by a touchpad, Honda necessarily would have gained comprehensive and exclusive knowledge about the defect contained in the infotainment system.  Such knowledge would necessarily include: the basic programming principles behind the system; the forces and stresses the system faces in normal use; the cumulative wear on the system caused by use, age, and environmental factors; and how using different designs affect the performance of the system.  This design, engineering, and testing data is unavailable to Plaintiffs without discovery, but upon information and belief, analysis of this data would have revealed that the infotainment system was insufficient for its intended use and would malfunction frequently.

## 2.    Warranty Claims Data

264.    Honda also knew or should have known about the infotainment system defect based on the large number of warranty repairs made immediately upon the Vehicles' launch.

265.    Upon information and belief, Honda regularly compiles and analyzes detailed warranty service information regarding repairs performed under warranty at its network of dealerships.    Indeed, Honda requires dealers to maintain detailed and meticulous records for any warranty repairs performed and routinely refuses to pay for warranty repairs made where the nature and cause of the malfunction is insufficiently described.

266.    Upon information and belief, these dealer service records and warranty data reflect an abnormally large spike in infotainment system failures immediately following the launch of the Vehicles in the summer of 2018.[7]

267.    As documented by widespread consumer complaints, this defect has plagued the infotainment system since its launch.    Consumers began posting furious complaints on the internet shortly after the Vehicles first went on sale.    For example, as noted above, one consumer posted the following complaint on June 20, 2018—just hours after purchasing the Vehicle and days after the 2019 Acura RDX first went on sale to the public:

- "*Just bought our new 2019 RDX less than 24 hours ago and am having an issue with the infotainment system*. We were driving on the highway using spotify through apple carplay and the system suddenly disconnected from carplay. When we went to reconnect it display a message stating it could not perform that function while in motion...okay so we pulled over shut the car off and noticed the system did not power off. Turned the car back on and tried other functions, both the radio and statelite radio displayed 'could not connect' or 'tuner

---

[7] While these service records and warranty data no doubt reflect a large spike, these records will vastly underreport the incidents involving the defect because many Honda dealers routinely tell Vehicle owners not to bring their Vehicle to the dealership because there is nothing they can do to address the defect.

unavailable'. ***We've called the dealership and they are going to check it out in the morning***, in the meantime I am not sure what to do as it is sitting in my driveway with the infotainment system powered on, hopefully it won't the battery overnight." (Complaint posted on acurazine.com dated June 20, 2018).

268.    The consumer posted a follow-up message the next day, explaining that his Acura dealer was unable to "figure out" what happened:

- "Just to update, ***the dealer wasn't able to figure out what caused the issue with the infotainment system***. Their resolution was to disconnect the battery to 'fix' the problem. I'm just hoping it doesn't happen again." (Complaint posted on acurazine.com dated June 21, 2018).

269.    Since then, countless Vehicle owners have explained online that they had taken their Vehicles to their dealers in response to the infotainment system problems:

- "Woke up and the radio was still on! Battery didn't die though. ***Will head to dealership this weekend***." (Complaint posted on acurazine.com dated August 1, 2018).

- "***This is why mine has been in service for two weeks today***. To get Acura to acknowledge all of the issues including this one." (Complaint posted on acurazine.com dated September 4, 2018).

- "This just happened to me too. ***Dropped it off at the dealer***…. Was driving with iPhone plugged in via CarPlay. Car made a high pitched beep noise and all audio stopped. SiriusXM says 'tuner error', FM radio won't play, Bluetooth won't recognize devices. Also, when scrolling through the settings, some of them are greyed out, and when I try to select them, the car says 'this is not available while in motion'." (Complaint posted on acurazine.com dated October 23, 2018).

- "I cannot begin to tell you how much I regret my decision to buy my 2019 RDX (Technology package).  What was 'love at first sight' has turned into a 'hate at first month' experience.…    Infotainment system not working — I would get the blue disclaimer screen that would stay on at all times even when I stopped and locked the car.  My husband had to pull a fuse so my battery doesn't die overnight.  I have also had the infotainment screen go completely blank for days.  ***I've taken my car in twice for this issue and they still don't have a permanent fix.***  The Service Manager even joked and told me that if it

happens again at least I know which fuse to pull. Excuse me, I did not pay an arm and a leg for a car to pull a fuse at 1,500 miles, this is not what I signed up for." (Complaint posted on Edmunds.com dated February 5, 2019).

- "*This car is haunted! The software needs so much improvement, and the dealership says they can't do a thing*. The radio comes on at will and often will not allow me to change channels. Sometimes I can make phone calls, sometimes not…. All infotainment features work when they want to. Sometimes I have no contact list and sometimes the car tells me it cannot perform the request, like make a phone call. It is driving me crazy; I am always waiting for the next shoe to drop. I have had it about 6 months and plan to trade it after a year. …. Every day it is something.................save your money and buy a decent car!" (Complaint posted on Edmunds.com dated March 30, 2019).

- "I just bought a new RDX ten days ago, and Apple Carplay started on the first try as the salesman reviewed the car, but since than it usually does not connect. *Took it in yesterday to the dealer* and they got it working with their i-phone 6, but took a few tries to get my i-phone X to work. I'm going crazy trying to get Carplay to work. Is there a reliable fix?" (Complaint posted on acurazine.com dated October 27, 2018).

- "*The dealers know nothing and everyone is awaiting an update from Acura*. No one can fix it at this time." (Complaint posted on acurazine.com dated November 18, 2018).

- "Team, we are unfortunately at the mercy of Acura. *I went by my dealer today and spoke with the GM and the Service manager. The SM told me that even the regional service rep from Acura had issues with his RDX*. They have fixes in the works, but will not commit to any time frame. So sad." (Complaint posted on acurazine.com dated January 20, 2019).

- "My vehicle is hardly 6 months old and the infotainment stop working 3 times with 6000+ miles. *The dealer mechanic doesn't bother bring the vehicle into the shop, they come out, disconnect the battery for a minute or two then reconnect the battery and the system is back on*. Next time that happens, I would ask the service manager to document it." (Complaint posted on Carcomplaints.com dated January 30, 2019).

- "This happened to me over the weekend. While driving, i had my phone connected to Apple CarPlay. I heard a loud beep and all audio functions stopped working. Additionally, the screen would not turn off once I got out and locked the car. I did a reset and that fixed the issue of the screen not turning off. ***I Took the car to the dealership this Monday where they were basically in the phone with Tech from Acura all day***. Finally, they just disconnected the battery and connected it again. This is a temporary fix." (Complaint posted on February 19, 2019).

- "***So mine has been freezing locking up since Sept of 2018 Dealers can't figure it out just wait for the next update and it will be fixed here we are April 2019 still having the same issue***. I was using my navigation using carplay as we were going out of town on a trip and 2hrs into the drive the system locked up in the middle of nowhere luckly for me my iphone xs kept navigating even though the system in the RDX was frozen and guess what message popped up yeppers 'Android system issue failure'…"(Complaint posted on acurazine.com dated April 23, 2019).

- "I have had my RDX for about a month and have issues. Yesterday I was getting an error saying Audio not available.  After turning the car off several times it finally came back. The navigation will not go dark at night. ***The dealership kind of fixed it, guy didn't really know much, but then it was going dark sporadically throughout the day***. Which was more annoying.  When I change songs or stations it often freezes or skips programmed stations. No idea what's going on. Hopefully we can get some answers." (Complaint posted on acurazine.com dated April 28, 2019).

270.    The complete warranty repair data regarding the infotainment systems repeated failures put Honda on notice of the defect.

**3.      Complaints Made Directly to Honda**

271.    Honda also knew or should have known of the defect contained in the infotainment system based on the numerous complaints it received directly from customers.  The large number of complaints, and the consistency of their descriptions of the infotainment system failures, alerted Honda of the defect.

272.  Only Defendant has access to the full universe of complaints it received regarding the infotainment system.  However, upon information and belief, many Vehicle owners who experienced the defect present in the infotainment system complained to Honda.  Customer complaints posted online reflect that Honda received many such customer complaints directly from Vehicle owners:

- "Had my RDX for 2 weeks - today my wife used it and when she came home she said the infotainment system was not working. It just kept repeating the circle / starburst pattern and would not boot. Disconnecting positive battery cable did not fix it. Pulled the #37 15A fuse [audio] and re-inserted, and then the system booted, and somehow, all the settings were still saved? Lucky this time, but I am afraid this will happen again. *Acura corporate stated I had to bring the car to the dealer to 'reset' it,* but it is over a holiday weekend and we need the car. Hopefully, there is a fix that can be downloaded in the future to prevent this?" (Complaint posted on acurazine.com dated August 31, 2018).

- "My brand new rdx has been at the dealer now three weeks, i drove it three days....after the infotainment system started going black repeatedly...see my post. Now after replacing infotainment sysytem control module...and test driving it for four days...it is doing it again. Now dealer calls and they are replacing the entire screen itself....and i expect it will be another 5 days before i know if that works... *have calked acura and filed a complaint and opened a case*....if this does not fix the issue i will start a lemon law claim. Acura padt the initial sympathy first call has not gotten back to me as to what they intend to do...." (Complaint posted on acurazine.com dated November 30, 2018).

- "I purchased one of the first RDXs in June. While the interior and exterior look nice, there are countless electronic issues. *I have spent hours working with the dealer and Acura corporate.* It was a lesson learned the hard way to not purchase a newly released vehicle. The steering wheel controls don't always work, the monitor had outages and it does not work in the cold weather. They claim these issues may be fixed with system update 2 but after waiting months for the first update (and it didn't fix all the issues), I'm not holding my breath. Wait until next year, this one is not worth it." (Complaint posted on Edmunds.com dated February 1, 2019).

- When starting the car or turning on the XM Radio, the monitor indicates that it is 'loading'  This can load for 3 to 5 minutes before the XM Radio controls are functional. I consider this to be a defect as the radio is not operating what most users would consider to be normal.  *I first talked to the dealer. The dealer confirmed that this was a wide spread problem. The dealer said is was a know problem and that Acura had not issued a fix or any infomration on if or when a fix was coming.  I wrote to Acura* to share with them that I was not satisfied with the operation of the XM Radio.  Today Acura Client Relations responded after a considerable delay:  " Dear xxxxxxx, Thank you for writing to us. We apologize for our delayed response and hope this message finds you well. We're sorry to hear this delay with XM service has been detracting from your new vehicle experience. We have documented what you are experiencing and if a product update is released to address it you will be notified via standard mail. We hope you have other wise been enjoying the RDX and thank you for alerting us to this issue…. Case #xxxxxxxx  Their response ignores my complaint as if does not acknowledge that this is a defect that the company is planning or even needs to address. I am very surprised and disappointed in the lack of concern about acknowledging that this is a prolem that deserves any attentiopn." (Complaint posted on Edmunds.com dated February 12, 2019).

- "*I have been fighting with Acura Corporate Relations since January 2019 regarding issues with the technology*, most recently Apple Car Play which has not worked correctly since I bought the car in July 2018 (It constantly disengages and then you have to disconnect and reconnect). *To top of it, their client relations rep says there's no fix in place -- so she closed my case*! I called for her manager and miraculously the case is re-opened. When you are paying $40K for a new vehicle you expect things to work -- if not the manufacturer should stand behind their vehicle, not try to shoot down the customer." (Complaint posted on Edmunds.com dated April 5, 2019).

- "I hate to say it but I have had nothing but problems since driving it off the lot back in March.  The whole screen freezes on a regular basis.... It's very distracting as its totally unexpected.  I usually try to play with it trying to get it to work again...NOT SAFE...as I am not watching the road,  The last time I took it to the dealer they showed me how to reset it by pulling the fuse out and plugging it back in.  It's crazy that this is

the solution for a $40,000 car. *I tried contacting Acura and they said all I can do is keep bringing it in to the dealer until there is a recall...which isn't guaranteed.* Really?" (Complaint posted on Edmunds.com dated May 21, 2019).

273.    As the above excerpts demonstrate, Vehicle owners have complained to Defendant on numerous occasions regarding repeated failures of the infotainment system, and the large number of complaints should have alerted Defendant to the defect.

**4.    Complaints Collected by NHTSA**

274.    Vehicle manufacturers are required by federal law to maintain close contact with the NHTSA regarding potential safety defects.  By law, manufacturers are required to report information regarding customer complaints and warranty claims to the NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects. *See generally* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

275.    Automakers have an affirmative legal duty to disclose emerging safety-related defects to the NHTSA under the Early Warning Report requirements. *Id.*

276.    Vehicle manufacturers should and do monitor NHTSA databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects.  Defects that undermine the effectiveness of their Vehicles' safety systems (including back up camera) are such safety-related defects. Accordingly, Honda knew or should have known of the many complaints about infotainment system failures lodged with the NHTSA, and the sheer number of complaints coupled with their consistency alerted or should have alerted Honda to the defect.

277.    A sampling of the complaints posted on the NHTSA database include the following:

**Date Complaint Filed:** October 6, 2018
**Date of Incident:** October 5, 2018
**NHTSA ID Number:** 11138815
**Vehicle Identification Number:** 5J8TC2H53KL****

FIRST AMENDED COMPLAINT
010811-12/1194995 V1
- 63 -

**Vehicle Type:** 2019 Acura RDX AWD

THE ELECTRONICS ON THE VEHICLE - THE PHONE, NAVIGATION SYSTEM, RADIO - FREEZE UP AND WON'T FUNCTION. THE NAVIGATION SYSTEM'S KEYPAD DOESN'T WORK. APPARENTLY THIS IS NOW A FREQUENT PROBLEM ON 2019 ACURA RDX'S

**Date Complaint Filed:** October 25, 2018
**Date of Incident:** October 23, 2018
**NHTSA ID Number:** 11142625
**Vehicle Identification Number:** 5J8TC2H74KL****
**Vehicle Type:** 2019 Acura RDX AWD

VOICE RECOGNITION WITH APPLE CARPLAY AND 3RD PARTY APPS FAILS TO FUNCTION WHICH CAN LEAD TO DRIVER DISTRACTION RESULTING IN COLLISIONS….

**Date Complaint Filed:** December 11, 2018
**Date of Incident:** November 15, 2018
**NHTSA ID Number:** 11160804
**Vehicle Identification Number:** 5J8TC2H74KL****
**Vehicle Type:** 2019 Acura RDX AWD

TECHNOLOGY SYSTEMS EXPERIENCE RANDOM FAILURES, AT VARIOUS TIMES SOMETIMES WHEN DRIVING. FUNCTIONALITY CAN SOMETIMES BE RESTORED BY STOPPING THE CAR AND RESTARTING THE ENGINE. SOMETIMES THE VEHICLE MUST SIT FOR HOURS WITH ENGINE OFF TO RESTORE FUNCTIONALITY. SYSTEM FAILURES INCLUDE DASHBOARD LIGHTING, VEHICLE DISPLAY SCREEN, AND HEADS-UP DISPLAY. NUMERIOUS DEALER VISITS HAVE PROVIDED NO SOLUTION TILL TODAY WHEN I WAS INFORMED THAT THAT THIS IS A SOFTWARE ISSUE AND THAT A SOFTWARE VEHICLE UPDATE IS REQUIRED. HOWEVER THIS IS NOT AVAILABLE, HAS NOT BEEN AVAILABLE FOR AROUND 6 MONTHS AND NO TIMELINE HAS BEEN OFFERED FOR THIS UPDATE.

I REGARD THIS AS A SAFETY AND DRIVER DISTRACTION ISSUE THAT CAN LEAD TO COLLISIONS. ACURA NEEDS TO PLACE A HIGHER PRIORITY ON THIS ISSUE IN ORDER TO PROVIDE OWNERS WITH A SAFER DRIVING ENVIRONMENT

**Date Complaint Filed:** March 15, 2019
**Date of Incident:** November 18, 2018
**NHTSA ID Number:** 11187042
**Vehicle Identification Number:** 5J8TC2H59KL****
**Vehicle Type:** 2019 Acura RDX AWD

INFOTAINMENT SYSTEM HAS MULTIPLE GLITCHES CAUSING MANY OF THE FEATURES, RADIO,

GPS OPERATION, DRIVE MODE CHANGES, SOUND, CLOCK FREEZING, KNOBS AND DIALS NOT WORKING. REPORTED TO DEALERSHIP AND WENT IN SEVERAL TIMES. THEY SAID THERE WERE UPDATES WHICH THEY TRIED TO INSTALL AND THE VEHICLE DIDN'T RESPOND TO ANY UPDATES PROVIDED BY ACURA. CALLED ACURA, GOT A CASE NUMBER, AND WAS VIRTUALLY TOLD THEY ARE STILL WORKING ON THESE PROBLEMS . THESE 2019 CARS HAVE BEEN OUT SINCE MAY OF 2018 AND THEY ARE STILL MANUFACTURING CARS AND PUTTING THEM OUT TO THE CONSUMER KNOWING THESE ELECTRICAL AND SYSTEM ISSUES HAVE NEVER BEEN ADDRESSED PROPERLY. THESE PROBLEMS HAPPEN WHETHER THE VEHICLE IS STATIONARY, IN MOTION, CITY OR HIGHWAY DRIVING.

THE PROBLEMS ARE INTERMITTENT. IT DOES BECOME A SAFELY ISSUE WHEN SOMETHING HAPPENS BECAUSE THE DRIVER IS NOT ABLE TO DEAL WITH ISSUES WHILE OPERATING THE VEHICLE. ACURA HAS BEEN LESS THAN COOPERATIVE WITH EITHER THE DEALERSHIP OR THE CONSUMER, JUST TELLING ALL THEY ARE SORRY TO BE PATIENT "THEY ARE WORKING ON IT". MY VEHICLE HAS BEEN DOING THIS FOR SEVERAL MONTHS (SINCE THE DAY I DROVE IT OUT OF THE LOT.)

I HAVE SCREEN SHOTS OF THE MESSAGES RECEIVED ON THE SCREEN WHEN IT IS INOPERABLE

AND WELL DOCUMENTED NOTES AND DATES AS TO WHEN IT WAS REPORTED TO THE DEALER AND TO THE ACURA SERVICE REPRESENTED.

**Date Complaint Filed:** April 24, 2019
**Date of Incident:** April 18, 2019
**NHTSA ID Number:** 11203513
**Vehicle Identification Number:** 5J8TC2H74KL****
**Vehicle Type:** 2019 Acura RDX AWD

AFTER APPLE'S IOS UPDATE FOR IPHONE, APPLE CARPLAY HAS BECOME UNSTABLE AND CRASHES FOR NO APPARENT REASON RESULTING IN ACTIVE NAVIGATION SERVICES WHILE DRIVING, BECOMING UNUSABLE WITHOUT WARNING. RESTARTING THE ACURA TECHNOLOGY AND/OR THE IPHONE RESULTS IN CONTINUED SPORADIC BUT UNUSEABLE OPERATION. THIS CAN RESULT IN SEVERE DRIVER DISTRACTION AND LEAD TO COLLISIONS RESULTING IN INJURY OR DEATH TO THE VEHICLE OCCUPANTS.

