STEVE W. BERMAN (*pro hac vice*)
SEAN R. MATT *(pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

CHRISTOPHER R. PITOUN (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California  91101
Telephone:  (213) 330-7150
Facsimile:   (213) 330-7152
*christopherp@hbsslaw.com*

*Counsel for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JIMMY BANH, et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>AMERICAN HONDA MOTOR CO., INC., a California corporation,<br><br>        Defendants. | Case Number:  2:19-cv-5984-RGK (ASx)<br><br>[*The Honorable R. Gary Klausner*]<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(e)**<br><br>Hearing Date:  March 29, 2021<br>Time:  9:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on March 29, 2021, at 9:00 a.m., or as soon thereafter as the matter can be heard, in Courtroom of the Hon. R. Gary Klausner, located at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, Plaintiffs Roberta Bilbrey, Jimmy Banh, Mark Peoples, Jamal Samaha, George Quinlan, Sarah Gravlin, Alexis Chisari, Michael Brumer, Dave Jahsman, John Bartholomew, Vimal Lawrence, Mark Klein, Adam Pryor, Srikarthik Subbarao, Daniel Allan, Paul Gonzales, Eric Faden, and Kristen Gratton ("Plaintiffs") on behalf of themselves all others similarly situated, will, and hereby do, move this Court to:

1. Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Sean R. Matt in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement;

2. Conditionally certify the Settlement Class;

3. Appoint the named Plaintiffs as Settlement Class Representatives;

4. Appoint the undersigned counsel as Settlement Class Counsel;

5. Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

6. Appoint American Honda Motor, Inc. as the Settlement Administrator; and

7. Set a hearing date and briefing schedule for Final Settlement Approval and Plaintiffs' motion for fees and expenses.

This Motion is based upon: (1) this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Class Notice; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement and Class Notice; (3) the Declaration of Sean R. Matt; (4) the Settlement Agreement; (5) the Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.) in Support of Motion for Preliminary Approval of Class Settlement; (6) the records, pleadings, and papers filed in

this action; and (7) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated:  March 1, 2021                          HAGENS BERMAN SOBOL SHAPIRO LLP

                                          By:  */s/ Sean R. Matt*
                                               Steve W. Berman (*pro hac vice*)
                                               Sean R. Matt  (*pro hac vice*)
                                               HAGENS BERMAN SOBOL SHAPIRO LLP
                                               1301 Second Avenue, Suite 2000
                                               Seattle, Washington  98101
                                               Telephone:  (206) 623-7292
                                               Facsimile:   (206) 623-0594
                                               *steve@hbsslaw.com*
                                               *sean@hbsslaw.com*

                                               Christopher R. Pitoun (SBN 290235)
                                               301 North Lake Avenue, Suite 920
                                               Pasadena, California 91101
                                               Telephone:  (213) 330-7150
                                               Facsimile:   (213) 330-7152
                                               *christopherp@hbsslaw.com*

                                               Jeffrey S. Goldenberg (*pro hac vice*)
                                               Todd Naylor (*pro hac vice*)
                                               GOLDENBERG SCHNEIDER, LPA
                                               4445 Lake Forest Drive, Suite 490
                                               Cincinnati, Ohio 45242
                                               Telephone: (513) 345-8291
                                               Facsimile: (513) 345-8294
                                               *jgoldenberg@gs-legal.com*
                                               *tnaylor@gs-legal.com*

# **TABLE OF CONTENTS**

PAGE

I.   INTRODUCTION ................................................................... 1

II.  CASE HISTORY .................................................................... 2

III. TERMS OF THE SETTLEMENT ............................................. 4

IV.  RELEVANT LEGAL STANDARDS ......................................... 7

V.   THIS PROPOSED SETTLEMENT MERITS PRELIMINARY
     APPROVAL UNDER THE RULE 23(e)(2) FACTORS ................ 9

     A.   The class representatives and Class Counsel have and will
          continue to zealously represent the Class ........................ 9

     B.   The Proposed Settlement is the product of good faith, informed,
          and arm's-length negotiations, and it is fair ..................... 10

     C.   The Proposed Settlement provides significant benefits in
          exchange for the compromise of claims ........................... 11

     D.   The Proposed Settlement mitigates the risks, expenses, and
          delays the Class would bear with continued litigation .......... 11

          1.   The Proposed Settlement allows Class members to easily
               obtain relief ...................................................... 12

          2.   Counsel will seek reasonable attorneys' fees and costs,
               which will be paid separately by AHM and not dilute any
               recovery to Class members ..................................... 13

     E.   The Proposed Settlement treats all Class members equitably
          relative to one another ................................................ 14

VI.  CERTIFICATION IS APPROPRIATE FOR SETTLEMENT
     PURPOSES .......................................................................... 14

     A.   The Settlement Class meets the requirements of Rule 23(a). ...... 14

          1.   The Settlement Class is sufficiently numerous ............... 14

          2.   There are common questions of law and fact ................ 14

3.    Plaintiffs' claims are typical of the Settlement Class members' claims. .......................................................... 15

4.    Plaintiffs and Class Counsel have protected, and will continue to protect, the interests of the Settlement Class. ................. 16