ACURA HAS INDICATED TO ME THAT THEY HAVE RECEIVED A NUMBER OF COMPLAINTS OF THIS NATURE AND IS LOOKING INTO IT. CALLS TO APPLE SUPPORT HAVE RESULTED IN AN ATTITUDE OF INDIFFERENCE AND ATTEMPTS TO ATTRIBUTE THE ISSUE TO ACURA & GOOGLE. APPLE'S CURRENT RESPONSE IS TO SEND AN EMAIL TO FEEDBACK@APPLE.COM.

THE RESPONSE I AM SEEKING IS TO REQUIRE APPLE/ACURA TO INFORM ACURA CUSTOMERS THAT CARPLAY IS CURRENTLY EXPERIENCES ISSUE AND MAY UNEXPECTEDLY CEASE OPERATION WHILE IN USE AND ADVISE CUSTOMERS TO REFRAIN FROM USING IT UNTIL THE ISSUE IS REMEDIED IN ORDER TO AVOID DRIVER DISTRACTION RESULTING IN POSSIBLE COLLISIONS.

ADDITIONALLY I WOULD LIKE TO SEE APPLE & ACURA SETUP SPECIAL EMAIL ADDRESSES FOR OWNERS TO REPORT CARPLAY AND TECHNOLOGY ANOMALIES, WITH A TRACKING SYSTEM IN PLACE TO RESEARCH, ADDRESS THE ISSUES, AND EXPEDITE THE RESOLUTION OF THEM.

**Date Complaint Filed:** May 6, 2019
**Date of Incident:** July 10, 2018
**NHTSA ID Number:** 11205831
**Vehicle Identification Number:** 5J8TC2H38KL****

**Vehicle Type:** 2019 Acura RDX AWD

ISSUES WITH RADIO AND APPLE CARE. DOES NOT WORK INTERMITTENTLY. ACURA HAS DONE SOFTWARE UPDATE TO FIX BUT STILL HAVE PROBLEMS.

278.  As the preceding complaints demonstrate, Vehicle owners have lodged many complaints with the NHTSA about repeated infotainment system failures which alerted or should have alerted Honda to the defect no later than June 2018 when the Vehicles first went on sale to the public.

### 5.    Customer Complaints on Internet Forums

279.  In addition to the complaints lodged directly with Honda, Dealers, and the NHTSA, many Vehicle owners posted complaints regarding repeated infotainment system failures on public online internet forums, which Defendant — like most manufacturers — regularly monitors.  The following is a representative sample of those complaints:

- "i was driving home from work while using both navigation and music. (Btw, I have just had this new beauty for 2 weeks). So I wanted to switch side screen onto the main screen. And the screen just froze however music was still playing. It froze for 5 mins while I was driving so I pulled my car to a parking lot and shut it off and backed on. The infotainment system tried to restart however it was stuck at its fancy starting logo for another 5mins. Luckily other operational function seemed to work. I almost took my car to my dealer before I shut it off and backed on the second time. It took 10 secs to reboot and everything went back functioning. (Complaint posted on acurazine.com dated June 25, 2018).

- "Apparently Apple Car Play messes with the navigation. Fix it!!" (Complaint posted on carcomplaints.com dated July 5, 2018).

- "Just occured in my wife's RDX... looks like we'll be waking up to a dead battery tmr. Radio won't shut off." (Complaint posted on acurazine.com dated July 31, 2018).

- "While on a call, thru CarPlay with a iPhone 8 hardwired. The call jumped back to the phone. I could use my phone and completed the call. Hung up but the MID still showed the call as active as did the info

display. The touchpad did nothing. I could not reset it. I could hit the app button and scroll to the call to "end call" but it did not end it and still remained frozen. I was driving so I had to wait til I stopped and then I shut the car off and everything powered down. When powering back up the call showed back up. The info display showed the boot anamation and was just sitting there thinking. So I powered off the car again, shut my phone completely off, rebooted the car and then everything worked normally." (Complaint posted on acurazine.com dated October 11, 2018).

- "When I first purchased the Acura RDX Advance I was ecstatic. Everything seemed to be customized for me. From the memory seats to the technology, to the safety components. I was in love with my SUV. However, things seemed to go south the longer I owned the vehicle. First it was the constant issues with the Infotainment System. I would exit the vehicle and it wouldn't turn off. I called the dealership and they either thought I was dumb and didn't know how to operate a car, or they would say 'this is the first time we're hearing about this...' I found a site called AcuraZine which had a workaround for turning off the frozen system so I wouldn't get a dead battery." (complaint posted on Edmunds.com dated November 7, 2018).

- "Up front, I have the latest software version, I installed it the day it was made available.  The infotainment screen is now stuck on Disclaimer and won't turn off even with the car shut down. To be honest, the infotainment system has become increasingly sluggish since I first bought the car in June. It can take several minutes to boot up when I start the car and it regularly freezes and then unsticks itself just switching between Sirius and FM radio." (Complaint posted on acurazine.com dated December 20, 2018).

- "Infotainment system. Very, very glitchy and underbaked. Using the precision touch mouse pad is awkward; using navigation is clunky. Voice recognition barely works. The loading of contacts takes a very, very long time... Calls are driooed every now and then; the system hangs intermittently... Nissan's simple Bosch-designed infotainment puts Acura to shame... Android auto is not supported as of yet... No way to look up point of interest phones; no Pandora or Google integration. My Nissan had all that. I miss Nissan's infotainment system." (Complaint posted on Edmunds.com on January 7, 2019).

- "Own the 2019 RDX Advance for nearly 5 months…. I'm disappointed with them for not debugging the software before rolling it out to the consumer. I feel as if I'm part of a beta test. Its software is more than buggy. It locks up often, takes too much time to boot up& often get messages of a 'System Error- Function Unavailable' when attempting to toggle radio stations on left side of steering wheel. Only after turning if off & back on does the feature work as intended. After recent update in mid Dec 2018 Navigation menu now has no mentions of "Restaurants" or "Food" or Shopping or Gifts as well as Travel Agency"; it ALL blank showing no data at all!! Siri through iPhone blue tooth when connected does not work at all. Lots of talk out there (chat lines) that the update made things worse not better & only brought everyone up to the version they had in dealers as recent as October. …." (Complaint posted on Edmunds.com dated January 15, 2019).

- "I got in my car and had to do a quick reverse and pull out of a parking place and pull into traffic. The screen was dark. Nothing came on. Zero, nada. I got to my office, turned car off, opened door and closed door, restarted. Blank screen. Crap, went into my office, went back out an hour later, systems came back on. I have had a lot of issues when I put car in reverse and pull out without waiting for system to spool. i guess we wait for the next update" (Complaint posted on acurazine.com dated January 20, 2019).

- "2nd issue, the audio system doesn't work. This is noted in almost every review.  I didn't know that going in, or I wouldn't have bought it." (Complaint posted on Edmunds.com dated February 6, 2019).

- "Replacing info system won't fix it. My guy tried that. Its all software. I don't use apple play much because it confuses the radio. Does anyone have issues when you put in reverse and then pull out before the system boots up. My info system takes for ever to boot when going into reverse." (Complaint posted on acurazine.com dated March 12, 2019).

- "Infotainment system hard to use. In 2016 navi system you could save identifier with favorite. In 2019 only address can be saved. 2016 beeped when lane departure activated, not 2019. Just had an infotainment system update in the hopes that a bug I had would be fixed, but it wasn't. When trying to use voice command sometimes it works, then I get Voice System initializing and the voice system freezes until the car is turned off and restarted. No easy way to report this glitch to Acura.

Dealer and customer relations certainly not briefed sufficiently in the new info system." (Complaint posted on Edmunds.com dated March 14, 2019).

- "The '19 RDX was the sixth Acura that I have owned/leased and by far the worst…. The infotainment system is a mess: it loses connectivity, freezes when switching between Bluetooth phone and sat radio, takes 30+ seconds to boot up, and more. Acura makes some great vehicles, this isn't one of them." (Complaint posted on Edmunds.com dated March 16, 2019).

- "Got stuck on the disclaimer screen today. Nothing would turn it off. Not even the 3 button trick would work. Ended up having to pull the fuse. It sparked a little while putting it back in. Is this normal? Can I blow the fuse this way?" (Complaint posted on acurazine.com dated April 23, 2019).

- "Was driving normally, and no issues. Stopped to grab some groceries. Got in my car and had 'Drive Mode Change Unavailable' popping up and the screen dimming and then brightening. Doing a reset with the three button push didn't seem to fix it." (Complaint posted on acurazine.com dated May 13, 2019)

- "I purchased the RDX over other vehicle lines (BMW, Mercedes, Lexus, Infinity) after extensive research. The final determinant for me was the perceived quality which Honda builds into its vehicles. I have a CRV, and I traded in a BMW. I have owned a number of cars over the years both foreign and domestic, and the CRV by far was the best in terms of reliability and cost of maintenance. Much to my chagrin, the Acura RDX does not live up to the same standard. With a bit over 1000 miles on the vehicle, I have had two instances where I have lost my radio and/or GPS function. This after one stint in the service department already. Definitely not what I expected from Honda, or from a vehicle which is not inexpensive by any means." (complaint posted on Edmunds.com dated May 22, 2019).

- "Disappointed. Wish I could return. The good: sharp looking and comfortable. The bad: the infotainment/navigation system. Rarely works correctly. Have to reconnect my phone from time to time, slow to respond, can't save/edit favorite places with a name like 'lake house,' the mouse pad belongs on a laptop, not a vehicle, awkward." (complaint posted on Edmunds.com dated June 14, 2019).

### 6.   Acknowledgements of the Problem by Honda Representatives, Dealers, and Technicians

280.   Defendant's knowledge of the defect is also shown the fact that Honda representatives, dealers, and technicians have admitted to Vehicle owners—including many of the named plaintiffs listed above—that repeated infotainment system failure is a well-known and pervasive problem with the Vehicles.   The following is a representative sample of customer complaints reflecting Honda's knowledge of the defect:

- "This screen is also frozen. No music, call is disconnected. I had to pull over and turn the car off. Sadly, I've had the dreaded screen freeze 4 times. I have tried using the 3 button reboot but nothing happens. No matter how long I hold the buttons nothing happens. My screen is also freezing after I hang up with a call. The HUD and infotainment system freeze and nothing helps except pulling over and turning the car off. I also have messages popping up at various times and the screen flickers. *I am taking my 19 RDX into the dealership for the 7th time for issues. Acura of Seattle has told me they have 3 other RDX owners with the same problem. They also said that Acura is well aware of the problem but has yet to suggest a fix for or possibly replacing the system*. The phone call was actually disconnected." (Complaint posted on acurazine.com dated March 8, 2019).

- "I have had most of the problems that have been documented here, including intermittent audio chirps and drop-outs, 'skipping' of the audio when played through carplay (sounds a little like an old-school vinyl record that is skipping), and today the freeze-up that required disconnection of the power.… *I spoke to an Acura service rep on the phone today and he said that Acura is aware of this issue and is 'working on a fix.* This has been a known issue for most of the past 6 months, and they're still working on the fix? I think the Lemon Law may be the only way to get this resolved" (Complaint posted on acurazine.com dated November 30, 2018)

- "Per the higher ups at Acura, there is an update in the works. Unfortunately there is no fix at this time. We are pretty much told to tell the customers there is nothing we can do until the update comes

out." (Comment posted on reddit.com by purported "Acura Technician" dated April 24, 2019)[8]

- I just got back from a dealer now to address infotainment issues. Dealer said Acura just notified them a TSB fix is coming soon. They did nothing to my car. [Service advisor] said he put my name down and will contact me as soon as the TSB is available. He said it requires a dealer to perform and not an OTA update. This is my second trip to the dealer for the same issue. I put off with the constant issues just because I don't have the time for an appointment. (Comment posted on acurazine.com dated May 25, 2019).

281.    Additionally, the large number and consistency of Vehicle owner complaints describing the infotainment system defect as a safety risk demonstrates that the Vehicle owners consider the defect to be material to a reasonable consumer.

282.    Acura itself has also publicly admitted to several of the flaws detailed above. Specifically, a March 2019 review of the 2019 Acura RDX in the publication Ars Technica details numerous, repeated problems with a test vehicle's radio and navigation systems—problems identical to those alleged here. The review then explains:

**According to Matt Slouster, manager of public relations for Acura, the radio and GPS woes are both known issues with the RDX.** Since the vehicle hit dealerships last year, Acura has already pushed out two over-the-air updates to fix other issues and improve functionality, and the automaker is planning a third update. Slouster told me there was just a "small number" of RDX models affected by this particular bug. Another OTA update will bring Android Auto functionality to the RDX; Apple CarPlay is already supported and works nicely with the trackpad.[9]

---

[8] In a follow-up comment in the same thread, another user—identified as a "2019 RDX tech"—states: "Just wait until it completely freezes on you. Hundreds of people having this problem since the car launched last year. Two software updates did nothing to fix it."

[9] *See* Eric Bangeman, *Fast and fun, but flawed: The Acura RDX reviewed*, Ars Technica (March 22, 2019), https://arstechnica.com/cars/2019/03/fast-and-fun-but-flawed-the-acura-rdx-reviewed/ (emphasis added). The same review includes several pictures of the test vehicle's defective infotainment system, and concludes that "would-be buyers need to be aware of the known issues with the software and must trust Acura to deliver fixes. Until the promised OTA updates arrive, caveat emptor."

283.  Defendant's New Vehicle Limited Warranty requires it to "repair or replace any part that is defective in material or workmanship under normal use." But as countless consumers have reported, Defendant has been unable to repair these defects despite being given numerous opportunities.  In violation of this express warranty, and as evidenced by the many complaints and repeat infotainment system failures, Defendant merely replaces a defective part with another defective part.

284.  Due to the permanent nature of the common defect in the defective Vehicles which cause them to fail, even after repeated "repairs," Plaintiffs and the members of the Class have incurred and will continue to incur significant expenses.  All defective Vehicles suffer from the same defect.

285.  Additionally, because the infotainment system may fail at any time, thereby startling the driver and putting the passengers' safety at risk, the defect makes these defective Vehicles unfit for the use for which they were intended in that they cannot be relied upon as a safe and reliable means of transport.

**D.    Unfulfilled Promises Regarding Android Auto Compatibility**

286.  Upon information and belief, in the months and weeks leading up to the Vehicles' launch in June 2018, Defendant distributed pre-release press kits and marketing information to media outlets and Acura dealers.  These materials stated that the 2019 Acura RDX would include both Apple CarPlay and Android Auto smartphone integration.[10]  As was readily foreseeable to Defendant, the media outlets and Acura dealers, in turned, passed the information on to prospective purchasers.

---

[10] For instance, the "coming soon" webpage for this Florida dealership clearly states that "[t]he new touchpad is displayed with a floating design and features audio and entertainment, including Apple CarPlay and Android Auto smartphone integration." https://www.acuraoforangepark.com/2019-acura-rdx-coming-soon-jacksonville-fl.htm (last accessed June 20, 2019).

287.   Defendant's own website similarly represented to perspective purchasers that the 2019 Acura RDX would feature Android Auto compatibility as well as Apple CarPlay.[11]

288.   However, when the 2019 Acura RDX arrived in showrooms in June 2018, only Apple's smartphone mirroring and apps suite was included on the features list.  As a May 29, 2018 CNET article explained:

> Parent company Honda offers both Android Auto and Apple CarPlay on its Android-based HondaLink display audio software. The new AcuraLink software is also Android-based, so it's not a stretch to assume Honda and Acura's systems share core software bones. This should have made porting features such as smartphone mirroring a snap. So why doesn't the 2019 Acura RDX offer Android Auto?
>
> It turns out that Acura's new and novel control scheme is at the heart of the issue. Android Auto works well with traditional touchscreen setups (such as Honda's system) or physical rotary controllers (such as Audi's MMI system), but it doesn't play nicely with the new True Touch controller... yet.
>
> …
>
> Basically, Acura worked with Google to get Android Auto working with the RDX's absolute-positioned touchpad control scheme -- which is sort of like a laptop's trackpad, but also very different -- but compatibility wasn't ready in time for the June 2018 launch window. So Android Auto compatibility was delayed. When the kinks are eventually ironed out, Acura will make the feature available via software update for all 2019 or newer RDX vehicles.[12]

289.   Yet Defendant made clear to both the press and to consumers that a software update was forthcoming that would incorporate Android Auto into all

---

[11] A March 28, 2018 post on an Acura internet forum quotes Acura's website as then stating, "Standard Apple Carplay and Android Auto integration amplify audio through an available 16-speaker ELS Studio® 3D system. All models come with an ultra-wide panoramic power-adjustable moonroof and floating center console." https://acurazine.com/forums/third-generation-rdx-2019-454/android-auto-968454/ (last accessed June 20, 2019).

[12] https://www.cnet.com/roadshow/news/2019-acura-rdx-to-eventually-get-android-auto-via-post-launch-patch/ (last accessed June 20, 2019).

Vehicles.  As CNET explained in the title of the article, "Yes you'll have to wait, but ***the wait won't be long***."[13]

290.   Acura dealerships conveyed this same message to prospective purchasers, promising them that Android Auto would soon become available to the Vehicles by software update.  And many complaints on the internet demonstrate that consumers relied on this promise in deciding to purchase or lease a Vehicle.  For example:

- "Also, if you have an Android phone...beware.  This car's infotainment system doesn't work with an Android. ***They told me in August it would be a few months and they expected software update to come out in November***.  The update was published in January but still didn't address the Android problem.  Now they are saying April...maybe.  For 5 months (before the January update), I had systematic failure of the tuner to tune to a radio station when I started the car." (Complaint posted on Edmunds.com dated February 8, 2019).

291.   On August 20, 2018, a Vehicle owner tweeted Defendant asking "when will Android Auto be released for the 2019 RDX?"[14]  Defendant responded, "We're working w/ Google to bring Android Auto to the new RDX & will make the update avail to owners who've purchased the '19 model once it's developed & certified. We don't have a set release date to share rt now, but suggest signing up for future updates."[15] Six weeks later, another Vehicle owner asked for an update, and Defendant responded, "Thank you for your patience - no exact date to share at this time, but we are still working with Google to bring Android Auto to the 2019 RDX as soon as possible."[16] A few days later, Defendant followed up, "There are no more details to share at this time but should have updates in the coming months. We value your patience and interest."[17]

---

[13] *Id.*

[14] https://twitter.com/acura/status/1031742301675167745?lang=en (last accessed June 20, 2019).