B.    The Settlement Class meets the requirements of Rule 23(b)(3). ................. 17

1.    Common issues of law and fact predominate. .................................. 17

2.    Class treatment is superior to other available methods for the resolution of this case. .................................................. 18

VII.   THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND SHOULD BE APPROVED ..................................................... 18

VIII.  CONCLUSION ..................................................................... 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4
5

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................14, 17, 18

6

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ......................................................................12

7
8

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................11

9
10

*Byrne v. Santa Barbara Hosp. Serv., Inc.*,
   2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) ...................................................10

11

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) ...........................................................................18

12
13

*Chamberlan v. Ford Motor Co.*,
   223 F.R.D. 524 (N.D. Cal. 2004) ......................................................................18

14
15

*Churchill Vill., L.L.C., v. GE*,
   361 F.3d 566 (9th Cir. 2004) .............................................................................19

16

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................8

17
18

*Cohen v. Trump*,
   303 F.R.D. 376 (S.D. Cal. 2014) .......................................................................15

19

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) .....................................................................15, 16

20
21

*Glover v. City of Laguna Beach*,
   2018 WL 6131601 (C.D. Cal. July 18, 2018) .....................................................8

22
23

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..........................................8, 9, 11, 15, 16, 17, 18

24

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) .............................................................................15

25
26

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ...........................................................................15

27
28

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ......................................................................18

*Kim v. Space Pencil, Inc.*,
   2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) .......................................................11

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................................8

*Leslie Conti v. American Honda Motor Co. Inc.*,
   Case No. 2:19-cv-02160-CJC-GJS (C.D. Cal.) ...................................................1

*Loritz v. Exide Tech.*,
   2015 WL 6790247 (C.D. Cal. July 21, 2015)........................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..........................................................................10, 12

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) ................................................................................19

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)................................................................................................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................9, 11, 12

*Nobles v. MBNA Corp.*,
   2009 WL 1854965 (N.D. Cal. June 29, 2009) .......................................................11

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...............................................................................8, 9

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) .................................................................12

*Palmer v. Stassinos*,
   233 F.R.D. 546 (N.D. Cal. 2006)...........................................................................14

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008)...........................................................................18

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) .................................................................................15

*Radcliffe v. Experian Info. Sols., Inc.*,
   715 F.3d 1157 (9th Cir. 2013) ...............................................................................16

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ...............................................................................15

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................13

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE

*Rosales v. El Rancho Farms*,
    2015 WL 4460918 (E.D. Cal. July 21, 2015) .................................................................11, 12

*Rosen v. J.M. Auto Inc.*,
    270 F.R.D. 675 (S.D. Fla. 2009) ..................................................................................18

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) .................................................................................14

*Stockwell v. City & Cty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) .....................................................................................15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................8

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...........................................................................................17, 18

*In re Volkswagen "Clean Diesel" Marketing, Sales*
    *Practices, & Prods. Liab. Litig*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...............................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .....................................................................................................15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...............................................................................15, 18

**Statutes & Rules**

Class Action Fairness Act, 28 U.S.C. § 1715 .......................................................................19, 20

Fed. R. Civ. P. 23 ................................................................................................... *passim*

**Other Authorities**

Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (5th ed.) ................................8

The MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004).................................................7, 8, 14

# I.   INTRODUCTION

Plaintiffs and Defendant American Honda Motor Company, Inc. ("AHM") have reached a proposed class action settlement (the "Proposed Settlement") to resolve allegations regarding an alleged defect in the "Infotainment System" contained in 2019-2020 Acura RDX vehicles ("Settlement Class Vehicles").[1]  This Settlement is the result of contentious, prolonged, arm's length negotiations during numerous mediation sessions between February 2020 and September 2020 with the Honorable Dickran M. Tevrizian (ret.).  Since Plaintiffs filed this case and a related lawsuit involving similar technology in Honda vehicles (*Leslie Conti v. American Honda Motor Co. Inc.*, Case No. 2:19-cv-02160-CJC-GJS (C.D. Cal.)), Honda has worked to address the problems Plaintiffs identified.  Between this case and *Conti*, AHM has issued three recalls and four Service Bulletins relating to the Infotainment Systems at issue, in addition to numerous software updates that are wirelessly delivered to the Settlement Class Vehicles (referred to "Over-the-Air" updates) and also available for installation at dealerships.

The Proposed Settlement builds upon this work and confers substantial relief for Class members.  The Proposed Settlement provides for an independent engineering expert to validate the efficacy of the countermeasures that AHM has developed (to supplement Plaintiffs' own expert review); facilitates the implementation of these countermeasures in the field; provides Settlement Class Members with a two-year/24,000 mile warranty extension covering these issues; obligates AHM to work in good faith to continue to improve the performance of the Settlement Class Vehicles' Infotainment Systems at least through the extended warranty period; creates a Dealership Assistance and Assessment Program (the "DAAP") that will direct AHM's independent, authorized dealerships and their technicians to undergo additional training and implement additional service strategies; creates the Infotainment System Online Resource to, *inter alia*, inform Settlement Class

---

[1] The Class Action Settlement Agreement and Release ("Agreement") is attached as Exhibit 1 to the Declaration of Sean Matt in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Matt Decl.").