[15] *Id.*

[16] *Id.*

[17] *Id.*

292.  The last tweet Defendant sent on the subject asked Vehicle owners for "patience" and was sent on November 29, 2018 — approximately six months after consumers began purchasing and leasing the Vehicles based in part on Defendant's promise that Android Auto compatibility would soon be made available.  Meanwhile, hundreds of angry Vehicle owners continued to respond to Defendant's tweet, begging for information about when they were to receive the software update.  Below is a sampling of those responses:

- "Any general timeframe for this? Frustrating that even voice commands don't work consistently if an Android phone is paired with the 2019 RDX. It's now mid-November." (November 14, 2018)
- "Really. Can we get a straight answer.  I love my A spec. Nav system sucks. We need Android Auto. Please share a date. It's not rocket science if apple have done it before the launch." (Nov. 20, 2018)
- "Almost December now, starting to get frustrated." (Nov. 24, 2018)
- "Between these awful squealing brakes and Acura taking forever to release AA, this might be our last Acura purchase! The infotainment system in the RDX is just horrible. We thought we'd get used to it, but NO!" (November 29, 2018)
- "Any status updates on this? Starting to feel a little deceived here." (December 7, 2018)
- "How about this Acura, Send an Iphone to every RDX owner as Christmas/New year present to try the Carplay ?" (December 19, 2018)
- "Any update on Android Auto for the 2019 RDX? I was lied to by the Salesman who said it would be 4-5 weeks in July, now unsafe as have to look at phone for Music as Sirius trial over." (January 1, 2019)
- "What's the deal? You said in 2018 half a year ago." (January 9, 2019)
- "RDX  has been out for seven months - Can't believe Google can't find a solution for Android Auto software they wrote for Acura. Has to be a money issue. I'm stuck with an terrible GPS. NOT HAPPY!" (Jan. 9, 2019)
- "still no android auto-----not good along with a terrible navigation system seriously blemishes this vehicle" (January 20, 2019)
- "What's the story? I was told that my 19 RDX had Android Auto. Of course at delivery, when I asked to connect it, I was told it would come out in the next software update. 2 updates later and no Android Auto." (January 24, 2019)
- "January 26 and no real updates? Like many I was informed by the end of 2018. Where r u in the progress?" (January 26, 2019)

- "Are you just ignoring this issue now? This is starting to amount to false advertising." (February 6, 2019)
- "What is the update with android auto.  I am so disappointed.  I wish I could return my car because of this." (February 23, 2019)
- "Your dealerships are lying to customers about this. When I test drove in early October 2018 I was told android auto would be available in 30 days. After I buy, I'm told early Jan 2019. I feel deceived and cheated,  Acura. What are you doing to make things right?" (February 26, 2019)
- "Maybe it's time for a class action suit for 2019 RDX owners that bought the car hoping for a usable GPS and 'any day now' Android support, which is now 7 months ago with zero concrete updates. I want my Audi Q5 back that I traded." (March 3, 2019)
- "I understand technical challenges and trying to integrate the novel (but, frankly, kind of annoying touch pad -- why not use a great touch screen that works?) but selling the product and promising a key feature and after seven months having zero constructive updates since?" (March 5, 2019)
- "I actually got a call back from Acura 2 weeks ago and they said it was a licensing issue with Google and Acura. Must be attorneys involved I say." (March 6, 2019)
- "I bought 2019 RDX. It is almost 9 months but still there is no status update on Android Auto. It is very frustrating with  lack of @Acura 's response or almost no response since August as if they are ignoring their own loyal customers!" (March 17, 2019)
- "Have no patience any more. Can I return the RDX?" (March 20, 2019)
- "Is Acura any closer to the release date? I bought an RDX 2019 model last August. The Infotainment system went haywire yesterday and shut down. No new update available." (March 28, 2019)
- "Please issue an update on this. Look how many people are responding to this tweet trying to get some information. The lack of response feels deliberate. I'm starting to believe we were all sold on a lie and we're never getting Android Auto. Where is the customer service??" (March, 29, 2019)
- "It's been almost an year! Do you still have no dates for Android Auto integration?" (April 3, 2019)
- "Looking at all complaints, we should all file a petition for this issue. Dealership lied to me as well." (April 3, 2019)
- "I had my car since Feb of 2019 and was told AA would be out soon.  Very disappointed." (April 5, 2019)
- "I am planning to go to consumer court and file a case against Acura. They sold us a lie." (April 18, 2019)
- "It's been almost a YEAR since I bought this car and STILL no Android auto!!! How much longer???" (May 3, 2019)

- "Would not have bought had I known there's still zero Android support 6 plus months in." (May 3, 2019)
- "Purchased the text with technology package in August and sales person said it would have Android Auto soon. I want what I purchased. Give us an update." (May 8, 2019)
- "This is frustrating... you need to get your act together. I purchased with understanding it would be available soon." (May 8, 2019)
- "Given that '20 model is hitting dealerships, the Android Auto coming soon statements are false advertisement. Class action lawsuits?" (May 10, 2019)
- "Terrible customer service. I was lied to at the dealer about this." (May 10, 2019)
- "Any update on getting Android Auto on the 2019 RDX - as it was promised back in September." (May 12, 2019)
- "2020 RDX is being advertised and doesn't even offer AA. Looks like the folks (me) who bought a 2019 got duped." (May 13, 2019)
- "I bought mine in Aug of '18 and was told it would be out OTA any day. WTF Acura, very shady" (May 30, 2019)
- "A year now, and this integral component is still missing with no communication from Acura." (June 11, 2019)
- "1 year later still working on it." (June 11, 2019)
- "@Acura - Any updates on this? @AcuraClientCare stopped responding to emails" (June 19, 2019).[18]

293.  Most recently, Acura's manager of public relations, Matt Slouster, told a journalist in March 2019 that "[a]nother OTA update will bring Android Auto functionality to the RDX[.]"

294.  To date, Defendant still has not released a software update incorporating Android Auto into the Vehicles as Defendant promised it would long ago.

**E.    Defendant's Warranties and Response to the Defect**

295.  Defendant issued to all original purchasers and lessees, including Plaintiffs and the other Class members, a written manufacturer's warranty. This New Vehicle Limited Warranty states that "Acura will repair or replace any part that is defective in

---

[18] https://twitter.com/Acura/status/1031742301675167745 (last accessed June 20, 2019).

material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

296.   However, Defendant knew, or at least should have known, of the defects at the time of sale or lease of the defective Vehicles.  Plaintiffs and Class members, however, had no such knowledge.  The defects were and are latent in nature because they are not obvious or ascertainable upon reasonable examination.

297.   Despite having more than adequate opportunity to successfully remedy the defect(s) in the Vehicles, Defendant has failed to do so, and in many instances has instead merely replaced defective components with defective components.

298.   Defendant concealed, and continues to conceal, the fact that the Vehicles contain the defective infotainment systems.  Defendant also continues to conceal the fact that the replacement components it provides to purportedly repair the defect are equally defective.  Despite its knowledge of this defect, Defendant continues to sell defective Vehicles that contain the defective infotainment system. Therefore, Plaintiffs did not discover and could not have discovered this defect through reasonable diligence.

299.   Plaintiffs and the other Class members reasonably relied on Defendant's warranties regarding the quality, durability and other material characteristics of their Vehicles, including, but not limited to, the representation that the Vehicles contained no known defects (defects known to Defendant) at the time of sale or lease.

## V.    CHOICE OF LAW ALLEGATIONS

300.   Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California' choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

63.    Because Honda is headquartered—and made all decisions relevant to these claims—in California, California has a substantial connection to, and materially greater interest in, the rights, interests, and policies involved in this action than any other state.

Application of California law to Honda and the claims of all Class members would not
be arbitrary or unfair.

64.    Plaintiffs plead claims on behalf of a nationwide class because the laws for
each state do not vary materially for these claims.   Alternatively, Plaintiffs plead state
law classes claims as indicated below. This Complaint refers to the nationwide and state
classes collectively as the "Class," unless noted otherwise.

## VI.    CLASS ACTION ALLEGATIONS

301.    Plaintiffs bring this action on behalf of themselves and all others similarly
situated under Fed. R. Civ. P. 23.

302.    Subject to confirmation, clarification and/or modification based on
discovery to be conducted in this action, the classes that Plaintiffs seek to represent shall
be defined as follows:

> All persons and entities nationwide that purchased or leased a model
> year 2019 Acura RDX or 2020 Acura RDX Vehicle (the
> "Nationwide Class").

> All persons and entities that purchased or leased a model year 2019
> Acura RDX or 2020 Acura RDX Vehicle in the State of Arizona (the
> "Arizona Class").

> All persons and entities that purchased or leased a model year 2019
> Acura RDX or 2020 Acura RDX Vehicle in the State of California
> (the "California Class").

> All persons and entities that purchased or leased a model year 2019
> Acura RDX or 2020 Acura RDX Vehicle in the State of Florida (the
> "Florida Class").

> All persons and entities that purchased or leased a model year 2019
> Acura RDX or 2020 Acura RDX Vehicle in the State of Georgia (the
> "Georgia Class").

> All persons and entities that purchased or leased a model year 2019
> Acura RDX or 2020 Acura RDX Vehicle in the State of Illinois (the
> "Illinois Class").

> All persons and entities that purchased or leased a model year 2019
> Acura RDX or 2020 Acura RDX Vehicle in the State of
> Massachusetts (the "Massachusetts Class").

All persons and entities that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of Nevada (the "Nevada Class").

All persons and entities nationwide that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of New Jersey (the "New Jersey Class").

All persons and entities nationwide that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of New York (the "New York Class").

All persons and entities nationwide that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of North Carolina (the "North Carolina Class").

All persons and entities that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of Ohio (the "Ohio Class").

All persons and entities that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of Oregon (the "Oregon Class").

All persons and entities nationwide that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of Pennsylvania (the "Pennsylvania Class").

All persons and entities nationwide that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of Tennessee (the "Tennessee Class").

All persons and entities nationwide that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of Texas (the "Texas Class").

All persons and entities nationwide that purchased or leased a model year 2019 Acura RDX or 2020 Acura RDX Vehicle in the State of Virginia (the "Virginia Class").

303.   Excluded from the Class are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

304.    Plaintiffs seek only damages and injunctive relief on behalf of themselves and the Class members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class members.

305.    While the exact number of Class members is unknown to Plaintiffs at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Honda and governmental officials. Upon information and belief, Honda has sold and leased over 100,000 defective Vehicles nationwide during the relevant time period, all of which have the defective infotainment systems at issue.  Therefore, the Class members are so numerous that individual joinder of all Class members is impracticable under Fed. R. Civ. P. 23(a)(1).

306.    Common questions of law and fact exist as to all Class members. These common legal and factual questions include:

(a)    whether each defective Vehicle was sold or leased with a defective infotainment system;

(b)    whether Defendant's express warranty covers the defect;

(c)    whether Defendant breached express warranties made to the Class members;

(d)    whether Defendant breached implied warranties made to the Class members;

(e)    whether Defendant replaced defective parts with defective parts;

(f)    whether Defendant knew about the defect and, if so, how long Defendant has known about the defect;

(g)    whether Defendant concealed the defect;

(h)    whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws asserted herein;

(i)    whether the Class members have suffered damages as a result of the conduct alleged herein, and if so, the measure of such damages, including diminution of value and deprivation of the benefit of the bargain; and

(j)    whether the Class members are entitled to injunctive relief.

307.   Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member have a defective Vehicle with the same defective infotainment system.

308.   Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class members.  Further, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automotive defect class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Therefore, the interests of the Class members will be fairly and adequately protected.

309.   A class action is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to any other available means for fairly and efficiently adjudicating the controversy.  In this regard, the Class members' interests in individually controlling the prosecution of separate actions is low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendant.  Further, neither Plaintiffs nor their counsel are aware of any on-going litigation concerning this controversy already begun by any of the Class members.  It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits.  Individualized litigation presents a potential for inconsistent or contradictory results and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case.  By contrast, the class action procedure here will have no management difficulties. Defendant's records and the records available publicly will easily identify the Class members. This defect is common to all defective Vehicles; therefore, the same common documents and testimony will be used to prove Plaintiffs' claims as well as the claims of the Class members.  Finally, proceeding as a class action provides the benefits of

single adjudication, economies of scale, and comprehensive supervision by a single court

310.    A class action is appropriate under Fed. R. Civ. P. 23(b)(2) because, as stated above, Honda has acted or refused to act on grounds that apply generally to the Class members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class members.

## VII.   CLAIMS

**A.    Claims Brought on Behalf of the Nationwide Class**

**COUNT I**
**BREACH OF EXPRESS WARRANTY—**
**MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *ET SEQ.*)**

311.    Plaintiffs repeat and incorporate the allegations set forth above as if fully alleged herein.

312.    The defective Vehicles are consumer products as defined in 15 U.S.C. § 2301(1)

313.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

314.    Honda is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

315.    Honda provided Plaintiffs and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6).

316.    15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

317.    In the course of selling the defective Vehicles, Defendant expressly warranted in its New Vehicle Limited Warranty that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

318.   Upon information and belief, Defendant's standard warranty language is identical for all defective Vehicles sold nationwide.

319.   Defendant did not provide at the time of sale, and has not provided since then, Vehicles conforming to its express warranties.

320.   Defendant breached and continues to breach express warranties because the defective infotainment systems were present in the defective Vehicles at the time of sale.

321.   Defendant breached and continues to breach express warranties because Defendant did not (and does not) cover the full expenses associated with repairing and/or replacing the defective infotainment systems in Plaintiffs' and the Class members' defective Vehicles.

322.   Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Defendant breached and continues to breach express warranties because it merely replaces the defective components with additional defective components and is unable to successfully repair the defects in Plaintiffs' and the Class members' defective Vehicles, despite having had reasonable opportunities to do so.  As such, the express warranties fail their essential purpose.

323.   Defendant's refusal to provide an adequate repair or replacement violates 15 U.S.C. § 2304.

324.   Despite the fact that the Vehicles' infotainment systems continue to fail despite being "repaired," Defendant continues to replace the defective parts with identical or substantially similar defective parts.  Thus, the defect is permanent in nature.

325.   Defendant fraudulently concealed material information from Plaintiffs and the Class regarding the existence and extent of the defects.  Defendant also fraudulently concealed the material fact that the replacement components were defective.  Therefore, any limitations imposed by Defendant as to the scope of its obligations under the express warranties to repair and replace defective parts and/or any disclaimers in the written

warranties prepared by Defendant that purport to preclude recovery by Plaintiffs or the Class members are unconscionable, both substantively and procedurally, and are unenforceable as a matter of law.

326.   Any such limitations or exclusions have been imposed unilaterally by Defendant via adhesive, "take it or leave it" contracts with no ability by Plaintiffs or the Class members to negotiate the substance or coverage of the warranties, and Plaintiffs and the Class members did not have any meaningful choices of reasonably available alternative sources of supply of suitable Vehicles free of the above unconscionable conditions.

327.   Furthermore, Defendant's express warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Class members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

328.   Also, as alleged herein, at the time that Defendant warranted and sold the Vehicles, it knew that the Vehicles were defective, and Defendant wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Vehicles. Plaintiffs and the Class members were therefore induced to purchase the Vehicles under false and/or fraudulent pretenses.

329.   Further, the enforcement under these circumstances of any limitations whatsoever on the recovery of incidental and/or consequential damages is barred because any such limitations work to reallocate the risks between the parties in an unconscionable and objectively unreasonable manner, and result in overly harsh or one-sided results that shock the conscience, especially in light of the fact that Defendant simply placed defective components in the Vehicles when those Vehicles are brought in for repairs.

330.   Moreover, many of the damages flowing from the Vehicles cannot be resolved by the limited remedies contained in the express warranty as those incidental

and consequential damages have already been suffered due to Defendant's fraudulent conduct as alleged herein and due to their failure to provide such limited remedy within a reasonable time. Therefore, any limitation on Plaintiffs' and the Class members' remedies would cause the available remedy to be insufficient to make them whole.

331. Defendant was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails, and other communications from Class members, dealers, and other repair facilities.

332. Plaintiffs and the Class members have suffered damages directly and proximately caused by Defendant's breach of the express warranty and are entitled to recover damages including, but not limited to, out of pocket expenses and diminution of value.

**COUNT II**
**BREACH OF IMPLIED WARRANTY—**
**MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. §§ 2301, *ET SEQ.*)**

333. Plaintiffs re-allege and incorporate each and every allegation set forth above as if fully written herein

334. Plaintiffs bring this claim on behalf of the Nationwide Class.

335. The Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301.

336. Plaintiffs and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301 because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

337. Defendant is a "supplier" of consumer products to consumers and a "warrantor" within the meaning of 15 U.S.C. § 2301.

338. 15 U.S.C. § 2310(d)(1)(A) and/or § 2310(d)(3)(C) is satisfied because Plaintiffs properly invoke jurisdiction under the Class Action Fairness Act ("CAFA").

339.    Section 2310(d)(1) of Chapter 15 of the United States Code provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

340.    Defendant made written and implied warranties regarding the Vehicles to Plaintiffs and Class members within the meaning of 15 U.S.C. § 2301.   Defendant provided Plaintiffs and other Class members an implied warranty of merchantability within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

341.    Defendant breached the implied warranty of merchantability because the Vehicles were not fit for the ordinary purpose for which such goods are used. As described throughout the Complaint, the Vehicles contain defects which render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class members would not have purchased the Vehicles had they known of the defects.

342.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

343.    Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their Vehicles, in an amount to be proven at trial.

344.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

345.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1) and damages as a result of Defendant's violation of its written and/or implied warranties.

## COUNT III
## VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *ET SEQ.*)

346.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

347.    Plaintiffs bring this claim as part of the Nationwide Class.

348.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

349.    The Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

350.    Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other Class members, and Honda are "persons" as defined in Cal. Civ. Code § 1761(c).

351.    As alleged herein, Honda made misleading representations and omissions concerning the benefits, performance, and safety of the Vehicles, including the infotainment system.

352.    In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Honda's failure to disclose its knowledge of the defect in its infotainment system.

353.    Honda's conduct as described herein was and is in violation of the CLRA. Honda's conduct violates at least the following enumerated CLRA provisions:

        i.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

        ii.    Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

     iii.   Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

     iv.   Cal Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

354. Honda intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles, specifically regarding the infotainment system, with an intent to mislead Plaintiffs and Class members.

355. In purchasing or leasing the Vehicles, Plaintiffs and other Class members were deceived by Honda's failure to disclose its knowledge of the defect in its infotainment system.

356. Plaintiffs and other Class members had no way of knowing Honda's representations were false, misleading, and incomplete or knowing the true nature of the infotainment system.

357. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its infotainment system. Plaintiffs and other Class members did not, and could not, unravel Honda's deception on their own.

358. Honda knew or should have known its conduct violated the CLRA.

359. Honda owed Plaintiffs and the Class members a duty to disclose the truth about its faulty infotainment system because the defect created a safety hazard and Honda:

     i.   Possessed exclusive knowledge of the defect in the infotainment system,

     ii.   Intentionally concealed the foregoing from Plaintiffs and Class members; and/or

iii.     Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the infotainment system was defective.

360.   Honda had a duty to disclose that the infotainment system in the Vehicles was fundamentally flawed as described herein, because the defect created a safety hazard, and Plaintiffs and the other Class members relied on Honda's material misrepresentations and omissions regarding the features of the Vehicles and infotainment system.