Members about all the countermeasures that are now available and the symptoms they are designed to address and permit Settlement Class Members to report directly to AHM any new Infotainment System symptoms or problems they may experience; provides a mechanism to compensate qualifying Settlement Class Members for the inconvenience and hassle they may have experienced because of the Infotainment System problems that are at the heart of this litigation, including two free years of AcuraLink Security Service (valued at $89 per year); and provides a mechanism for qualifying Settlement Class Members to receive full reimbursement for eligible out-of-pocket expenses. Further, the Proposed Settlement provides a mechanism for AHM to separately pay reasonable attorneys' fees and costs and Plaintiff service awards so that these payments will not dilute any of the benefits available to the Class.

As described in detail below, the Proposed Settlement is fair, adequate and reasonable and provides direct and significant benefits to the Settlement Class, while avoiding the risks and delay associated with further litigation. Accordingly, Plaintiffs request that the Court grant this motion for preliminary approval, approve the form and manner of notice to the Settlement Class, and set the Final Approval Hearing.

## II.    CASE HISTORY

The 2019-2020 Acura RDX vehicles at issue in this case (the "Settlement Class Vehicles") are equipped with an "Infotainment System" containing eight individual components, in addition to the different software programs that run them all.[2] The Display in this Infotainment System features a screen by which one can operate the audio system, the GPS navigation technology, the backup camera, and enable mobile telephony.

Plaintiffs allege that the Infotainment Systems in the Settlement Class Vehicles suffered from software and hardware defects that caused the systems to frequently freeze, crash, fail to boot up, fail to shut down, or suffer intermittent failures to connect to

---

[2] The Infotainment System is comprised of the Vehicle Bus, the Head Unit, the Amplifier, the Rearview Camera, the Rear Entertainment Unit (where applicable), the Tuner Unit, the Display, the Touchpad Interface, and the different software programs to run each of the foregoing).

peripheral devices such as phones.  *See* Plaintiffs' Corrected Second Amended Complaint, Dkt. 066-1 ("SAC").  Plaintiffs initiated this action on July 11, 2019, contending that AHM should have disclosed the defects prior to sale or remedied the defects under warranty within a reasonable period of time after sale.  Plaintiffs brought claims for violation of relevant state consumer protection acts and for breach of express and implied warranties. On October 18, 2019, AHM moved to dismiss Plaintiffs' First Amended Class Action Complaint.  On December 17, 2019, the Court granted the motion in part and denied it in part (Dkt. No. 60), after which Plaintiffs filed the SAC on January 14, 2020.  AHM answered the SAC, denying all material allegations and interposing affirmative defenses.

Shortly thereafter, the Parties began extensive discovery, during which AHM and its related entities produced more than 20,000 pages of documents, comprised of, among other things, email correspondence, company procedures, corporate documentation, and class member information.  Plaintiffs issued subpoenas to AHM corporate affiliates Honda R&D Americas, Inc. and Honda of America Manufacturing, Inc., as well as companies that supplied either parts or technology used in the Infotainment Systems (Wind River Systems and Denso International America, Inc.).  Matt Decl., ¶ 4.   Class Counsel also took the depositions of relevant AHM employees and those of its related companies, including multiple 30(b)(6) depositions.  Plaintiffs engaged a liability expert (engineer Steve Loudon) and damage experts (marketing expert Steve Gaskin and economist Colin Weir), each of whom issued a report and had their depositions taken.  Plaintiffs also analyzed the expert reports of two experts retained by AHM and took their depositions.  *Id.* Plaintiffs themselves produced extensive information, including over 3,000 pages of documents, in response to AHM's discovery requests and prepared for depositions.   Several Plaintiffs had their depositions taken.  *Id.*  Fact and expert discovery had concluded by the time the Parties agreed to settle.

The Court granted in part and denied in part Plaintiffs' April 9, 2020 Motion for Class Certification.  The Court's July 28, 2020 Order appointed one Named Plaintiff (Jimmy

Banh) as the class representative of the following certified Class: "All persons or entities who purchased a new Class Car [*i.e.*, a new 2019 or 2020 Acura RDX vehicle] from an authorized Acura dealer in California." The Order severed the claims of the remaining non-California Plaintiffs and proposed to transfer them to their home states. Dkt. 154. Plaintiffs filed a Motion to Supplement the Fact Record for the Pending Motion for Class Certification and Pending Motions to Strike on July 27, 2020, which the Court denied as moot.

On May 4, 2020, AHM filed a Motion to Compel Arbitration, which motion was granted in part and denied in part. Matt Decl., ¶ 7. Also, on May 4, 2020, AHM filed Motions to Strike the Declarations of Plaintiffs' experts Steve Loudon, Colin B. Weir and Steven P. Gaskin, which the Court denied. On August 11, 2020, AHM filed a Rule 23(f) Petition for Leave to Appeal with the Ninth Circuit Court of Appeals, which remains pending but has been stayed so that the Court can evaluate the Proposed Settlement.