361.   Honda's conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

362.   Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

363.   Honda's violations cause continuing injuries to Plaintiffs and other Class members.

364.   Honda's unlawful acts and practices complained of herein affect the public interest.

365.   Honda knew of the defective infotainment system, and that the Vehicles were materially compromised by such defects.

366.   The facts concealed and omitted by Honda from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase an Acura vehicle or pay a lower price. Had Plaintiffs and the other Class members known about the defective nature of the Vehicles, they would not have purchased the Vehicles or would not have paid the prices they paid.

367.   Plaintiffs' and the other Class members' injuries were proximately caused by Honda's unlawful and deceptive business practices.

368.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Honda from engaging in the methods, acts, or practices alleged herein, including further concealment of the defect in the infotainment system.

369.    Plaintiffs sent out a notice letter on July 10, 2019.

370.    Pursuant to Cal. Civ. Code § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiffs intend to amend this Complaint to add claims under the Cal. Civ. Code for:

    i.    Actual damages;

    ii.    Restitution of money to Plaintiffs and Class members, and the general public;

    iii.    Punitive damages;

    iv.    An additional award of up to $5,000 to each Plaintiffs and any Class member who is a "senior citizen";

    v.    Attorneys' fees and costs; and

    vi.    Other relief that this Court deems proper.

## COUNT IV
## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

371.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

372.    Plaintiffs bring this claim on behalf of the Nationwide Class.

373.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

374.    Honda's conduct, as described herein, was and is in violation of the UCL. Honda's conduct violates the UCL in at least the following ways:

    i. By failing to disclose that the infotainment system in the Vehicles was defective;

    ii. By selling and leasing Vehicles that suffer from such defects;

    iii. By knowingly and intentionally concealing from Plaintiffs and the other Class members that the infotainment system was defective;

    iv. By marketing Vehicles as safe, convenient, and defect free, with cutting edge technology, all while knowing of the defect related to the infotainment system; and

    v. By violating other California laws, including California consumer protection laws.

375. Honda intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with intent to mislead Plaintiffs and the other Class members.

376. In purchasing or leasing the Vehicles, Plaintiffs and the other Class members were deceived by Honda's failure to disclose the defect related to the infotainment system.

377. Plaintiffs and the other Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Honda's representations were false, misleading, and incomplete. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its infotainment system. Plaintiffs and the other Class members did not, and could not, unravel Honda's deception on their own.

378. Honda knew or should have known that its conduct violated the UCL.

379. Honda owed Plaintiffs and the other Class members a duty to disclose the truth about its infotainment system because the defect created a safety hazard and Honda:

i.  Possessed exclusive knowledge of the defect in the infotainment system;

ii.  Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

iii.  Made incomplete representations by failing to warn the public or to publicly admit that the infotainment system was defective.

380.  Honda had a duty to disclose that the infotainment system in the Vehicles was fundamentally flawed as described herein, because Plaintiffs and the other Class members relied on Honda's material misrepresentations and omissions.

381.  Honda's conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Vehicles and suffered harm as alleged herein.

382.  Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiffs and the other Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

383.  Honda's violations cause continuing injuries to Plaintiffs and Class members.

384.  Honda's unlawful acts and practices complained of herein affect the public interest.

385.  Honda's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases of their Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased these Vehicles, would not have purchased these Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain defective infotainment systems that failed to live up to industry standards.

386.    Accordingly, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Honda's misrepresentations and omissions.

387.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

## COUNT V
## FRAUD BY CONCEALMENT
## (BASED ON CALIFORNIA LAW)

388.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

389.    Plaintiffs bring this claim on behalf of the Nationwide Class.

390.    Honda intentionally concealed that the infotainment system is defective.

391.    Honda further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles it was selling had no significant defects, that the infotainment system was a safety feature, reliable, and would perform and operate properly.

392.    Honda knew about the defect in the infotainment system when these representations were made.

393.    The Vehicles purchased by Plaintiffs and the other Class members contained defective infotainment system.

394.    Honda had a duty to disclose that the infotainment system contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiffs and the other Class members relied on Honda's material representations.

395.   As alleged herein, at all relevant times, Honda has held out the Vehicles to be free from defects such as the defect related to the infotainment system. Honda touted and continues to tout the many benefits and advantages of the infotainment system, but nonetheless failed to disclose important facts related to the defect. This made Honda's other disclosures about the infotainment system deceptive.

396.   The truth about the defective infotainment system was known only to Honda; Plaintiffs and the other Class members did not know of these facts and Honda actively concealed these facts from Plaintiffs and Class members.

397.   Plaintiffs and the other Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete. As consumers, Plaintiffs and Class members did not, and could not, unravel Honda's deception on their own. Rather, Honda intended to deceive Plaintiffs and Class members by concealing the true facts about the Vehicles' infotainment systems.

398.   Honda's false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

399.   Honda had a duty to disclose the infotainment system defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

400.   Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality, and performance of the Vehicle.

401.    Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the infotainment system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and Class members.

402.    Honda has still not made full and adequate disclosures and continues to defraud Plaintiffs and Class members by concealing material information regarding the defect in the infotainment system.

403.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class members' actions were justified. Honda was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

404.    Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own or lease Vehicles that are diminished in value as a result of Honda's concealment of the true quality of those Vehicles' infotainment systems. Had Plaintiffs and Class members been aware of the defect in the infotainment systems installed in the Vehicles, and the Company's disregard for the truth, Plaintiffs and Class members would have paid less for their Vehicles or would not have purchased or leased them at all.

405.    The value of Plaintiffs' and Class members' Vehicles has diminished as a result of Honda's fraudulent concealment of the defective infotainment system of the Vehicles, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

406.   Accordingly, Honda is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

407.   Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

408.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

409.   Plaintiffs bring this claim on behalf of the Nationwide Class.

410.   Defendant is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

411.   A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

412.   Honda marketed the Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase or lease the Vehicles.

413.   Plaintiffs and other Class members purchased or leased the Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Vehicles.

414.   Honda knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

415.   Because of the defect in the infotainment system, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

416.   Honda knew about the defect in the infotainment system, allowing Honda to cure their breach of its warranty if it chose.

417.   Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the defect at the time of sale.

418.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

419.   Accordingly, Honda is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

**B.    Claims Brought on Behalf of the California Class**

### COUNT VII
### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *ET SEQ.*)

420.   Plaintiff Jimmy Banh ("Plaintiff" for purposes of all California Class counts) incorporates by reference all paragraphs as though fully set forth herein.

421.   Plaintiff brings this claim on behalf of the California Class, if California's law does not apply nationwide.

422.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

423.   The Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

424.   Plaintiff and the other California Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other California Class members, and Honda are "persons" as defined in Cal. Civ. Code § 1761(c).

425.   As alleged herein, Honda made misleading representations and omissions concerning the benefits, performance, and safety of the class Vehicles, including the infotainment system.

426.   In purchasing or leasing the class Vehicles, plaintiff and the other California Class members were deceived by Honda's failure to disclose its knowledge of the defect in its infotainment system and its knowledge that the infotainment system would not be compatible with Android Auto.

427.   Honda's conduct as described herein was and is in violation of the CLRA. Honda's conduct violates at least the following enumerated CLRA provisions:

**a.** Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

ii. Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

iii. Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

iv. Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

428.    Honda intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles, specifically regarding the infotainment system, with an intent to mislead Plaintiff and the other California Class members.

429.    In purchasing or leasing the Vehicles, Plaintiff and the other California Class members were deceived by Honda's failure to disclose its knowledge of the defect in its infotainment system and its knowledge that the infotainment system would not be compatible with Android Auto.

430.    Plaintiff and the other California Class members had no way of knowing Honda's representations were false, misleading, and incomplete or knowing the true nature of the infotainment system. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its infotainment system. Plaintiff and the other California Class members did not, and could not, unravel Honda's deception on their own.

431.    Honda knew or should have known its conduct violated the CLRA.

432.    Honda owed Plaintiff and the other California Class members a duty to disclose the truth about its faulty infotainment system because the defect created a safety hazard and Honda:

i.    Possessed exclusive knowledge of the defect in the infotainment system;

ii.     Possessed exclusive knowledge that the infotainment system would not be compatible with Android Auto;

ii.     Intentionally concealed the foregoing from Plaintiff and the other California Class members; and/or

iii.    Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the infotainment system was defective.

433.   Honda had a duty to disclose that the infotainment system in the Vehicles was fundamentally flawed as described herein, because the defect created a safety hazard, and Plaintiff and the other California Class members relied on Honda's material misrepresentations and omissions regarding the features of the Vehicles and infotainment system.

434.   Honda's conduct proximately caused injuries to Plaintiff and the other California Class members who purchased or leased the Vehicles and suffered harm as alleged herein.

435.   Plaintiff and the other California Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other California Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

436.   Honda's violations cause continuing injuries to Plaintiff and the other California Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

437.   Honda knew of the defective infotainment system, and that the Vehicles were materially compromised by such defects.

438.   The facts concealed and omitted by Honda from Plaintiff and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase an Acura vehicle or

pay a lower price. Had Plaintiff and the other California Class members known about the defective nature of the Vehicles, they would not have purchased or leased the Vehicles or would not have paid the prices they paid.

439. Plaintiff's and the other California Class members' injuries were proximately caused by Honda's unlawful and deceptive business practices.

440. Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks an order enjoining Honda from engaging in the methods, acts, or practices alleged herein, including further concealment of the defect in the infotainment system.

441. Plaintiff sent out a notice letter on July 10, 2019.

442. Pursuant to Cal. Civ. Code § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiff intends to amend this Complaint to add claims under the CLRA for:

    i.    Actual damages;

    ii.    Restitution of money to Plaintiff and the California Class members, and the general public;

    iii.    Punitive damages;

    iv.    An additional award of up to $5,000 to any Class member who is a "senior citizen";

    v.    Attorneys' fees and costs; and

    vi.    Other relief that this Court deems proper.

**COUNT VIII**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

443. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

444. Plaintiff brings this claim on behalf of the California Class.

445. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair

1 │ or fraudulent business act or practice and unfair, deceptive, untrue, or misleading

2 │ advertising."

3 │      446.   Honda's conduct, as described herein, was and is in violation of the UCL.

4 │ Honda's conduct violates the UCL in at least the following ways:

5 │           i.    By failing to disclose that the infotainment system in the Vehicles

6 │                was defective and that the infotainment system would not be

7 │                compatible with Android Auto;

8 │           ii.   By selling and leasing Vehicles that suffer from such defects without

9 │                fixing the defect pursuant to the warranty;

10 │           iii.   By knowingly and intentionally concealing from Plaintiff and the

11 │                other California Class members that the infotainment system was

12 │                defective;

13 │           iv.   By marketing Vehicles as safe, convenient, and defect free, with

14 │                cutting edge technology, all while knowing of the defect related to

15 │                the infotainment system; and

16 │           v.    By violating other California laws, including California consumer

17 │                protection laws.

18 │      447.   Honda intentionally and knowingly misrepresented and omitted material

19 │ facts regarding the Vehicles with intent to mislead Plaintiff and the other California

20 │ Class members.

21 │      448.   In purchasing or leasing the Vehicles, Plaintiff and the other California

22 │ Class members were deceived by Honda's failure to disclose the defect related to the

23 │ infotainment system.

24 │      449.   Plaintiff and the other California Class members reasonably relied upon

25 │ Honda's false misrepresentations and omissions. They had no way of knowing that

26 │ Honda's representations were false, misleading, and incomplete. As alleged herein,

27 │ Honda engaged in a pattern of deception and public silence in the face of a known defect

28 │

with its infotainment system. Plaintiff and the other California Class members did not, and could not, unravel Honda's deception on their own.

450. Honda knew or should have known that its conduct violated the UCL.

451. Honda owed Plaintiff and the other California Class members a duty to disclose the truth about its infotainment system because the defect created a safety hazard and Honda:

      i.   Possessed exclusive knowledge of the defect in the infotainment system and that the infotainment system would not be compatible with Android Auto;

      ii.   Intentionally concealed the foregoing from Plaintiff and the other California Class members; and/or

      iii.   Made incomplete representations by failing to warn the public or to publicly admit that the infotainment system was defective.

452. Honda had a duty to disclose that the infotainment system in the Vehicles was fundamentally flawed as described herein, because Plaintiff and the other California Class members relied on Honda's material misrepresentations and omissions.

453. Honda's conduct proximately caused injuries to Plaintiff and the other California Class members that purchased or leased the Vehicles and suffered harm as alleged herein.

454. Plaintiff and the other California Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other California Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

455. Honda's violations cause continuing injuries to Plaintiff and the other California Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

456.   Honda's misrepresentations and omissions alleged herein caused Plaintiff and the other California Class members to make their purchases of their Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other California Class members would not have purchased or leased the Vehicles, would not have purchased or leased the Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain defective infotainment systems that failed to live up to industry standards.

457.   Accordingly, Plaintiff and the other California Class members have suffered injury-in-fact, including lost money or property, as a result of Honda's misrepresentations and omissions.

458.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and California Class members any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

## COUNT IX
## FRAUD BY CONCEALMENT
## (BASED ON CALIFORNIA LAW)

459.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

460.   Plaintiff brings this claim on behalf of the California Class.

461.   Honda intentionally concealed that the infotainment system is defective and that the infotainment system would not be compatible with Android Auto.

462.   Honda further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles it was selling had no significant defects, that the infotainment system was a safety feature, reliable, and would perform and operate properly.

1    463.   Honda knew about the defect in the infotainment system when these

2    representations were made.

3    464.   The Vehicles purchased by Plaintiff and the other California Class

4    members contained a defective infotainment system.

5    465.   Honda had a duty to disclose that the infotainment system contained a

6    fundamental defect as alleged herein, because the defect created a safety hazard and

7    Plaintiff and the other California Class members relied on Honda's material

8    representations.

9    466.   As alleged herein, at all relevant times, Honda has held out the Vehicles to

10   be free from defects such as the defect related to the infotainment system. Honda touted

11   and continues to tout the many benefits and advantages of the infotainment system, but

12   nonetheless failed to disclose important facts related to the defect. This made Honda's

13   other disclosures about the infotainment system deceptive.

14   467.   The truth about the defective infotainment system was known only to

15   Honda; Plaintiff and the other California Class members did not know of these facts and

16   Honda actively concealed these facts from Plaintiff and Class members.

17   468.   Plaintiffs and the other California Class members reasonably relied upon

18   Honda's deception. They had no way of knowing that Honda's representations were

19   false, misleading, or incomplete. As consumers, Plaintiff and Class members did not,

20   and could not, unravel Honda's deception on their own. Rather, Honda intended to

21   deceive Plaintiff and Class members by concealing the true facts about the Vehicles'

22   infotainment systems.

23   469.   Honda's false representations and omissions were material to consumers

24   because they concerned qualities of the Vehicles that played a significant role in the

25   value of the Vehicles.

26   470.   Honda had a duty to disclose the infotainment system defect and violations

27   with respect to the Vehicles because details of the true facts were known and/or

28

accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

471.    Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality, and performance of the Vehicles.

472.    Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the infotainment system as set forth herein and that the infotainment system would not be compatible with Android Auto. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiff and Class members.

473.    Honda has still not made full and adequate disclosures, and continues to defraud Plaintiff and Class members by concealing material information regarding the defect in the infotainment system.

474.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Class members' actions were justified. Honda was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

475.    Because of the concealment and/or suppression of facts, Plaintiff and Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's concealment of the true quality of those Vehicles' infotainment systems. Had Plaintiff and Class members been aware of the defect in the infotainment

systems installed in the Vehicles, and the Company's disregard for the truth, Plaintiff and Class members who purchased or leased a Vehicle would have paid less for it or would not have purchased it at all.

476.    The value of Plaintiff's and Class members' Vehicles has diminished as a result of Honda's fraudulent concealment of the defective infotainment system of the Vehicles, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

477.    Accordingly, Honda is liable to Plaintiff and Class members for damages in an amount to be proven at trial.

478.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT X
## BREACH OF EXPRESS WARRANTY
## (BASED ON CALIFORNIA LAW)

479.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

480.    Plaintiff brings this claim on behalf of the California Class.

481.    Honda is and was at all relevant times a merchant with respect to motor vehicles.

482.    In its Limited Warranty, Defendant expressly warranted that "Acura will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

483.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other California Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

484.   Honda breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

485.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other California Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

486.   Accordingly, recovery by Plaintiff and the other California Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other California Class members, seek all remedies as allowed by law.

487.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective.  Honda wrongfully and fraudulently concealed material facts regarding its Vehicles including, but not limited to, that the infotainment system would not be compatible with Android Auto.  Plaintiffs and the other California Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

488.   Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited

remedy within a reasonable time, and any limitation on Plaintiff's and the other California Class members' remedies would be insufficient to make Plaintiff and the other California Class members whole.

489.   Due to Honda's breach of warranties as set forth herein, Plaintiffs and the other California Class members assert as an additional and/or alternative remedy for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other California Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages.

490.   Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

491.   As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the other California Class members have been damaged in an amount to be determined at trial.

**COUNT XI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

492.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

493.   Plaintiff brings this claim on behalf of the California Class.

494.   Defendant is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

495.   A warranty that the Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

496.   Honda marketed the Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiff's and Class members' decisions to purchase the Vehicles.

497.   Plaintiff and the other California Class members purchased or leased the Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Vehicles.

498.   Honda knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

499.   Because of the defect in the infotainment system, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

500.   Honda knew about the defect in the infotainment system, allowing Honda to cure their breach of its warranty if it chose.

501.   Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other California Class members. Among other things, Plaintiff and the other California Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other California Class members, and Honda knew of the defect at the time of sale.

502.   Plaintiff and the other California Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

503.   Accordingly, Honda is liable to Plaintiff and the other California Class members for damages in an amount to be proven at trial.

### C.   Claims Brought on Behalf of the Arizona Class

### COUNT XII
### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT
### (ARIZ. REV. STAT. § 44-1521 ET SEQ.)

504.   Plaintiff Roberta Bilbrey ("Plaintiff" for purposes of all Arizona Class counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

505.   Plaintiff brings this claim on behalf of the Arizona Class.

506.   The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud . . . , misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A). Honda concealed and failed to disclose the infotainment system defect and that the infotainment system would not be compatible with Android Auto.  Honda had an ongoing duty to Plaintiff and the Arizona Class to refrain from unfair and deceptive practices under the Arizona CFA in the course of its business

507.   Honda is a "person" within the meaning of the Arizona CFA, Ariz. Rev. Stat. § 44-1521(6). Each class vehicle at issue is "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

508.   Honda's conduct, as set forth above, occurred in the conduct of trade or commerce. In the course of its business, Honda concealed and suppressed material facts concerning the class vehicles.

509.   The facts concealed and omitted by Honda from Plaintiff and the other Arizona Class members are material in that a reasonable consumer would have

considered them to be important in deciding whether to purchase or lease the class vehicles or pay a lower price. Had Plaintiff and the other Arizona Class members known of the true facts at the time they purchased or leased their Vehicles, they would not have purchased or leased those Vehicles, or would have paid substantially less for the Vehicles than they did.