On February 25, March 24, September 3, and October. 1, 2020, the Parties conducted formal private mediation sessions with the Honorable Dickran M. Tevrizian (ret.). Several additional informal mediation sessions were conducted with Judge Tevrizian. While only limited progress was made in the February and March sessions, mediation efforts intensified after the Court issued its orders on the salient motions to certify a class, exclude witnesses, and compel arbitration. The mediation process was successful, and the Parties signed a Memorandum of Understanding in October and, later, a Settlement Agreement. *See* Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.) in Support of Motion for Preliminary Approval of Class Settlement ("Tevrizian Decl."), attached as Exhibit 2 to the Matt Declaration.

### III.   TERMS OF THE SETTLEMENT

The Settlement Class generally includes all current owners and lessees of the 2019-2020 Acura RDX (each a "Settlement Class Vehicle"), who reside in, and who purchased or leased their vehicles (other than for purposes of resale or distribution) in the United States, Puerto Rico, and all United States territories, as well as former owners and lessees of Settlement Class Vehicles who submit a Claim. AHM will pay for and provide Class

Notice by first class mail (and electronic mail to Settlement Class Members, where possible), who will have an opportunity to opt-out or object to the Proposed Settlement. Agreement, ¶¶ 4.1-4.12.

The major Settlement benefits are as follows:

1.    *Independent Review of Countermeasures*.   The Parties have retained an independent engineering expert to validate that the countermeasures that AHM has implemented are robust and appropriately address the Infotainment System problems at issue.  Agreement, ¶ 7.6.

2.    *Extended Warranty*.  AHM will extend the Settlement Class Vehicles' Limited Warranty to cover qualified Infotainment System repairs.  The extension will add an additional two (2) years or 24,000 miles to the original four (4) years or 50,000 miles Limited Warranty (thereby providing warranty coverage for covered repairs for six (6) years or 74,000 miles from the original purchase or lease date).  Agreement, ¶¶ 3.8-3.15.

3.    *Ongoing Software Updates*.  AHM will, in good faith, support the Settlement Class Vehicles by continuing to research, develop, and offer software updates to address identified Infotainment System problems for a period of no less than the Settlement Class Vehicles' Extended Warranty period.  Agreement, ¶¶ 3.11.

4.    *The Dealership Assistance and Assessment Program*.  Through the DAAP, AHM will direct its independent, authorized dealerships and their technicians to undergo additional training and implement additional service strategies to resolve problems. Technicians will be trained to make software and/or hardware repairs to known Infotainment System problems even if the specific symptom described by the Settlement Class Member does not manifest at the time of the dealership visit.  Agreement, ¶¶ 3.6-3.7. Plaintiffs believe that this is significant because Plaintiffs alleged that authorized Acura dealerships were frequently unable to replicate the often-intermittent Infotainment System issues when Plaintiffs brought their Class Vehicle in for repair.  As a result, the Plaintiffs were often told there was nothing the dealership could do to address the issues.  Given these dealers' uneven approach to addressing Infotainment System problems (including Plaintiffs

previously being turned away by dealers), the DAAP provides a significant benefit.

5. *The Infotainment System Online Resource*. AHM will create, maintain, and update for at least 24 months after the Effective Date an Infotainment System Online Resource for Settlement Class Members that will, among other things (a) include a list of potential Infotainment System-related issues, that, when selected, will open a drop-down menu to offer potential solutions to the problem such as updating the vehicle's or phone's software or presenting the vehicle at a dealership for an assessment or repair; (b) provide a means by which Settlement Class Members can review information related to the Infotainment Systems in their vehicles; (c) provide a means by which Settlement Class Members can report to AHM issues or symptoms they believe to be attributable to the Infotainment System; and (d) post relevant recall notices, Service Bulletins, and over-the-air (OTA) updates relating to the Infotainment System. Agreement, ¶¶ 3.2-3.5.

6. *The Delayed Warranty Repair Service Benefit*. Settlement Class Members who, prior to the Notice Date, made more than one visit to an authorized Acura dealership for Infotainment System issues that were not effectively repaired will be eligible to receive two free years of AcuraLink Security Service, which is a $178 value ($89 per year),[3] provided that the visits appear in AHM's warranty database and the second visit was not the result of a recall or product update. If a Settlement Class Member already subscribes to AcuraLink Security Service, he or she can tack on service for an additional two years from when their paid-for service expires. Agreement, ¶¶ 3.16-3.17, 3.20-3.22.

7. *The Related Warranty Repair Service Benefit*. Settlement Class Members who, on or before the Notice Date of this settlement, made more than one service visit for

---

[3] The AcuraLink Security Service app allows vehicle owners to connect to their vehicle from their smartphone. Some of the features included are "Automatic Collision Notification," in which a live agent will reach out to check on the driver and request that help be sent in the event of a collision; "Emergency Call Function," in which a live agent will request that help be sent in the event of an emergency; "Enhanced Roadside Assistance," which allows the driver to easily summon towing and repair services using a button in their vehicle; and "Last Mile Function," which provides walking directions to the driver's final destination when he or she exits the vehicle.
*See* https://acuralink.acura.com/#/compatibility?year=2020&model=RDX.

a single Infotainment System issue not resolved during the initial warranty service visit (so long as both service visits relate to the same Infotainment System issue and the second service visit was not the result of a recall or product update), will be automatically eligible to receive two free years of AcuraLink Security Service, which is a $178 value ($89 per year) provided that the visits appear in AHM's warranty database.  Those Class Members who qualify will not have to file a claim form to obtain this benefit.  Agreement, ¶¶ 3.18-3.22.