510. Pursuant to the Arizona CFA, Plaintiff seeks monetary relief against Honda in an amount to be determined at trial. Plaintiff also seeks punitive damages because Honda engaged in aggravated and outrageous conduct with an evil mind.

511. Plaintiff also seeks an order enjoining Honda's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT XIII
## BREACH OF EXPRESS WARRANTY
## (ARIZ. REV. STAT. § 47-2313)

512. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

513. Plaintiff brings this Count on behalf of the Arizona Class.

514. Honda is and was at all relevant times a merchant with respect to motor vehicles under Ariz. Rev. Stat. § 47-2104(A).

515. In its Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

516. Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Arizona Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

517. Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda. Honda has not

repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

518.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Arizona Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

519.   Accordingly, recovery by Plaintiff and the other Arizona Class members is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Arizona Class members, seeks all remedies as allowed by law.

520.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective and that the infotainment system would not be compatible with Android Auto. Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiff and the other Arizona Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

521.   Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Arizona Class members' remedies would be insufficient to make Plaintiff and the other Arizona Class members whole.

522.   Finally, due to Honda's breach of warranties as set forth herein, Plaintiff and the other Arizona Class members assert as an additional and/or alternative remedy, as set forth in Ariz. Rev. Stat. § 47-2711, for a revocation of acceptance of the goods,

and for a return to Plaintiff and to the other Arizona Class members of the purchase price of all Class Vehicles currently owned and for such other incidental and consequential damages as allowed under Ariz. Rev. Stat. §§ 47-2711 and 47-2608.

523.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and the Class.

524.   As a direct and proximate result of Honda's breach of express warranties, Plaintiff and the Arizona Class members have been damaged in an amount to be determined at trial.

## COUNT XIV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ARIZ. REV. STAT. § 47-2314)

525.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

526.   Plaintiff brings this Count on behalf of the Arizona Class.

527.   Honda is and was at all relevant times a merchant with respect to motor vehicles under Ariz. Rev. Stat. § 47-2014.

528.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Ariz. Rev. Stat. § 47-2314.  These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used.  Specifically, the Class Vehicles contain infotainment system defects that render the Vehicles unsafe and prevent users from enjoying many of the Vehicles' features that Class members paid for.

529.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and the Class.

530.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

**D.   Claims Brought on Behalf of the Florida Class**

**COUNT XV**
**VIOLATIONS OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(FLA. STAT. § 501.201, *ET SEQ.*)**

531.   Plaintiff Lawrence Goldman ("Plaintiff" for purposes of all Florida Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

532.   Plaintiff brings this claim on behalf of the Florida Class.

533.   Plaintiff and the other Florida Class members are 'consumers', as defined by § 501.203(7) of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

534.   Honda engaged in "trade or commerce", as defined by § 501.203(8) of the FDUTPA.

535.   The sale of the Vehicles to Plaintiff and other Florida Class members was a "consumer transaction", as defined by § 1345.01 of the FDUTPA.

536.   Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…" Fla. Stat. § 501.204(1). Honda participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

537.   By not disclosing the defective nature of the infotainment system Honda has willfully and knowingly engaged in unfair and deceptive acts in the conduct of trade and commerce within the State of Florida.

538.   In purchasing or leasing the Vehicles, Plaintiff and the other Florida Class members were deceived by Honda's failure to disclose that the infotainment system in the Vehicles was defective.

539.    Plaintiff and the other Florida Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Honda's representations were false, misleading, and incomplete. As alleged herein, Honda willfully and knowingly engaged in a pattern of deception and public silence in the face of a known defect with its infotainment system. Plaintiff and the other Florida Class members did not, and could not, unravel Honda's deception on their own.

540.    Honda's actions as set forth above occurred in the conduct of trade or commerce.

541.    Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

542.    Honda willfully and knowingly misrepresented material facts regarding the Vehicles with intent to mislead Plaintiff and the other Florida Class members.

543.    Honda knew or should have known that its conduct violated the FDUTPA.

544.    Honda owed Plaintiff and the other Florida Class members a duty to disclose the truth about its faulty infotainment system because the defect created a safety hazard and Honda:

        i.    Possessed exclusive knowledge of the defect in the infotainment system;

        ii.   Intentionally concealed the foregoing from Plaintiff and the other Florida Class members; and/or

        iii.  Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the infotainment system was defective.

545.    Honda had a duty to disclose that the infotainment system in the Vehicles was fundamentally flawed as described herein, because the defect created a safety hazard and Plaintiff and the other Florida Class members relied on Honda's material

misrepresentations and omissions regarding the technology, benefits, efficiency, convenience, performance, and safety features of the infotainment system.

546.   Honda's conduct proximately caused injuries to Plaintiff and the other Florida Class members who purchased or leased the Vehicles and suffered harm as alleged herein.

547.   Plaintiff and the other Florida Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Florida Class members incurred costs, including overpaying for their Vehicles that have suffered a diminution in value.

548.   Honda's violations cause continuing injuries to Plaintiff and the other Florida Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

549.   Plaintiff and the other Florida Class members seek damages and treble damages for Honda's knowing violations.

550.   Plaintiff and the other Florida Class members also seek court costs and attorneys' fees.

## COUNT XVI
## FRAUDULENT CONCEALMENT
## (BASED ON FLORIDA LAW)

551.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

552.   Plaintiff brings this claim on behalf of the Florida Class.

553.   Honda intentionally concealed that the infotainment system is defective.

554.   Honda further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Vehicles it was selling had no significant defects, that the infotainment system was a safety feature, reliable, and would perform and operate properly.

555.   Honda knew about the defect in the infotainment system when these representations were made.

556.   The Vehicles purchased by Plaintiff and the other Florida Class members contained a defective infotainment system.

557.   Honda had a duty to disclose that the infotainment system contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiff and the other Florida Class members relied on Honda's material representations.

558.   As alleged herein, at all relevant times, Honda has held out the Vehicles to be free from defects such as the defect related to the infotainment system. Honda touted and continues to tout the many benefits and advantages of the infotainment system, but nonetheless failed to disclose important facts related to the defect. This made Honda's other disclosures about the infotainment system deceptive.

559.   The truth about the defective infotainment system was known only to Honda; Plaintiff and the other Florida Class members did not know of these facts and Honda actively concealed these facts from Plaintiff and the other Florida Class members.

560.   Plaintiff and the other Florida Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete. As consumers, Plaintiff and the other Florida Class members did not, and could not, unravel Honda's deception on their own. Rather, Honda intended to deceive Plaintiff and the other Florida Class members by concealing the true facts about the Vehicles' infotainment systems.

561.   Honda's false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

1      562.  Honda had a duty to disclose the infotainment system defect and violations

2  with respect to the Vehicles because details of the true facts were known and/or

3  accessible only to Honda, because Honda had exclusive knowledge as to such facts, and

4  because Honda knew these facts were not known to or reasonably discoverable by

5  Plaintiff or Class members.

6      563.  Honda also had a duty to disclose because it made general affirmative

7  representations about the technological and safety innovations included with its

8  Vehicles, without telling consumers that one of the features had a fundamental defect

9  that would affect the safety, quality and performance of the Vehicles.

10     564.  Honda's disclosures were misleading, deceptive, and incomplete because

11  they failed to inform consumers of the additional facts regarding the defect in the

12  infotainment system as set forth herein. These omitted and concealed facts were material

13  because they directly impact the value of the Vehicles purchased by Plaintiff and the

14  other Florida Class members.

15     565.  Honda has still not made full and adequate disclosures, and continues to

16  defraud Plaintiff and the other Florida Class members by concealing material

17  information regarding the defect in the infotainment system.

18     566.  Plaintiff and the other Florida Class members were unaware of the omitted

19  material facts referenced herein, and they would not have acted as they did if they had

20  known of the concealed and/or suppressed facts, in that they would not have purchased

21  or paid as much for cars with faulty technology, and/or would have taken other

22  affirmative steps in light of the information concealed from them. Plaintiff's and the

23  other Florida Class members' actions were justified. Honda was in exclusive control of

24  the material facts, and such facts were not generally known to the public, Plaintiff, or

25  Class members.

26     567.  Because of the concealment and/or suppression of facts, Plaintiff and the

27  other Florida Class members sustained damage because they own(ed) Vehicles that are

28

diminished in value as a result of Honda's concealment of the true quality of those Vehicles' infotainment systems. Had Plaintiff and the other Florida Class members been aware of the defect in the infotainment systems installed in the Vehicles, and the Company's disregard for the truth, Plaintiff and the other Florida Class members who purchased or leased a Vehicle would have paid less for it or would not have purchased or leased it at all.

568.   The value of Plaintiff's and the other Florida Class members' Vehicles has diminished as a result of Honda's fraudulent concealment of the defective infotainment system of the Vehicles, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

569. Accordingly, Honda is liable to Plaintiff and the other Florida Class members for damages in an amount to be proven at trial.

570.   Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Florida Class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XVII
## BREACH OF EXPRESS WARRANTY
## (FLA. STAT. § 672.313)

571.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

572.   Plaintiff brings this claim on behalf of the Florida Class.

573.   Plaintiff was at all relevant times a "buyer", as defined by § 672.103 of the Florida Uniform Commercial Code.

574.   Honda was at all relevant times a "merchant", as defined by § 672.104 of the Florida Uniform Commercial Code.

575.   The Vehicles are and were at all relevant times "goods," as defined by § 672.105 of the Florida Uniform Commercial Code.

576.   Honda marketed the Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiff's and the other Florida Class members' decisions to purchase the Vehicles.

577.   In connection with the purchase or lease of each of the Vehicles, Honda provided warranty coverage for the Vehicles for four years or 50,000 miles, which obliges Honda to repair or replace any part that is defective under normal use.

578.   Honda's warranty formed a basis of the bargain that was reached when Plaintiff and other Florida Class members purchased their Vehicles.

579.   Plaintiff and the other Florida Class members owned Vehicles with defective infotainment systems within the warranty period but had no knowledge of the existence of the defect, which was known and concealed by Honda.

580.   Despite the existence of the warranty, Honda failed to inform Plaintiff and the other Florida Class members that the Vehicles contained the defective infotainment systems during the warranty periods.

581.   Honda breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

582.   Honda knew about the defect in the infotainment systems, allowing Honda to cure their breach of its warranty if it chose.

583.   However, Honda concealed the defect and has failed to repair or replace the infotainment systems despite the defect's existence at the time of sale or lease of the Vehicles.

584.   Any attempt by Honda to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Honda's

warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other Florida Class members. Among other things, Plaintiff and the other Florida Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Florida Class members, and Honda knew that the infotainment systems were defective at the time of sale.

585. Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and other Florida Class members whole because the replacement part used by Honda contains the same defect. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

586. Accordingly, Honda is liable to Plaintiff and the other Florida Class members for damages in an amount to be proven at trial.

### COUNT XVIII
### BREACH OF IMPLIED WARRANTY
### (FLA. STAT. § 672.314)

587. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

588. Plaintiff brings this claim on behalf of the Florida Class.

589. Plaintiff was at all relevant times a "buyer", as defined by § 672.103 of the Florida Uniform Commercial Code.

590. Honda was at all relevant times a "merchant", as defined by § 672.104 of the Florida Uniform Commercial Code.

591. The Vehicles are and were at all relevant times "goods", as defined by § 672.105 of the Florida Uniform Commercial Code.

592.   Honda marketed the Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiff's and the other Florida Class members' decisions to purchase the Vehicles.

593.   Plaintiff and the other Florida Class members purchased or leased the Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Vehicles.

594.   Honda knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

595.   Honda impliedly warranted that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

596.   Because of the defect in the infotainment system, the Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

597.   Honda knew about the defect in the infotainment systems, allowing Honda to cure their breach of its warranty if it chose.

598.   Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other Florida Class members. Among other things, Plaintiff and the other Florida Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Florida Class members, and Honda knew of the defect at the time of sale.

599.   Plaintiff and the other Florida Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

600.   Accordingly, Honda is liable to Plaintiff and the other Florida Class members for damages in an amount to be proven at trial.

**COUNT XIX**
**UNJUST ENRICHMENT**
**(BASED ON FLORIDA LAW)**

601.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

602.   Plaintiff brings this claim on behalf of the Florida Class.

603.   Honda has benefitted and been enriched by the conduct alleged herein. Honda has generated substantial revenue from the unlawful conduct described herein. Honda has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the other Florida Class members.

604.   Honda has voluntarily accepted and retained this benefit.

605.   The circumstances, as described herein, are such that it would be inequitable for Honda to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the other Florida Class members.

606.   Plaintiff and the other Florida Class members are entitled to the amount of Honda's ill-gotten gains, including interest, resulting from their unlawful, unjust, unfair, and inequitable conduct as alleged herein.

**E.    Claims Brought on Behalf of the Georgia Class**

**COUNT XX**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT**
**(GA. CODE ANN. § 10-1-390 ET SEQ.)**

607.   Plaintiff Mark Peoples ("Plaintiff," for purposes of all Georgia Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

608.   Plaintiff brings this claim on behalf of the Georgia Class.

609.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

610.   Plaintiff and Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

611.   Defendant engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b)

612.   Defendant violated the Georgia FBPA by misrepresenting and concealing and failing to disclose the infotainment defect. Defendant had an ongoing duty to Plaintiff and the Georgia Class to refrain from unfair and deceptive practices under the Georgia FBPA in the course of its business.

613.   Plaintiff and the Georgia Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments, misrepresentations, and/or failure to disclose material information.

614.   Plaintiff and the Georgia Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a). On July 10, 2019, Plaintiff's counsel provided Defendant with a written demand for relief pursuant to Ga. Code Ann. § 10-1-399(b).

615.   Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per GA Code Ann. § 10-1-399.

## COUNT XXI
## BREACH OF EXPRESS WARRANTY
## (BASED ON GEORGIA LAW)

616.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

617.   Plaintiff brings this claim on behalf of the Georgia Class.

618.   In its New Vehicle Limited Warranty, Defendant expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

619.   Defendant's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

620.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda. Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

621.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Georgia Class whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

622.   Accordingly, recovery by Plaintiff and the Georgia Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the Georgia Class members, seeks all remedies as allowed by law.

623.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were defective. Honda wrongfully and fraudulently concealed material facts regarding its Class Vehicles, including that the infotainment system would not be compatible with Android Auto.   Plaintiff and the Georgia Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

624.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff and the Georgia Class members' remedies would be insufficient to make Plaintiff and the Georgia Class members whole.

625.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the Georgia Class assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiff and to the Georgia Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

626. Plaintiff and the Georgia Class have attempted to have their Vehicles repaired under the warranty. Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Georgia Class members and from dealers and other repair facilities.

627.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the Georgia Class members have been damaged in an amount to be determined at trial.

## COUNT XXII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (GA. CODE. ANN. §§ 11-2-314 AND 11-2A-212)

628.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

629.    Plaintiff brings this claim on behalf of the Georgia Class.

630.    Honda was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

631.    The Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

632.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

633.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles contain defective infotainment systems render them unsafe and unfit such that Plaintiff and Georgia Class Members would not have purchased the Vehicles had they known of the defects.

634.    Honda knew about the infotainment system defects at the time of Plaintiff's purchase, allowing it to cure their breach of warranty if it so chose.

635.    Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Georgia Class Members and from dealers and other repair facilities.

636.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Georgia Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**F.    Claims Brought on Behalf of the Illinois Class**

**COUNT XXIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
**(815 ILCS 505/1, *ET SEQ*. AND 720 ILCS 295/1A)**

637.    Plaintiff George Quinlan and Jamal Samaha ("Plaintiffs" for purposes of all Illinois Class Counts) incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

638.    Plaintiffs bring this claim on behalf of the Illinois Class.

639.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use of employment of any deception, fraud, false pretense, tales promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived, or damaged thereby." 815 ILCS 505/2.

640.    Defendant is a "person" as that term is defined in 815 ILCS 505/1(c).

641.    Plaintiffs and Class members are "consumers" as that term is defined in 815 ILCS 505/1(e).

642.    Honda violated the Illinois CFA by concealing and failing to disclose the infotainment system defects.  Honda had an ongoing duty to Plaintiffs and the Illinois Class to refrain from unfair and deceptive practices under the Illinois CFA in the course of its business.

643.    Plaintiffs and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments, misrepresentations, and/or failure to disclose material information.

644.    Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief against Defendant in the amount of actual damages as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

1    645.   Plaintiffs also seek an order enjoining Defendant's unfair and/or deceptive

2    acts or practices, attorneys' fees, and any other just and proper relief available under

3    815 ILCS 505/1, *et seq.*

4                           **COUNT XXIV**
                    **BREACH OF EXPRESS WARRANTY**
5                      **(BASED ON ILLINOIS LAW)**

6    646.   Plaintiffs incorporate by reference all preceding allegations as though fully

7    set forth herein.

8    647.   Plaintiffs brings this claim on behalf of the Illinois Class.

9    648.   Honda is and was at all relevant times a merchant with respect to motor

10   vehicles.

11   649.   In its New Vehicle Limited Warranty, Honda expressly warranted that it

12   "will repair or replace any part that is defective in material or workmanship under

13   normal use" and that "all repairs/replacements made under this warranty are free of

14   charge."

15   650.   Honda's warranty formed the basis of the bargain that was reached when

16   Plaintiffs and other Illinois Class members purchased or leased their Vehicles equipped

17   with the defective infotainment system from Honda.

18   651.   Plaintiffs and the other Illinois Class members experienced defects within

19   the warranty period.  Despite the existence of its warranty, Honda failed to inform

20   Plaintiffs and the other Illinois Class members that the Vehicles were defective and

21   failed to fix the defective infotainment system.

22   652.   Affording Honda a reasonable opportunity to cure its breach of written

23   warranty would be unnecessary and futile here.

24   653.   Also, as alleged in more detail herein, at the time Honda warranted and

25   sold the Vehicles, it knew that the Vehicles did not conform to Honda's warranty and

26   were defective and would not be compatible with Android Auto.  Honda wrongfully and

27   fraudulently concealed material facts regarding the Vehicles. Plaintiffs and the other

28

FIRST AMENDED COMPLAINT                      - 132 -

Illinois Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

654.   Honda was provided notice of these issues by numerous complaints filed against it, including the instant Complaint, within a reasonable amount of time after the defect was discovered.

655.   As a direct and proximate result of Honda's breach of express warranty, Plaintiffs and the other Illinois Class members have been damaged in an amount to be determined at trial.

**COUNT XXV**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(810 ILCS §§ 5/2-314 AND 5/2A-212)**

656.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

657.   Plaintiffs bring this claim on behalf of the Illinois Class.

658.   Honda was at all relevant times a "merchant" with respect to motor vehicles under 810 ILCS §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

659.   The Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS §§ 5/2-105(1) and 5/2A-103(1)(h).

660.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 ILCS §§ 28-2-314 and 28-12-212.

661.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and the other Illinois Class members would not have purchased the Vehicles had they known of the defects.