8.      *Compensation for Certain Costs Related to Delayed Warranty Claims*.  Claim Forms can be filed seeking reimbursement for (a) qualifying transportation costs incurred if the Settlement Class Member returned a Settlement Class Vehicle more than once to a dealership to obtain a repair for Infotainment Systems Symptoms; and/or (b) qualifying battery recharging costs incurred as a result of a car battery that drained because the Infotainment System did not turn off when it should have.  Agreement, ¶¶ 3.2-3.26.

9.      *Attorneys' Fees and Costs*.  AHM will pay Class Counsel's reasonable attorneys' fees and expense reimbursements in an amount consistent with the terms of the Settlement Agreement and as approved by the Court.  Agreement, ¶¶ 5.3-5.7.  AHM's payment of attorneys' fees and expense reimbursement will not impact or diminish any of the Settlement benefits available to the Class.

In exchange for these benefits, all Settlement Class members who do not opt-out of the Settlement Class will be subject to a release of their claims against AHM related to Infotainment Systems and Infotainment System Symptoms, as asserted, or as could have been asserted, in the litigation or any other proceedings.  Agreement, ¶¶ 6.1-6.6.

## IV.   RELEVANT LEGAL STANDARDS

The MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) (the "*Manual*") describes a three-step procedure for approval of class action settlements: (i) preliminary approval; (ii) dissemination of the notice to class members, providing for an objection period; and (iii) a formal fairness and final settlement approval hearing.  *Id.* at §21.63.  The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on

written submissions and informal presentations from the parties. *Id.* at § 21.632. This motion invokes the first two steps of the preliminary approval process. Preliminary approval should be granted "[i]f the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Glover v. City of Laguna Beach*, 2018 WL 6131601, at *2 (C.D. Cal. July 18, 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007)).[4]

Rule 23(e)(2) directs courts to consider a number of factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account the costs, risks, and delay, the effectiveness of distributing relief to the class, the terms of any proposed award of attorney's fees, and any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. These factors are not intended "to displace any factor [previously utilized by district courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23, 2018 Amendment Notes to Section (e)(2).

Similar to the Rule 23(e)(2) factors, the Ninth Circuit considers the following factors in determining whether a settlement is fair, reasonable, and adequate to all concerned: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

---

[4] Evaluating fairness is not a trial, and the court does not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits." *Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982). Rather, the Court's "only role" is to ensure that the settlement is "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied,* 134 S. Ct. 8 (2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). As a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS ("*Newberg*") §13:1 (5th ed.). Internal citations and quotations omitted and emphasis added throughout unless otherwise indicated.

litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case," and one factor alone may prove determinative. *Officers for Justice*, 688 F.2d at 625; *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## V.   THIS PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL UNDER THE RULE 23(e)(2) FACTORS

Both the Rule 23(e)(2)(A)-(D) and Ninth Circuit factors for evaluating the fairness of a settlement weigh in favor of preliminary approval.

### A.   The class representatives and Class Counsel have and will continue to zealously represent the Class.

The Class Representatives and Class Counsel prosecuted this action on behalf of the Class with vigor and dedication and developed substantial evidence to partially win a highly-contested class certification motion. *See* Fed. R. Civ. P. 23(e)(2)(A). This was accomplished despite an aggressive case schedule and unprecedented circumstances created by the COVID-19 pandemic. Named Plaintiffs—who include a doctor fighting COVID-19 on the front lines, high-risk individuals who were isolated in their homes, a spouse to a patient in intensive care due to COVID-19, and a traveler stranded in India prevented from returning home by COVID-19 travel bans—worked through extraordinary challenges to provide assistance to Class Counsel and respond to extensive discovery requests. Matt Decl., ¶ 5. Class Counsel and Plaintiffs responded to 17 Interrogatories per Plaintiff and 29 document requests propounded by AHM per Plaintiff. *Id.* Plaintiffs produced numerous documents, several of them sat for depositions, ad six Plaintiffs presented their vehicles and phones for inspection by AHM and its technical expert. Plaintiffs also assisted Class Counsel with fact development, answered several dozen discovery requests, and regularly

communicated with counsel to remain up to date on the litigation and the settlement process. *Id.*

Class Counsel deposed five AHM/AHM affiliate witnesses, including two 30(b)(6) depositions, as well as expert witnesses put forth by AHM. *Id.*, ¶ 6. Class Counsel propounded 67 document requests, five interrogatories, four subpoenas to non-parties (excluding experts), and engaged in substantive review of over 20,000 pages of documents produced by AHM and its affiliates. *Id.* Class Counsel's analysis of the vast volume of discovery material indisputably establishes they have gathered, reviewed, and assessed sufficient information to enter into a reasoned and well-informed settlement. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("significant investigation, discovery and research" provides parties with sufficient information to make an informed decision about settlement); *Byrne v. Santa Barbara Hosp. Serv., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30, 2017) (for a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement") (citation omitted). Both Class Counsel and the Plaintiffs have adequately represented the interests of the Class.