662.    Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

663.    Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

664.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and the other Illinois Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**G.    Claims Brought on Behalf of the Massachusetts Class**

**COUNT XXVI**
**VIOLATIONS OF THE MASSACHUSETTS**
**CONSUMER PROTECTION ACT**
**(MASS. GEN. LAWS CH. 93A)**

665.    Plaintiff Gary Hanna ("Plaintiff" for purposes of all Massachusetts Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

666.    Plaintiff brings this claim on behalf of the Massachusetts Class.

667.    The conduct of Honda as set forth herein constitutes unfair and deceptive acts or practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A, including, but not limited to, Honda's manufacture, and sale of Vehicles with the defective infotainment system, which Honda failed to adequately investigate, disclose, and remedy, and its misrepresentations and omissions regarding the safety, reliability, and functionality of its Vehicles, which misrepresentations and omissions possessed the tendency to deceive.

668.    Honda engages in the conduct of trade or commerce and the misconduct alleged herein occurred in trade or commerce.

669.    Therefore, Plaintiff seeks monetary and equitable relief under the

Massachusetts Consumer Protection Act as a result of Honda's unfair and deceptive acts and practices.   On June 10, 2019, and pursuant to Mass. Gen. Laws Ch. 93A, § 9(3), Plaintiff sent notice and demand to Honda of its violations of the Massachusetts Consumer Protection Act.

## COUNT XXVII
## BREACH OF EXPRESS WARRANTY
## (MASS. GEN. LAWS CH. 106, § 2-313)

670.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

671.   Plaintiff brings this claim on behalf of the Massachusetts Class.

672.   Honda is and was at all relevant times a "merchant" with respect to motor vehicles.

673.   In its Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

674.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Massachusetts Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

675.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

676.   Furthermore, the limited warranty of repair and/or replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Massachusetts Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

010811-12/1194995 V1

- 135 -

677.    Accordingly, recovery by Plaintiff and the other Massachusetts Class members is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Massachusetts Class members, seeks all remedies as allowed by law.

678.    Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto, and Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiff and the other Massachusetts Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

679.    Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Massachusetts Class members' remedies would be insufficient to make Plaintiff and the other Massachusetts Class members whole.

680.    Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Massachusetts Class members assert as an additional and/or alternative remedy, as set forth in Mass. Gen. Laws Ch. 106, § 2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Massachusetts Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed under Mass. Gen. Laws Ch. 106, §§ 2-711 and 2-608.

681.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

682.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be determined at trial.

## COUNT XXVIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MASS. GEN. LAWS CH. 106, § 2-314)

683.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

684.   Plaintiff brings this claim on behalf of the Massachusetts Class.

685.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

686.   A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

687.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that there are defects in the Vehicles' infotainment systems rendering certain crucial safety, communication, navigational, and entertainment functions inoperative.

688.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

689.   As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiff and the other Massachusetts Class members have been damaged in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**H.     Claims Brought on Behalf of the Nevada Class**

**COUNT XXIX**
**VIOLATION OF THE NEVADA DECEPTIVE**
**TRADE PRACTICES ACT**
**(NEV. REV. STAT. § 598.0903, *ET SEQ*.)**

690.   Plaintiff Cindy Ortiz ("Plaintiff" for purposes of all Nevada Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

691.   Plaintiff brings this claim on behalf of the Nevada Class.

692.   Defendant is a "person" for purposes of the Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 598.0903, *et seq.*

693.   Defendant's conduct as alleged herein occurred in the course of business.

694.   The NDTPA prohibits deceptive trade practices. Nev. Rev. Stat. § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the course of business or occupation, the person "[k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "[r]epresents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "[a]dvertises goods or services with intent not to sell or lease them as advertised and certified"; or "[k]nowingly makes any other false representation in a transaction." Nev. Rev. Stat. §§ 598.0915—598.0925.

695.   Nev. Rev. Stat. § 41.600 provides a private right of action for violations of the NDTPA.

696.   Honda violated the NDTPA by concealing and failing to disclose the infotainment system defects and that the infotainment system would not be compatible with Android Auto.  Honda had an ongoing duty to Plaintiff and the Nevada Class to refrain from unfair and deceptive practices under the NDTPA in the course of its business

697.    The practices of Defendant violate the NDTPA for, inter alia, one or more of the following reasons:

a.    Defendant represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.    Defendant provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Vehicles;

c.    Defendant represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.    Defendant failed to reveal material facts and information about the Vehicles, which did, or tended to, mislead Plaintiff and the Nevada Class about facts that could not reasonably be known by the consumer;

e.    Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.    Defendant failed to reveal material facts to Plaintiff and the Nevada Class, the omission of which would tend to mislead or deceive consumers, including Plaintiff and the Nevada Class;

i.    Defendant made material representations and statements of fact to Plaintiff and the Nevada Class that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were;

j.    Defendant intended that Plaintiff and the Nevada Class members rely on their misrepresentations and omissions, so that they would purchase or lease the Vehicles; and

k.    Under all of these circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous

such as to shock the conscience of the community and warrant the imposition of punitive damages.

698.   The conduct of Defendant was likely to mislead consumers and Defendant intended that Plaintiff and the Nevada Class members rely on their misrepresentations.

699.   The conduct of Defendant offends established public policy and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

700.   The foregoing acts, omissions and practices proximately caused Plaintiff and the Nevada Class members to suffer an ascertainable loss in the form of, inter alia, overpayment and diminution in value of the Vehicles, and Plaintiff and Nevada Class members are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

**COUNT XXX**
**BREACH OF EXPRESS WARRANTY**
**(BASED ON NEVADA LAW)**

701.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

702.   Plaintiff brings this claim on behalf of the Nevada Class.

703.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

704.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

705.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Nevada Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

706.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not

1    repaired or replaced, and has been unable to repair or replace, the Vehicles' materials
2    and workmanship defects.

3        707.    Furthermore, the limited warranty of repair and/or replacement of defective
4    parts, fails in its essential purpose because the contractual remedy is insufficient to make
5    Plaintiffs and the other Nevada Class members whole and because Honda has failed
6    and/or has refused to adequately provide the promised remedies within a reasonable
7    time.

8        708.    Accordingly, recovery by Plaintiff and the other Nevada Class members is
9    not limited to the limited warranty of repair or replacements to parts defective in
10   materials or workmanship, and Plaintiffs, individually and on behalf of the other Nevada
11   Class members, seeks all remedies as allowed by law.

12       709.    Also, as alleged in more detail herein, at the time that Honda warranted and
13   sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited
14   Warranty and were defective, and that the infotainment system would not be compatible
15   with Android Auto, and Honda wrongfully and fraudulently concealed material facts
16   regarding its Vehicles.  Plaintiff and the other Nevada Class members were therefore
17   induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

18       710.    Moreover, many of the injuries flowing from the Vehicles cannot be
19   resolved through the limited remedy of replacement or repair, as many incidental and
20   consequential damages have already been suffered due to Honda's fraudulent conduct
21   as alleged herein, and due to its failure and/or continued failure to provide such limited
22   remedy within a reasonable time, and any limitation on Plaintiff's and the other Nevada
23   Class members' remedies would be insufficient to make Plaintiff and the other Nevada
24   Class members whole.

25       711.    Due to Honda's breach of warranty as set forth herein, Plaintiff and the
26   other Nevada Class members assert as an additional and/or alternative remedy
27   revocation of acceptance of the goods, and for a return to Plaintiff and to the other

28

FIRST AMENDED COMPLAINT                          - 141 -

Nevada Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed.

712.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

713.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Nevada Class members have been damaged in an amount to be determined at trial.

## COUNT XXXI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (BASED ON NEVADA LAW)

714.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

715.   Plaintiff brings this claim on behalf of the Nevada Class.

716.   Honda was a merchant with respect to motor vehicles.

717.   A warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff and Class members purchased or leased their Class Vehicle from Honda.

718.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiff and Class members would not have purchased the Vehicles had they known of the defects.

719.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

720.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

721.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Nevada Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## I.    Claims Brought on Behalf of the New Jersey Class

### COUNT XXXII
### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. § 56:8-1, *ET SEQ.*)

722.   Plaintiff Alexis Chisari ("Plaintiff" for purposes of all New Jersey Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

723.   Plaintiff brings this claim on behalf of the New Jersey Class.

724.   Plaintiff and Class members are "persons" under the New Jersey Consumer Fraud Act ("CFA").

725.   At all relevant times material hereto, Honda conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

726.   The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

727.   Honda's practices violated the CFA for, inter alia, one or more of the following reasons:

a.    Honda concealed from Plaintiff and the New Jersey Class the material facts that the infotainment system in the Vehicles were defective, and that the infotainment system would not be compatible with Android Auto.

b.    Honda engaged in unconscionable commercial practices in failing to disclose material information discussed above about the Vehicles.

728.   Honda consciously omitted to disclose material facts from Plaintiff and the New Jersey Class with respect to the infotainment system defects.

729.   Honda's unconscionable conduct described herein included the omission and concealment of material facts concerning the defective infotainment system.

730.   Honda intended that Plaintiff and the New Jersey Class rely on its acts of concealment and omissions and misrepresentations, so that Plaintiff and the New Jersey Class would purchase and/or lease Vehicles.

731.   Had Honda disclosed all material information regarding the defective infotainment system to Plaintiff and the New Jersey Class, they would not have purchased and/or leased the Vehicles, or would have paid less.

732.   The foregoing acts, omissions and practices proximately caused Plaintiff and the New Jersey Class to suffer an ascertainable loss in the form of, inter alia, diminution of value, and they are entitled to recover such damages together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

733.   In the course of its business, Honda concealed the defects in Plaintiff and the New Jersey Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  Honda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Vehicles.

734.   Honda knew that the infotainment systems in the Vehicles were defective, would fail without warning, and were not suitable for their intended use.  Honda was previously provided notice of the defects in the Vehicles by numerous customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.  Honda nevertheless failed to warn Plaintiff and the other New Jersey Class members about these defects despite having a duty to do so.

735.   By failing to disclose and by actively concealing the defects in Plaintiff and the other New Jersey Class members Vehicles, which it marketed as safe, reliable, and

of high quality, Honda engaged in unfair and deceptive business practices in violation of the CFA.

736.    In the course of Honda's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiff and the other New Jersey Class members' Vehicles.

737.    Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the New Jersey Class members, about the true safety and reliability of their vehicles.

738.    Honda intentionally and knowingly misrepresented material facts regarding the Vehicles with the intent to mislead Plaintiff and the New Jersey Class members.

739.    Honda knew or should have known that its conduct violated the CFA.

740.    As alleged above, Honda made material statements about the safety and reliability of the Vehicles and the Honda brand that were either false or misleading.

741.    Honda owed Plaintiffs a duty to disclose the true safety and reliability of the Vehicles, because Honda:

    a.    Possessed exclusive knowledge about the defects in the Vehicles;

    b.    Intentionally concealed the foregoing from Plaintiff and the New Jersey Class members; and/or

    c.    Made incomplete representations about the safety and reliability of the Vehicles.

742.    Because Honda fraudulently concealed the defects in the Vehicles, Vehicle owners were deprived of the benefit of their bargain since the Vehicles they purchased were worth less than they would have been if they were free from defects.  Had Vehicle owners been aware of the defects in their vehicles, they would have either not have bought their Vehicles or would have paid less for them.

743.   Vehicle owners were also harmed by Honda's unfair and deceptive trade practices since their Vehicles were worth less as the result of Honda's concealment of, and failure to remedy, the defects.  This diminished value is directly attributed to Honda's dishonesty and omissions with respect to the quality and safety of the Vehicles.

744.   Honda's concealment of the defects in Plaintiffs' vehicles was material to Plaintiff and the New Jersey Class members.

745.   Plaintiffs suffered ascertainable loss caused by Honda's misrepresentations and its concealment of and failure to disclose the defects in their vehicles.

746.   As a direct and proximate result of Honda's violations of the CFA, Plaintiffs have suffered injury-in-fact and/or actual damage, as alleged above.

747.   Plaintiffs seek punitive damages against Honda because Honda's conduct was egregious and unconscionable.  Honda's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other New Jersey Class members.

748.   Because Honda's unconscionable conduct caused injury to Plaintiff and Class members, Plaintiff and New Jersey Class members seek recovery of actual damages including diminution of value, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

**COUNT XXXIII**
**BREACH OF EXPRESS WARRANTY**
**(BASED ON NEW JERSEY LAW)**

749.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

750.   Plaintiff brings this claim on behalf of the New Jersey Class.

751.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

752.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under

FIRST AMENDED COMPLAINT                              - 146 -
010811-12/1194995 V1

normal use" and that "all repairs/replacements made under this warranty are free of charge."

753.  Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other New Jersey Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

754.  Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

755.  Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other New Jersey Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

756.  Accordingly, recovery by Plaintiffs and the other New Jersey Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other New Jersey Class members, seeks all remedies as allowed by law.

757.  Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto, and Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiff and the other New Jersey Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

758.  Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct

as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other New Jersey Class members' remedies would be insufficient to make Plaintiff and the other New Jersey Class members whole.

759.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other New Jersey Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiff and to the other New Jersey Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed.

760.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

761.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other New Jersey Class members have been damaged in an amount to be determined at trial.

**COUNT XXXIV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.J. STAT. ANN. § 12-314)**

762.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

763.   Plaintiff brings this claim on behalf of the New Jersey Class.

764.   Honda was a merchant with respect to motor vehicles.

765.   A warranty that the Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff and Class members purchased or leased their Class Vehicle from Honda.

766.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in the Vehicles' infotainment

systems render them unsafe, inconvenient, and imperfect such that Plaintiff and New Jersey Class members would not have purchased the Vehicles had they known of the defects.

767.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

768.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

769.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other New Jersey Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**J.    Claims Brought on Behalf of the New York Class**

**COUNT XXXV**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

770.   Plaintiffs Michael Brumer, and Dave Jahsman ("Plaintiffs" for purposes of all New York Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

771.   Plaintiffs bring this claim on behalf of the New York Class.

772.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

773.   By failing to release material facts about the defect, including, but not limited to, the infotainment system defect and that the infotainment system would not be compatible with Android Auto, Honda curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers. Moreover, Honda has otherwise engaged in activities with a tendency or capacity to deceive. Honda also engaged in unlawful trade

practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Vehicles.

774. By failing to disclose and by actively concealing the defect in the infotainment system, by failing to disclose that the infotainment system would not be compatible with Android Auto, by marketing its vehicles as safe, reliable and of high quality, and by presenting itself as a reputable manufacturer that valued safety and reliability and stood behind its vehicles after they were sold, Honda engaged in deceptive business practices in violation of the New York Gen. Bus. Law § 349.

775. In the course of Honda's business, it willfully failed to disclose and actively concealed the defect in the infotainment system discussed herein. Honda compounded the deception by repeatedly asserting Vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety, and stood behind its vehicles once they are on the road.

776. Honda's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and did in fact deceive reasonable consumers, including Plaintiffs and the other New York Class members, about true reliability of Vehicles and the ability to use the infotainment system.

777. Honda intentionally and knowingly misrepresented material facts regarding the Vehicles with an intent to mislead Plaintiff and the other New York Class members, including without limitation by failing to disclose the defects in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Honda about the reliability and safety of its Vehicles. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to New York Gen. Bus. Law § 349.

778.   Because Honda knew or believed that its statements regarding the reliability and safety of its Vehicles were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of these defects, Honda engaged in fraudulent misrepresentations pursuant to New York Gen. Bus. Law § 349.

779.   Honda's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers. Such acts are unfair practices in violation of New York Gen. Bus. Law § 349.

780.   Honda knew or should have known that its conduct violated New York Gen. Bus. Law § 349.

781.   As alleged above, Honda made material statements about the reliability and safety of the Vehicles and the Honda brand that were either false, misleading, and/or half-truths in violation of New York Gen. Bus. Law § 349.

782.   Honda owed Plaintiffs and the other New York Class members a duty to disclose the truth about its faulty infotainment system because the defect created a safety hazard and Honda:

      i.    Possessed exclusive knowledge of the defect in the infotainment system;

      ii.    Intentionally concealed the foregoing from Plaintiffs and the other New York Class members; and/or

      iii.    Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the infotainment system was defective.

783.   Honda's fraudulent use of the infotainment system and its concealment of the true defective nature of the system were material to Plaintiffs and the other New York Class members.

784.   Plaintiffs and the other New York Class members suffered ascertainable loss caused by Honda's misrepresentations and its concealment of and failure to disclose

material information. Class members who purchased the Vehicles either would have paid less for their Vehicles or would not have purchased or leased them at all but for Honda's violations of New York Gen. Bus. Law § 349.

785.    Honda had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the New York Gen. Bus. Law § 349. All owners of Vehicles suffered ascertainable loss in the form of the diminished value of their Vehicles as a result of Honda's deceptive and unfair acts and practices made in the course of Honda's business.

786.    Honda's violations present a continuing risk to Plaintiffs and the other New York Class members as well as to the general public. Honda's unlawful acts and practices complained of herein affect the public interest.

787.    As a direct and proximate result of Honda's violations of New York Gen. Bus. Law § 349, Plaintiff and the other New York Class members have suffered injury-in-fact and/or actual damage.

788.    Honda is liable to Plaintiffs and the other New York Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Honda's unfair and deceptive practices, and any other just and proper relief under New York Gen. Bus. Law § 349.

**COUNT XXXVI**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW YORK LAW)**

789.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

790.    Plaintiffs bring this claim on behalf of the New York Class.

791.    Honda intentionally concealed that the infotainment system is defective and that the infotainment system would not be compatible with Android Auto.

792.    Honda further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with

each car and on its website, that the Vehicles it was selling had no significant defects, that the infotainment system was a safety feature, reliable, and would perform and operate properly.

793.    Honda knew about the defect in the infotainment system and that the infotainment system would not be compatible with Android Auto when these representations were made.

794.    The Vehicles purchased by Plaintiffs and the other New York Class members contained a defective infotainment system.

795.    Honda had a duty to disclose that the infotainment system contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiff and the other New York Class members relied on Honda's material representations.

796.    As alleged herein, at all relevant times, Honda has held out the Vehicles to be free from defects such as the defect related to the infotainment system. Honda touted and continues to tout the many benefits and advantages of the infotainment system, but nonetheless failed to disclose important facts related to the defect. This made Honda's other disclosures about the infotainment system deceptive.

797.    The truth about the defective infotainment system was known only to Honda; Plaintiffs and the other New York Class members did not know of these facts and Honda actively concealed these facts from Plaintiffs and the other New York Class members.

798.    Plaintiffs and the other New York Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete. As consumers, Plaintiffs and the other New York Class members did not, and could not, unravel Honda's deception on their own. Rather, Honda intended to deceive Plaintiffs and New York Class members.

799.   Honda's false representations and omissions were material to consumers because they concerned qualities of the Vehicles that played a significant role in the value of the Vehicles.

800.   Honda had a duty to disclose the infotainment system defect and violations with respect to the Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiffs or the other New York Class members.