**B.    The Proposed Settlement is the product of good faith, informed, and arm's-length negotiations, and it is fair.**

The Proposed Settlement is the product of informed, non-collusive, arm's length negotiations facilitated by an unbiased, experienced mediator, Judge Tevrizian. *See* Fed. R. Civ. P. 23(e)(2)(B). Negotiations were difficult and protracted. Judge Tevrizian played a crucial role in supervising the negotiations and helping the parties bridge their differences and evaluate the strengths and weaknesses of their respective positions. *See* Tevrizian Decl. The Parties participated in three separate formal mediations and numerous informal communications with the mediator. Matt Decl., ¶ 8. On October 1, 2020, the Parties reached agreement on material terms for a settlement and executed a Memorandum of Understanding shortly thereafter. The Parties subsequently spent months finalizing the release, settlement agreement, and related settlement documents. The

adversarial nature of the litigation and the aid provided by Judge Tevrizian weigh in favor of preliminary approval. *Rosales v. El Rancho Farms*, 2015 WL 4460918, at *16 (E.D. Cal. July 21, 2015) ("presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness") (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

**C.    The Proposed Settlement provides significant benefits in exchange for the compromise of claims.**

The Proposed Settlement provides substantial relief, considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; and (iii) the fair terms of the proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C). Resolving these claims through a single class action is superior to potentially thousands of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Proposed Settlement demonstrate the advantages of a collective bargaining resolution process.

**D.    The Proposed Settlement mitigates the risks, expenses, and delays the Class would bear with continued litigation.**

The Proposed Settlement secures significant benefits in the face of the inherent litigation uncertainties. *See Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("risks and certainty" of "continued litigation are factors for the Court to balance in determining whether the Settlement is fair") (citing *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012)). While Class Counsel believe in the strength of the case, they recognize that there are uncertainties in litigation, trial, and appeal, making compromise of claims in exchange for certain and timely provision to the Settlement Class of the significant benefits described herein a reasonable outcome. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 526 ("In most situations, unless the settlement is

clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). The significant benefits of the Proposed Settlement are based on the Parties' recognition of the merits of Plaintiffs' case compared to AHM's affirmative defenses, the risks and uncertainty associated with continued litigation, and the possibility that AHM's Rule 23(f) appeal could succeed.[5]  Additionally, even if AHM's appeal were denied, Plaintiffs still face vigorously contested issues at trial and on any future potential appeal.

It is highly uncertain whether the Settlement Class would be able to obtain a better outcome through continued litigation and a trial. Indeed, it is questionable whether lessees in particular would be entitled to any relief given the Court's arbitration ruling. *See* Matt Decl., ¶ 7. Further, should Class Counsel prosecute these claims against AHM to a post-trial conclusion, any potential recovery could come years in the future. There is also a risk that the Settlement Class would receive less or nothing at all at trial. That "risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" strongly favors preliminary approval. *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (citing *In re Mego*, 213 F.3d at 458).

### 1.    The Proposed Settlement allows Class members to easily obtain relief.

The Settlement provides automatic and significant benefits for the Settlement Class Members, who will all benefit from the warranty extension, the DAAP, the Infotainment System Online Resource, and AHM's contractual commitment to continue to work in good faith to improve the performance of the Infotainment System and to support the Class Vehicles through continued software updates for the duration of the extended warranty period. Additionally, those Settlement Class Members who appear in AHM's warranty database as having made more than one visit for a single Infotainment System issue not resolved during the initial warranty service visit (as long as both service visits relate to the

---

[5]    Given Class Counsel's "experience and familiarity with the facts, their recommendation that the settlement be approved is entitled to significant weight." *Rosales*, 2015 WL 4460918, at *15 (citing *Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("great weight" accorded to the recommendation of counsel); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (same).

same Infotainment System issue ("Related Service Visits")) and so long as the second visit was not the result of a recall or product update) will *automatically* receive two free years of AcuraLink Security Service.  Settlement Class Members who appear in AHM's warranty database as having made more than one visit for Infotainment System issues not resolved during the initial warranty service visit (and that do not qualify as Related Service Visits), not including visits made for recalls or product updates, may file a claim for this benefit. Settlement Class Members who do not appear in AHM's warranty database may also file a claim and submit supporting documentation if they believe they otherwise qualify for this benefit. And reimbursement is available through a claims process for those Class Members who experienced certain related out-of-pocket costs. The universal benefits available to all Settlement Class Members, combined with a simple claim process, will allow Settlement Class Members to benefit from the settlement without delay or uncertainty.

### 2. Counsel will seek reasonable attorneys' fees and costs, which will be paid separately by AHM and not dilute any recovery to Class members.