801.   Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its Vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality and performance of the Vehicles.

802.   Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the defect in the infotainment system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased by Plaintiffs and the other New York Class members.

803.   Honda has still not made full and adequate disclosures, and continues to defraud Plaintiffs and the other New York Class members by concealing material information regarding the defect in the infotainment system.

804.   Plaintiffs and the other New York Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and the other New York Class members' actions were justified. Honda was in exclusive

control of the material facts, and such facts were not generally known to the public, Plaintiffs, or the other New York Class members.

805.    Because of the concealment and/or suppression of facts, Plaintiffs and the other New York Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's concealment of the true quality of those vehicles' infotainment systems. Had Plaintiffs and the other New York Class members been aware of the defect in the infotainment systems installed in the Vehicles, and Honda's disregard for the truth, Plaintiffs and the other New York Class members who purchased a Vehicle would have paid less for them or would not have purchased them at all.

806.    The value of Plaintiffs' and the other New York Class members' Vehicles has diminished as a result of Honda's fraudulent concealment of the defective infotainment system of the Vehicles, which has made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the Vehicles.

807.    Accordingly, Honda is liable to Plaintiffs and the other New York Class members for damages in an amount to be proven at trial.

808.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the other New York Class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XXXVII
## BREACH OF EXPRESS WARRANTY
## (BASED ON NEW YORK LAW)

809.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

810.   Plaintiffs bring this claim on behalf of the New York Class.

811.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

812.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

813.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other New York Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

814.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

815.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other New York Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

816.   Accordingly, recovery by Plaintiffs and the other New York Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other New York Class members, seek all remedies as allowed by law.

817.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto. Honda wrongfully and fraudulently concealed material facts

regarding its Vehicles.  Plaintiffs and the other New York Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

818.   Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other New York Class members' remedies would be insufficient to make Plaintiffs and the other New York Class members whole.

819.   Due to Honda's breach of warranty as set forth herein, Plaintiffs and the other New York Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other New York Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed.

820.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

821.   As a direct and proximate result of Honda's breach of express warranty, Plaintiffs and the other New York Class members have been damaged in an amount to be determined at trial.

**COUNT XXXVIII**
**BREACH OF IMPLIED WARRANTY**
**(N.Y. U.C.C. LAW § 2-314)**

822.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

823.   Plaintiffs bring this claim on behalf of the New York Class.

824.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

825.    A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

826.    The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles contain infotainment system defects that render the Vehicles unsafe and prevent users from enjoying many of the Vehicles' features that Class members paid for.

827.    Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

828.    As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**K.    Claims Brought on Behalf of the North Carolina Class**

**COUNT XXXIX**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND**
**DECEPTIVE TRADE PRACTICES ACT**
**(N.C. GEN. STAT. §75.1-1)**

829.    Plaintiffs Vimal Lawrence and John Bartholomew ("Plaintiffs" for purposes of all North Carolina Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

830.    This claim is brought by Plaintiffs on behalf of the North Carolina Class.

831.    North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75.1-1 ("UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." Defendant's business acts and practices alleged herein violate the UDTPA.

832.    The purchase or lease of the Vehicles by Plaintiffs and the North Carolina Class members as described herein constitute transactions in commerce within the meaning of UDTPA.

833.  Honda violated the UDTPA by concealing and failing to disclose the infotainment system defects and that the infotainment system would not be compatible with Android Auto.  Honda had an ongoing duty to Plaintiffs and the North Carolina Class members to refrain from unfair and deceptive practices under the UDTPA in the course of its business

834.  The practices of Defendant violate the UDTPA for, inter alia, one or more of the following reasons:

a.    Defendant represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have;

b.    Defendant provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Vehicles;

c.    Defendant represented that goods or services were of a particular standard, quality, or grade, when they were of another;

d.    Defendant engaged in unconscionable commercial practices in failing to reveal material facts and information about the Vehicles, which did, or tended to, mislead Plaintiffs and the North Carolina Class members about facts that could not reasonably be known by the consumer;

e.    Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

f.    Defendant caused Plaintiffs and the North Carolina Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

g.    Defendant purported to disclaim or limit the implied warranty of merchantability without providing such disclaimer or limitation in a clear, truthful and conspicuous manner;

1          h.    Defendant failed to reveal material facts to Plaintiffs and the North

2    Carolina Class members, the omission of which would tend to mislead or deceive

3    consumers, including Plaintiffs and the North Carolina Class members;

4          i.    Defendant made material representations and statements of fact to

5    Plaintiffs and the North Carolina Class members that resulted in them reasonably

6    believing the represented or suggested state of affairs to be other than what they actually

7    were;

8          j.    Defendant intended that Plaintiffs and the North Carolina Class

9    members rely on their misrepresentations and omissions, so that they would purchase

10   the Vehicles; and

11         k.    Under all of these circumstances, Defendant's conduct in employing

12   these unfair and deceptive trade practices was malicious, willful, wanton and outrageous

13   such as to shock the conscience of the community and warrant the imposition of punitive

14   damages.

15         835.   The conduct of Defendant was likely to mislead consumers and Defendant

16   intended that Plaintiffs and the North Carolina Class members rely on their

17   misrepresentations.

18         836.   The conduct of Defendant offends established public policy and is

19   immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

20         837.   The foregoing acts, omissions and practices proximately caused Plaintiffs

21   and the North Carolina Class members to suffer an ascertainable loss in the form of,

22   inter alia, overpayment and diminution in value of the Vehicles, and Plaintiffs and the

23   North Carolina Class members are entitled to recover such damages, together with

24   appropriate exemplary damages, attorneys' fees and costs of suit.

25         838.   Plaintiffs further seek an order enjoining Defendant's unfair or deceptive

26   acts or practices.

27

28

## COUNT XL
## BREACH OF EXPRESS WARRANTY
## (BASED ON NORTH CAROLINA LAW)

839.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

840.   Plaintiffs bring this claim on behalf of the North Carolina Class.

841.   Honda is and was at all relevant times a merchant with respect to motor vehicles.

842.   As an express warrantor and manufacturer and merchant, Honda had certain obligations under N.C. Gen. Stat. § 25-2-313 to conform the Vehicles to the express warranties.

843.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

844.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other North Carolina Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

845.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

846.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other North Carolina Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

847.   Accordingly, recovery by Plaintiffs and the other North Carolina Class members is not limited to the limited warranty of repair or replacements to parts

defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other North Carolina Class members, seeks all remedies as allowed by law.

848.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto.   Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.   Plaintiffs and the other North Carolina Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

849.   Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other North Carolina Class members' remedies would be insufficient to make Plaintiffs and the other North Carolina Class members whole.

850.   Due to Honda's breach of warranty as set forth herein, Plaintiffs and the other North Carolina Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other North Carolina Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed.

851.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

852.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other North Carolina Class members have been damaged in an amount to be determined at trial.

## COUNT XLI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.C. GEN. STAT. § 25-2-314)

853.   Plaintiffs incorporates by reference all preceding allegations as though fully set forth herein.

854.   Plaintiffs bring this claim on behalf of the North Carolina Class.

855.   Honda is a merchant in the sale and lease of the Vehicles to Plaintiffs and the North Carolina Class members, pursuant to the N.C. Gen. Stat. § 25-2-314.

856.   By operation of law, Honda provided Plaintiffs and the North Carolina Class members an implied warranty that the Vehicles are merchantable and fit for the ordinary purposes for which they were sold.

857.   By the conduct described herein, Honda has failed and refused to conform the Vehicles to the express warranties and its conduct has voided any attempt on its part to disclaim liability for its actions.

858.   The Vehicles were defective at the time they left the possession of Honda.

859.   The Vehicles were not of merchantable quality as required under N.C. Gen. Stat. § 25-2-314.

860.   By virtue of the conduct described herein, Honda breached the implied warranty of merchantability.

861.   Plaintiffs and the North Carolina Class members have been damaged as a result of Honda's breach of the implied warranty.

862.   Plaintiffs and the North Carolina Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of Honda or by operation of law in light of Honda's unconscionable conduct.

863.   Plaintiffs and the North Carolina Class Members have provided timely notice to Honda regarding the problems they experienced with the Vehicles and, notwithstanding such notice, Honda has failed and refused to offer Plaintiffs and the North Carolina Class members an effective remedy.

864.   In addition, Honda has received, on information and belief, thousands of complaints and other notices from consumers advising them of the defects associated with the Vehicles

865.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and Class members would not have purchased the Vehicles had they known of the defects.

866.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

867.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and the other North Carolina Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**L.      Claims Brought on Behalf of the Ohio Class**

**COUNT XLII**
**VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE §§ 1345.01, *ET SEQ.*)**

868.   Plaintiff Kayce Kleehamer ("Plaintiff" for purposes of all Ohio Class counts) incorporates by reference all preceding allegations as though fully set forth herein.

869.   Plaintiff brings this claim on behalf of the Ohio Class.

870.   Plaintiff and the other Ohio Class members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("OCSPA"). Honda is a "supplier" as defined by the OCSPA. Plaintiff's and the other Ohio Class members' purchases or leases of Class Vehicles were "consumer transactions" as defined by the OCSPA.

871. By failing to disclose and actively concealing the defects in the infotainment systems in the Class Vehicles, Honda engaged in deceptive business practices prohibited by the OCSPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

872. Honda knew that the infotainment systems in the Class Vehicles were defective, would fail without warning, and were not suitable for their intended use. Honda nevertheless failed to warn Plaintiffs about these defects despite having a duty to do so.

873. Honda owed Plaintiffs a duty to disclose the defective nature of the infotainment systems in the Class Vehicles, because Honda:

i)    Possessed exclusive knowledge of the defects rendering the Class Vehicles more unreliable than similar vehicles;

ii)   Intentionally concealed the defects associated with infotainment system; and/or

iii)  Made incomplete representations about the characteristics and performance of the infotainment system generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

874. Honda's unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of Honda's infotainment system.

875. The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Honda in this Complaint, including, but not limited to, the failure to honor both implied warranties and express warranties, the making and distribution of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a known

1    dangerous defect, constitute deceptive sales practices in violation of the OCSPA.  These

2    cases include, but are not limited to, the following:

3        a.    *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

4        b.    *State ex rel. Betty D. Montgomery v. Honda Motor Co.* (OPIF

5            #10002123);

6        c.    *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF

7            #10002025);

8        d.    *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS

9            1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

10       e.    *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Oho App. LEXIS

11           525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

12       f.    *State ex rel. Jim Petro v. Craftmatic Organization, Inc.* (OPIF

13           #10002347);

14       g.    *Mark J. CrawHonda, et al. v. Joseph Airport Toyota, Inc.* (OPIF

15           #10001586);

16       h.    *State ex rel. William J. Brown v. Harold Lyons, et al.* (OPIF #10000304);

17       i.    *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427);

18       j.    *Khouri v. Don Lewis* (OPIF #100001995);

19       k.    *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

20       l.    *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524);

21       m.    *Brown v. Spears* (OPIF #10000403);

22       n.    *State ex rel. Brown v. Bud Fletcher Used Cars, Inc.*, (Ohio Ct. C.P. Apr.

23           27, 1982) (OPIF #10000228);

24       o.    *State ex rel. Celebrezze v. Metro Toyota, Inc.* (OPIF #10001194); and

25       p.    *Shellhorn v. Kohler Chrysler-Plymouth, Inc.* (OPIF #10001309).

26

27

28

876.    As a result of its violations of the OCSPA detailed above, Honda caused actual damage to Plaintiff and the Ohio Class and, if not stopped, will continue to harm Plaintiff and the Ohio Class.

877.    Plaintiff and the Class sustained damages as a result of Honda's unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

878.    Plaintiff also seeks court costs and attorneys' fees as a result of Honda's violation of the OCSPA as provided in Ohio Rev. Code § 1345.09.

**COUNT XLIII**
**BREACH OF EXPRESS WARRANTY**
**(OHIO REV. CODE § 1302.26)**

879.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

880.    Plaintiff brings this claim on behalf of the Ohio Class.

881.    Honda is and was at all relevant times a merchant with respect to motor vehicles.

882.    In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

883.    Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

884.    Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

885.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the Ohio Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

886.   Accordingly, recovery by Plaintiff and the Ohio Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Ohio Class members, seeks all remedies as allowed by law.

887.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto.   Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.   Plaintiff and the other Ohio class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

888.   Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Ohio Class members' remedies would be insufficient to make Plaintiff and the other Ohio Class members whole.

889.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Class members assert as an additional and/or alternative remedy, as set forth in Ohio Rev. Code § 1302.66, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Ohio Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed under Ohio Rev. Code §§ 1302.66 and 1302.85.

890.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

891.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Ohio Class members have been damaged in an amount to be determined at trial.

**COUNT XLIV**
**BREACH OF IMPLIED WARRANTY IN TORT**
**(BASED ON OHIO LAW)**

892.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

893.   Plaintiff brings this claim on behalf of the Ohio Class.

894.   The Class Vehicles contained a defect, namely, an infotainment system that routinely fails, completely or partially, resulting in loss of crucial safety, communications, and entertainment functions, as detailed herein more fully.

895.   The manufacturing, and/or assembly defect existed at the time these Class Vehicles containing the infotainment system left the hands of Honda.

896.   Based upon the dangerous product defect and its certainty to occur, Honda failed to meet the expectations of a reasonable consumer.  The Class Vehicles failed their ordinary, intended use because the infotainment system does not function (when it functions at all) as a reasonable consumer would expect.  Moreover, it presents a serious danger to Plaintiffs and the other Class members that cannot be eliminated without significant cost.

897.   The defect in the infotainment systems in these Class Vehicles was the direct and proximate cause of economic damages to Plaintiff, as well as damages.

**M.    Claims Brought on Behalf of the Oregon Class**

**COUNT XLV**
**VIOLATION OF THE OREGON**

## UNLAWFUL TRADE PRACTICES ACT
### (OR. REV. STAT. § 646.605 ET SEQ.)

898.   Plaintiffs Mark Klein and Brian Klein ("Plaintiffs," for purposes of all Oregon Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

899.   Plaintiffs bring this claim on behalf of the Oregon Class.

900.   Honda is a person within the meaning of ORS 646.605(4).

901.   Each Vehicle is a "good" obtained primarily for personal family or household purposes within the meaning of ORS 646.605(6).

902.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: representing that goods have characteristics uses, benefits, or qualities that they do not have; representing that goods are of a particular standard or quality if they are of another; advertising goods or services with intent not to provide them as advertised and certified; and engaging in any other unfair or deceptive conduct in trade or commerce. ORS 646.608(1).

903.   Honda violated the Oregon UTPA by misrepresenting and concealing and failing to disclose the infotainment defect, and that the infotainment system would not be compatible with Android Auto. Honda had an ongoing duty to Plaintiffs and the Oregon Class to refrain from unfair and deceptive practices under the Oregon UTPA in the course of its business.

904.   Plaintiffs and the Oregon Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to disclose material information.

905.   Plaintiffs and the Oregon Class are entitled to recover the greater of actual damages or $200 pursuant to ORS 646.638(1).  Plaintiffs and the Oregon Class are also entitled to punitive damages because Honda engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

## COUNT XLVI
## BREACH OF EXPRESS WARRANTY

906.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

907.   Plaintiffs bring this claim on behalf of the Oregon Class.

908.   In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

909.   Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the Oregon Class members purchased or leased their Class Vehicles equipped with an infotainment system from Honda.

910.   Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda. Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects.

911.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the Oregon Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

912.   Accordingly, recovery by Plaintiffs and the Oregon Class is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the Oregon Class, seeks all remedies as allowed by law.

913.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto.  Honda wrongfully and fraudulently concealed material

facts regarding its Class Vehicles. Plaintiffs and the Oregon Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

914.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and the Oregon Class members' remedies would be insufficient to make Plaintiffs and the Oregon Class members whole.

915.    Due to Honda's breach of warranty as set forth herein, Plaintiffs and the other Oregon Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiffs and to the other Oregon Class members of the purchase price of all Class Vehicles currently owned for such other incidental and consequential damages as allowed.

916.    Plaintiffs have attempted to have their Vehicle repaired under the warranty. Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

917.    As a direct and proximate result of Honda's breach of express warranty, Plaintiffs and the other Oregon Class members have been damaged in an amount to be determined at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

### COUNT XLVII
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ORS 72.3140)

918.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

FIRST AMENDED COMPLAINT                    - 172 -
010811-12/1194995 V1

919.   Plaintiffs bring this claim on behalf of the Oregon Class.

920.   Honda was at all relevant times a "merchant" with respect to motor vehicles under ORS 72.1040, and a "seller" of motor vehicles under ORS 72.1030.

921.   The Vehicles are and were at all relevant times "goods" within the meaning of ORS 72.1050.

922.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to ORS 72.3140.

923.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles' defective infotainment systems render them unsafe and unfit such that Plaintiffs and Class Members would not have purchased the Vehicles had they known of the defects.

924.   Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it so chose.

925.   Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class Members and from dealers and other repair facilities.

926.   As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and the other Oregon Class members have been damaged in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**N.    Claims Brought on Behalf of the Pennsylvania Class**

**COUNT XLVIII**
**VIOLATION OF PENNSYLVANIA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION LAW**
**(73 P.S. § 201-1, *ET SEQ*.)**

927.   Plaintiff Charles Denaro ("Plaintiff" for purposes of all Pennsylvania Class Counts) hereby incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

928.   This claim is brought by Plaintiff on behalf of the Pennsylvania Class.

929.   Honda's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.* ("PUTPCPL").

930.   At all relevant times, Plaintiff and all members of the Pennsylvania Class were "consumers" within the meaning of the PUTPCPL, 73 P.S. § 201-1.

931.   Honda's conduct, as set forth herein, occurred in the conduct of a sale within the meaning of the PUTPCPL, 73 P.S. § 201-1.

932.   The practices of Honda, described above, violate the PUTPCPL for, inter alia, one or more of the following reasons:

    i.   Honda engaged in unconscionable commercial practices in failing to reveal material facts and information about the Vehicles, which did, or tended to, mislead Plaintiff and the Pennsylvania Class members about facts that could not reasonably be known by the consumer;

    ii.   Honda failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

    iii.   Honda caused Plaintiff and the Pennsylvania Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

    iv.   Honda failed to reveal material facts to Plaintiff and the Pennsylvania Class members with the intent that Plaintiff and the Pennsylvania Class members rely upon the omission;

v.    Honda made material representations and statements of fact to Plaintiff and the Pennsylvania Class that resulted in Plaintiff and the Pennsylvania Class members reasonably believing the represented or suggested state of affairs to be other than what they actually were;

vi.    Honda intended that Plaintiff and the other members of the Pennsylvania Class rely on its and omissions, so that Plaintiff and other Pennsylvania Class members would purchase the Vehicles; and

vii.    Under all of the circumstances, Honda's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

933.   Honda's actions impact the public interest because Plaintiff and members of the Pennsylvania Class were injured in exactly the same way as thousands of others purchasing and/or leasing the covered vehicles as a result of and pursuant to Honda's generalized course of deception.