AHM has agreed to pay reasonable attorneys' fees and expense reimbursement to Class Counsel as approved by the Court, and as consistent with the provisions of the Settlement Agreement.  Agreement, ¶¶ 5.3-5.7.  Importantly, the parties did not begin negotiating attorneys' fees, expense reimbursement, or service awards[6] for the Plaintiffs until after all material settlement benefits for the Class were negotiated.  Matt Decl., ¶ 8; Tevrizian Decl., ¶ 7.  Waiting until after the Settlement terms are nailed down before discussing fees is a practice routinely approved by courts as in the Class' best interest. *See, e.g., In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig.,*, 2016 WL 6248426, at \*23 (N.D. Cal. Oct. 25, 2016).  While the parties will continue to seek agreement on attorneys' fees, expense reimbursement, and service awards, if they cannot reach an agreement, they will present the dispute to the Court for resolution.

---

[6] Service awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Agreement, ¶ 5.3.  Either the agreed amounts or the maximum amounts sought will be included in the notices and available on the settlement website.   Matt Decl., ¶ 8.

**E.     The Proposed Settlement treats all Class members equitably relative to one another.**

The Proposed Settlement fairly and equitably allocates benefits among Class Members without any unwarranted preferential treatment of class representatives or segments of the Class.   *See* Fed. R. Civ. P. 23(e)(2)(D).  As noted above, each Class Member will receive automatic benefits under the Settlement and have the opportunity to file claims for additional relief, as individual circumstances merit.

## VI.    CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES

**A.     The Settlement Class meets the requirements of Rule 23(a).**

The Court should determine that the proposed settlement class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual*, § 21.632.  An analysis of the requirements of Rule 23(a) and (b)(3) shows that certification of this proposed Settlement Class is appropriate (indeed, the Court already determined that class certification was proper for a California Class, Dkt. No. 154).

### 1.     The Settlement Class is sufficiently numerous.

Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable, and numerosity is generally satisfied when the class exceeds 40 members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  AHM's records indicate that there were approximately 130,000 Class Vehicles sold or leased nationwide. The large size of the Settlement Class and its geographic dispersal across the United States also renders joinder impracticable.  *See Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006).  As this Court previously found, numerosity is satisfied.  Dkt.154 at 23.

### 2.     There are common questions of law and fact.

"Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or

fact.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011). Courts routinely find commonality where, as here, the class claims arise from the defendant's uniform course of conduct. *See, e.g.*, *Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014). The Settlement Class claims are rooted in common questions of fact as to whether the Class Vehicle's Infotainment Systems frequently encounter serious problems, and whether AHM knew about these defects prior to sale and/or should have repaired them under warranty. Answering these questions generates common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *See Dukes*, 564 U.S. at 350. Thus, as this Court previously found, commonality is satisfied. Dkt. 154 at 23.

>       **3.    Plaintiffs' claims are typical of the Settlement Class members' claims.**

Rule 23(a)(3)'s typicality requirement counsels that "'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). Typicality "assure[s] that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Thus, where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons*, 754 F.3d at 685; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012). Plaintiffs' claims and injuries are typical of the claims of and injuries

suffered by the Class. Plaintiffs and members of the Class alike all purchased or leased vehicles with the same Infotainment System and suffered the same types of injuries. Plaintiffs' interest in obtaining a fair, reasonable, and adequate settlement of the claims asserted are identical to the interests of the Settlement Class members. Accordingly, as this Court previously found, Plaintiffs have established the typicality element. Dkt. 154 at 23.

### 4. Plaintiffs and Class Counsel have protected, and will continue to protect, the interests of the Settlement Class.

Rule 23(a)(4)'s adequacy requirement is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is rooted in due-process concerns — 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020). Adequacy entails a two-prong inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020). Both prongs are satisfied here.

Plaintiffs have no interests that conflict with the Settlement Class Members and will continue to vigorously protect Class interests, as they have throughout this litigation. They understand their duties as class representatives, have agreed to consider the interests of absent Class Members, and have actively participated in this litigation and will continue to do so. *See, e.g.*, *Loritz v. Exide Tech.*, 2015 WL 6790247, at *6 (C.D. Cal. July 21, 2015) ("All that is necessary is a 'rudimentary understanding of the present action and … a demonstrated willingness to assist counsel in the prosecution of the litigation.'"). As to counsel, the Court has already appointed Hagens Berman Sobol Shapiro LLP and Goldenberg Schneider, LPA as Class Counsel to represent the California Class. Since the beginning of this lawsuit, Class Counsel have devoted several thousand hours and hundreds-of-thousands of dollars to identify, investigate, and litigate the claims of Plaintiffs

and the Settlement Class (and will continue to do so).  These efforts led to the Proposed Settlement that provides significant and meaningful benefits to the Settlement Class.

**B.      The Settlement Class meets the requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), a class may be certified if a court finds that, "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  When "[c]onfronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial." *Amchem,* 521 U.S. at 620.