934.   Had Plaintiff and other members of the Pennsylvania Class known of the defective nature of the Vehicles, and that the infotainment system would not be compatible with Android Auto, they would not have purchased or leased the Vehicles or would have paid less for their them.

935.   The foregoing acts, omissions and practices proximately caused Plaintiff and other members of the Pennsylvania Class to suffer an ascertainable loss and actual damages in the form of, inter alia, overpaying for their Vehicles that have suffered a diminution in value.

936.   Honda violated the PUTPCPL by concealing and failing to disclose the infotainment system defects and that the infotainment system would not be compatible with Android Auto.  Honda had an ongoing duty to Plaintiff and the Pennsylvania Class

to refrain from unfair and deceptive practices under the PUTPCPL in the course of its business.

937.    Plaintiff and the Pennsylvania Class suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments, misrepresentations, and/or failure to disclose material information.

938.    Defendant is liable to Plaintiff and Pennsylvania Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other just and proper relief.

## COUNT XLIX
## BREACH OF EXPRESS WARRANTY
## (BASED ON PENNSYLVANIA LAW)

939.    Plaintiff Denaro incorporates by reference all preceding allegations as though fully set forth herein.

940.    Plaintiff brings this claim on behalf of the Pennsylvania Class.

941.    Honda is and was at all relevant times a merchant with respect to motor vehicles.

942.    In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

943.    Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Pennsylvania Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

944.    Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

945.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Pennsylvania Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

946.   Accordingly, recovery by Plaintiff and the other Pennsylvania Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Pennsylvania Class members, seeks all remedies as allowed by law.

947.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto.   Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.   Plaintiff and the other Pennsylvania Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

948.   Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Pennsylvania Class members' remedies would be insufficient to make Plaintiff and the other Pennsylvania Class members whole.

949.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Pennsylvania Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiff and to the other

Pennsylvania Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed.

950.   Plaintiff have attempted to have their Vehicles repaired under the warranty. Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

951.   As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Pennsylvania Class members have been damaged in an amount to be determined at trial.

## COUNT L
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (PA. U.C.C. §2314)

952.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

953.   Plaintiff brings this Count on behalf of the Pennsylvania Class.

954.   Honda is and was at all relevant times a merchant with respect to the Vehicles.

955.   The Vehicles are and were at all relevant times "goods."

956.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Pa. U.C.C. § 2314.

957.   These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiff and the other Pennsylvania Class members would not have purchased the Vehicles had they known of the defects.

958.    Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

959.    Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

960.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Pennsylvania Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**O.    Claims Brought on Behalf of the Tennessee Class**

**COUNT LI**
**VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT OF 1977**
**(TENN. CODE ANN. § 47-18-101, *ET SEQ.*)**

961.    Plaintiff Adam Pryor ("Plaintiff" for purposes of all Tennessee Class Counts) incorporates by reference all preceding allegations as though fully set forth herein.

962.    This claim is brought by Plaintiff on behalf of the Tennessee Class.

963.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

964.    Plaintiff and the Tennessee Class are "natural persons" and "consumers" within the meaning of Tenn. Code § 4-18-104.

965.    Defendant is engaged in "trade" or "commerce" or "consumer transactions" within the meaning of Tenn. Code § 47-18-103(9).

966.    Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

967.    By concealing and failing to disclose the infotainment system defects, and that the infotainment system would not be compatible with Android Auto, Honda

violated the Tennessee CPA.  Honda had an ongoing duty to Plaintiff and the other Tennessee Class members to refrain from unfair and deceptive practices under the Tennessee CPA in the course of its business.

968.    Plaintiff and the other Tennessee Class members suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealments, misrepresentations, and/or failure to disclose material information.

969.    Pursuant to Tenn. Code §§ 47-18-109 and 47-18-109(a)(3), Plaintiff and the other Tennessee Class members seek an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, punitive damages, attorneys' fees, and any other just and proper remedy under the Tennessee CPA.

## COUNT LII
## BREACH OF EXPRESS WARRANTY
## (BASED ON TENNESSEE LAW)

970.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

971.    Plaintiff brings this claim on behalf of the Tennessee Class.

972.    Honda is and was at all relevant times a merchant with respect to motor vehicles.

973.    In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

974.    Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Tennessee Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

975.    Honda breached the express warranty to repair and/or replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not

repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

976.   Furthermore, the limited warranty of repair and/or replacement of defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Tennessee Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

977.   Accordingly, recovery by Plaintiff and the other Tennessee Class members is not limited to the limited warranty of repair or replacements to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Tennessee Class members, seek all remedies as allowed by law.

978.   Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto. Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiff and the other Tennessee Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

979.   Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Tennessee Class members' remedies would be insufficient to make Plaintiff and the other Tennessee Class members whole.

980.   Due to Honda's breach of warranty as set forth herein, Plaintiff and the other Tennessee Class members assert as an additional and/or alternative remedy revocation of acceptance of the goods, and for a return to Plaintiff and to the other

Tennessee Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed.

981.    Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

982.    As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Tennessee Class members have been damaged in an amount to be determined at trial.

## COUNT LIII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (TENN. CODE §§ 47-2-314 AND 47-2A-212)

983.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

984.    Plaintiff brings this claim on behalf of the Tennessee Class.

985.    Honda was at all relevant times a "merchant" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and a "seller" of motor vehicles under § 47-2-103(1)(d).

986.    The Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

987.    A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

988.    These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Vehicles are defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and the other Tennessee Class members would not have purchased the Vehicles had they known of the defects.

989.    Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

990.    Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

991.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the other Tennessee Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

**P.    Claims Brought on Behalf of the Texas Class**

**COUNT LIV**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, *ET SEQ.*)**

992.    Plaintiffs Srikarthik Subbarao and Daniel Allan ("Plaintiffs" for purposes of all Texas Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

993.    Plaintiffs bring this Count on behalf of the Texas Class.

994.    Plaintiffs and Honda are each "persons" as defined by Tex. Bus. & Com. Code § 17.45(3).  The Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1). Plaintiffs and the other Texas Class members are "consumers" as defined in Tex. Bus. & Com. Code § 17.45(4).  Honda has at all relevant times engaged in "trade" and "commerce" as defined in Tex. Bus. & Com. Code § 17.45(6), by advertising, offering for sale, selling, leasing, and/or distributing the Vehicles in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

995.    The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41, *et seq.*

996.   By failing to disclose and actively concealing the defects in the infotainment systems in the Vehicles, and that the infotainment system would not be compatible with Android Auto, Honda engaged in deceptive business practices prohibited by the DTPA, including engaging in acts or practices which are unfair, misleading, false, or deceptive to the consumer.

997.   Honda knew that the infotainment systems in the Vehicles were defective, would fail without warning, and were not suitable for their intended use.   Honda nevertheless failed to warn Plaintiffs and the other Texas Class members about these defects despite having a duty to do so.

998.   Honda owed Plaintiffs and the other Texas Class members a duty to disclose the defective nature of the infotainment systems in the Vehicles, because Honda:

 i) Possessed exclusive knowledge of the defects rendering the Vehicles more unreliable than similar vehicles;

 ii) Intentionally concealed the defects associated with the infotainment systems; and/or

 iii) Made incomplete representations about the characteristics and performance of the infotainment system generally, while purposefully withholding material facts from Plaintiffs and the other Texas Class members that contradicted these representations.

999.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance and characteristics of the Vehicles' infotainment systems.

1000. Honda's intentional concealment of and failure to disclose the defective nature of the Vehicles to Plaintiffs and the other Texas Class members constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiffs and the other Texas Class members, that conduct

took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiffs and the other Texas Class members.

1001. Honda is also liable under Tex. Bus. & Com. Code § 17.50(a) because Honda's breach of the implied warranty of merchantability set forth herein was a producing cause of economic damages sustained by Plaintiffs and the other Texas Class members.

1002. As a result of its violations of the DTPA detailed above, Honda caused actual damage to Plaintiffs and, if not stopped, will continue to harm Plaintiffs. Plaintiffs currently own or lease, or within the class period have owned or leased, a Class Vehicle that is defective. Defects associated with the Vehicles' infotainment systems have caused the value of Vehicles to decrease.

1003. All procedural prerequisites, including notice, have been met. The giving of notice to Honda is rendered impracticable pursuant to Tex. Bus. & Com. Code § 17.505(b) and unnecessary because Honda has notice of the claims against it through the numerous complaints filed against it. Pursuant to Tex. Bus. & Com. Code § 17.505(b), Plaintiffs, individually and on behalf of the other Texas Class members, will send to the Texas Consumer Protection Division a copy of this Complaint.

1004. Plaintiffs and the other Texas Class members sustained damages as a result of the Honda's unlawful acts and are, therefore, entitled to damages and other relief as provided under the DTPA.

1005. Plaintiffs and the other Texas Class members should be awarded three times the amount of their economic damages because Honda intentionally concealed and failed to disclose the defective nature of the Vehicles.

**COUNT LV**
**BREACH OF EXPRESS WARRANTY**
**(TEX. BUS. & COM. CODE § 2.313)**

1006. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1007. Plaintiffs bring this Count on behalf of the Texas Class.

1008.  Honda is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

1009. In its Limited Warranty, Honda expressly warranted that "Honda will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

1010. Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Texas Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

1011. Honda breached the express warranty to repair and replace to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

1012. In addition to this Limited Warranty, Honda otherwise expressly warranted several attributes, characteristics, and qualities of the infotainment system.

1013. These warranties are only a sampling of the numerous warranties that Honda made relating to safety, reliability, and operation.  Generally, these express warranties promise heightened, superior, and state-of-the-art safety, reliability, performance standards, and promote the benefits of the infotainment system.  These warranties were made, inter alia, in advertisements, on Honda's website, and in uniform statements provided by Honda to be made by salespersons, or made publicly by Honda executives or by other authorized Honda representatives.  These affirmations and promises were part of the basis of the bargain between the parties.

1014. These additional warranties were also breached because the Vehicles were not fully operational, safe, or reliable, nor did they comply with the warranties expressly

made to purchasers or lessees.  Honda did not provide at the time of sale, and has not provided since then, Vehicles conforming to these express warranties.

1015. Furthermore, the limited warranty of repair and/or adjustments to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Texas Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1016. Accordingly, recovery by Plaintiffs and the other Texas Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Texas Class members, seek all remedies as allowed by law.

1017. Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to the warranties and were defective, and that the infotainment system would not be compatible with Android Auto. Honda wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Vehicles.  Plaintiffs and the other Texas Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1018. Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Texas Class members' remedies would be insufficient to make Plaintiffs and the other Texas Class members whole.

1019. Due to Honda's breach of warranties as set forth herein, Plaintiffs and the other Texas Class members assert as an additional and/or alternative remedy, as set forth in Tex. Bus. & Com. Code § 2.711, for a revocation of acceptance of the goods, and for

a return to Plaintiffs and to the other Texas Class members of the purchase price of all Vehicles currently owned and for such other incidental and consequential damages as allowed under Tex. Bus. & Com. Code §§ 2.711 and 2.608.

1020. Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

1021. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the other Texas Class members have been damaged in an amount to be determined at trial.

**COUNT LVI**
**BREACH OF IMPLIED WARRANTY**
**(BASED ON TEXAS LAW)**

1022. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1023. Plaintiffs bring this Count on behalf of the Texas Class.

1024.  Honda is and was at all relevant times a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

1025. A warranty that the Vehicles were in merchantable condition was implied by law in the instant transactions, pursuant to Tex. Bus. & Com. Code § 2.314.  These vehicles and the infotainment systems in the Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used.  Specifically, the Vehicles are defective in that there are defects in the infotainment system which prevent users from enjoying many features of the Vehicles they purchased and/or leased and that they paid for; and the infotainment system was not adequately tested.

1026.  Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

1027.  As a direct and proximate result of Honda's breach of the warranties of merchantability, Plaintiffs and the other Texas Class members have been damaged in an amount to be proven at trial.

**Q.    Claims Brought on Behalf of the Virginia Class**

**COUNT LVII**
**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
**(VA. CODE ANN. §§ 59.1-196, *ET SEQ.*)**

1028.  Plaintiffs Eric Faden, Hamilton Hines, and Kristen Gratton ("Plaintiffs" for purposes of all Virginia Class Counts) incorporate by reference all preceding allegations as though fully set forth herein.

1029.  Plaintiffs bring this Count on behalf of the Virginia Class.

1030.  The Virginia Consumer Protection prohibits "(14) using any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]" Va. Code Ann. § 59.1-200(A).

1031.  Honda is a "person" as defined by Va. Code Ann. § 59.1-198.  The transactions between Plaintiffs and the other Virginia Class members on one hand and Honda on the other, leading to the purchase or lease of the Vehicles by Plaintiffs and the other Virginia Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Vehicles were purchased or leased primarily for personal, family or household purposes.

1032.  In the course of Honda's business, it willfully failed to disclose and actively concealed the dangerous risk of infotainment system failure in Vehicles as described above.  Accordingly, Honda engaged in acts and practices violating Va. Code Ann. § 59.1-200(A), including engaging in conduct likely to deceive.

1033. Honda's actions as set forth above occurred in the conduct of trade or commerce.

1034. Honda's conduct proximately caused injuries to Plaintiffs and the other Virginia Class members.

1035. Plaintiffs and the other Virginia Class members were injured as a result of Honda's conduct in that Plaintiffs and the other Virginia Class members overpaid for their Vehicles and did not receive the benefit of their bargain, and their Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Honda's omissions.

1036. Honda actively and willfully concealed and/or suppressed the material facts regarding the defective and unreasonably dangerous nature of the infotainment system and the Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiffs and the other Virginia Class members and to induce Plaintiffs and the other Virginia Class members to purchase or lease Vehicles at a higher price, which did not match the Vehicles' true value. Plaintiffs and the other Virginia Class members therefore seek treble damages.

## COUNT LVIII
## BREACH OF EXPRESS WARRANTY
### (VA. CODE ANN. § 8.2-313)

1037. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1038. Plaintiffs bring this Count on behalf of the Virginia Class.

1039. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1040. In its New Vehicle Limited Warranty, Honda expressly warranted that it "will repair or replace any part that is defective in material or workmanship under normal use" and that "all repairs/replacements made under this warranty are free of charge."

1041. Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Virginia Class members purchased or leased their Vehicles equipped with an infotainment system from Honda.

1042. Honda breached the express warranty to repair or replacement to correct defects in materials and workmanship of any part supplied by Honda.  Honda has not repaired or replaced, and has been unable to repair or replace, the Vehicles' materials and workmanship defects.

1043. Furthermore, the limited warranty of repair and/or replacement to defective parts, fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Virginia Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1044. Accordingly, recovery by Plaintiffs and the other Virginia Class members is not limited to the limited warranty of repair or replacement of parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Virginia Class members, seek all remedies as allowed by law.

1045. Also, as alleged in more detail herein, at the time that Honda warranted and sold the Vehicles it knew that the Vehicles did not conform to Honda's Limited Warranty and were defective, and that the infotainment system would not be compatible with Android Auto.  Honda wrongfully and fraudulently concealed material facts regarding its Vehicles.  Plaintiffs and the other Virginia Class members were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

1046. Moreover, many of the injuries flowing from the Vehicles cannot be resolved through the limited remedy of replacement or repair, as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Virginia

Class members' remedies would be insufficient to make Plaintiffs and the other Virginia Class members whole.

1047. Due to Honda's breach of warranty as set forth herein, Plaintiffs and the other Virginia Class members assert as an additional and/or alternative remedy, as set forth in Va. Code Ann. § 8.2-608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Virginia Class members of the purchase price of all Vehicles currently owned for such other incidental and consequential damages as allowed under Va. Code Ann. §§ 8.2-711 and 8.2-608.

1048. Plaintiffs have attempted to have their Vehicles repaired under the warranty.  Honda was also provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

1049. As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Virginia Class members have been damaged in an amount to be determined at trial.

**COUNT LIX**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(VA. CODE ANN. § 8.2-314)**

1050. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

1051. Plaintiffs brings this Count on behalf of the Virginia Class.

1052. Honda is and was at all relevant times a merchant with respect to motor vehicles.

1053. A warranty that the Vehicles were in merchantable condition is implied by law in the instant transactions.

1054. These Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

FIRST AMENDED COMPLAINT
010811-12/1194995 V1

- 192 -

Specifically, the Vehicles are defective in that the defects in the Vehicles' infotainment systems render them unsafe, inconvenient, and imperfect such that Plaintiffs and the other Virginia Class members would not have purchased the Vehicles had they known of the defects.

1055. Honda knew about the infotainment system defects at the time of purchase, allowing it to cure their breach of warranty if it chose.

1056. Honda was provided notice of these issues by numerous complaints against it, including the instant Complaint, and by customer complaints, letters, emails and other communications from Class members and from dealers and other repair facilities.

1057. As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and the other Virginia Class members have been damaged in an amount to be proven at trial, including, but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class members, respectfully request judgment against Defendant as follows:

(A)    certifying the proposed Nationwide Class and State Law Classes;

(B)    appointing Plaintiffs and their counsel to represent the Class;

(C)    ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

(D)    awarding compensatory, punitive, exemplary, and other recoverable damages;

(E)    awarding reasonable attorney's fees and expenses;

(F)    awarding pre-judgment and post-judgment interest;

(G)    awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

1            Plaintiffs demand a trial by jury of all issues so triable.

2

    Dated: September 27, 2019          Respectfully submitted,

3

4                      HAGENS BERMAN SOBOL SHAPIRO LLP

5                      By */s/ Christopher R. Pitoun*

6                        Christopher R. Pitoun (SBN 290235)
                     301 North Lake Avenue, Suite 920
7                      Pasadena, California 91101
                     Telephone: (213) 330-7150
8                      Facsimile: (213) 330-7152
                     *christopherp@hbsslaw.com*

9

10                      Steve W. Berman (admitted *pro hac vice*)
                     Sean R. Matt (admitted *pro hac vice*)
11                      HAGENS BERMAN SOBOL SHAPIRO LLP
                     1301 Second Avenue, Suite 2000
12                      Seattle, Washington 98101
                     Telephone: (206) 623-7292
13                      Facsimile: (206) 623-0594
                     *steve@hbsslaw.com*
14                      *sean@hbsslaw.com*

15                      Jeffrey S. Goldenberg (admitted *pro hac vice*)
16                      Todd Naylor (admitted *pro hac vice*)
                     GOLDENBERG SCHNEIDER, LPA
17                      One West Fourth Street, 18th Floor
18                      Cincinnati, Ohio 45202
                     Tel: (513) 345-8291
19                      Fax: (513) 345-8294
                     *jgoldenberg@gs-legal.com*
20                      *tnaylor@gs-legal.com*

21

22                      John C. Weisensell (admitted *pro hac vice*)
                     NIEKAMP, WEISENSELL, MUTERSBAUGH &
23                      MASTRANTONIO LLP
                     23 South Main Street, Third Floor
24                      Akron, OH 44308
                     Tel: (330) 434-1000
25                      Fax: (330) 434-1001
26                      *jack@nwm-law.com*

27                      *Counsel for Plaintiffs and Class*

28