**1.      Common issues of law and fact predominate.**

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiffs contend that the key evidence necessary to establish their claims is common to all members of the Settlement Class, who must prove, among other things, that the cars have a common defect and that AHM's conduct was uniformly wrong.  The evidence changes little if there are 100 Class members or thousands: either way, Plaintiffs would, for instance, present the *same* evidence that AHM was aware of the defect and concealed it, and that AHM caused economic loss to Plaintiffs and the Class.  These common issues "are

more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045.  Courts often find that such issues predominate in auto defect class actions.  *See, e.g.*, *Wolin*, 617 F.3d at 1173; *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 532-34 (C.D. Cal. 2012); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526-27 (N.D. Cal. 2004) (same), *petition denied*, 402 F.3d 952 (9th Cir. 2005); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 681-82 (S.D. Fla. 2009);  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016).  Common issues of law and fact predominate over any individual issues here.  *See also* Dkt.154 at 23-27.

> **2.    Class treatment is superior to other available methods for the resolution of this case.**

"The superiority inquiry . . . requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023.  "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Id.*  Indeed, the terms of the Proposed Settlement demonstrate the advantages of a collective bargaining and resolution process.  The efforts and funds required to marshal the type of evidence necessary to establish liability against a large corporation like AHM would discourage Settlement Class Members from pursuing individual litigation.  *See Wolin*, 617 F.3d at 1175; *Amchem*, 521 U.S. at 617.  The superiority of proceeding through the class action mechanism is demonstrated by the results of the Settlement, which, if approved, will provide the Settlement Class with meaningful benefits.  The class action device provides the superior means to effectively and efficiently resolve this controversy.  Dkt.154 at 27.

> ### VII.   THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND SHOULD BE APPROVED

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(e)(1)(B).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C., v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). The proposed notice program, which consists of, among other things, a dedicated website and a robust Long Form Notice that will be sent by mail and email directly to Settlement Class Members, exceeds these standards.

AHM, as Settlement Administrator, will, among other things, mail or arrange to be mailed by first-class mail, postage prepaid, the Notice and Claim Forms to each person on the Class List; email to each person on the Class List the Notice and Claim Forms if email addresses are available and requisite consent has been obtained; develop processes and procedures for handling deficient Claim Forms and returned mail, including use of the National Change of Address database made available by the U.S. Postal Service; prepare and submit to the Court an Opt-Out list of the Settlement Class Members requesting exclusion, as well as a list of all persons who submitted objections to the settlement; maintain a mailing address to which Settlement Class Members can send requests for exclusion, objections, Claim Forms and other correspondence; and create and maintain the Settlement Website. The Notice will clearly identify the Infotainment Systems that are the subject of this Settlement, explain the relevant alleged Infotainment System issues or symptoms, describe the benefits of the Settlement and how to obtain them, and direct Settlement Class Members to the Settlement Website for more information. AHM will also post on the Settlement Website a toll-free telephone number that will be staffed during normal business hours with live operators who can answer questions about and provide information to Settlement Class Members regarding the Settlement, as well as provide the Notices and Claim Forms upon request. And, in compliance with the attorney general notification provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, AHM will cause notice of this proposed Settlement to be sent to the Attorney General of the United

States, and the attorneys general of each state in which a Settlement Class Member resides ("CAFA Notice").

## VIII. CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court grant the motion and preliminarily approve the Settlement. The Parties respectfully request that the Court set a schedule for key dates including a date for a final approval hearing and propose the following:

| Date | Event |
| --- | --- |
| March 11, 2021 | AHM to provide notice to appropriate state and federal officials in accordance with the Class Action Fairness Act. |
| March 29, 2021 | Preliminary Approval Hearing |
| No later than 90 days after entry of preliminary approval | Class Notice Disseminated ("Notice Date") |
| No later than 30 days after Notice Date | Motions for Approval of Attorneys' Fees and Expenses and Service Awards filed |
| No later than 28 days before Fairness Hearing | Motion for Final Approval filed |
| 45 days after Notice Date | Objection and Opt-Out Deadline |
| No later than 14 days before Fairness Hearing | Reply Memoranda in Support of Final Approval and Fee Application filed |
| No earlier than 90 days after Notice Date | Settlement Fairness Hearing |

Dated:  March 1, 2021                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                By:  /s/ *Sean R. Matt*
                                     Steve W. Berman (*pro hac vice*)
                                     Sean R. Matt *(pro hac vice)*
                                     HAGENS BERMAN SOBOL SHAPIRO LLP
                                     1301 Second Avenue, Suite 2000
                                     Seattle, Washington  98101
                                     Telephone:   (206) 623-7292
                                     Facsimile:    (206) 623-0594
                                     *steve@hbsslaw.com*
                                     *sean@hbsslaw.com*

                                     Christopher R. Pitoun (SBN 290235)
                                     301 North Lake Avenue, Suite 920
                                     Pasadena, California 91101
                                     Telephone:   (213) 330-7150
                                     Facsimile:    (213) 330-7152
                                     *christopherp@hbsslaw.com*

                                     Jeffrey S. Goldenberg (*pro hac vice*)
                                     Todd Naylor (*pro hac vice*)
                                     GOLDENBERG SCHNEIDER, LPA
                                     4445 Lake Forest Drive, Suite 490
                                     Cincinnati, Ohio 45242
                                     Telephone: (513) 345-8291
                                     Facsimile: (513) 345-8294
                                     *jgoldenberg@gs-legal.com*
                                     *tnaylor@gs-legal.com*