STEVE W. BERMAN (*pro hac vice*)
SEAN R. MATT (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:   (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

CHRISTOPHER R. PITOUN (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California  91101
Telephone:   (213) 330-7150
Facsimile:   (213) 330-7152
*christopherp@hbsslaw.com*

*Counsel for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JIMMY BANH, et al., on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>AMERICAN HONDA MOTOR CO., INC., a California corporation,<br><br>                    Defendant. | Case Number:  2:19-cv-5984-RGK (ASx)<br><br>[*The Honorable R. Gary Klausner*]<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  Dec. 6, 2021<br>Time:  9:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on Dec. 6, 2021 at 9:00 a.m., or as soon thereafter as the matter can be heard, in Courtroom of the Hon. R. Gary Klausner, located at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, Plaintiffs Roberta Bilbrey, Jimmy Banh, Mark Peoples, Jamal Samaha, George Quinlan, Sarah Gravlin, Alexis Chisari, Michael Brumer, Dave Jahsman, John Bartholomew, Vimal Lawrence, Mark Klein, Adam Pryor, Srikarthik Subbarao, Daniel Allan, Paul Gonzales, Eric Faden, and Kristen Gratton ("Plaintiffs") on behalf of themselves all others similarly situated, will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2) for an Order awarding:

1.      Attorneys' fees to Class Counsel totaling $3,402,530;

2.      Litigation expenses in the amount of $477,701.11; and

3.      Service Awards to the eighteen Class Representatives totaling $120,000.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, including all exhibits thereto, the Declarations of Sean R. Matt, Esq., Todd B. Naylor, Esq., and Robert A. Curtis, Esq., the Declaration of Lee Bowron, Exhibit A (containing declarations from each of the Plaintiffs), and all other pleadings, papers, records, and documentary materials on file in this action, including those matters of which the court may take judicial notice, and such other argument as the Court may consider.

Dated:  November 1, 2021          HAGENS BERMAN SOBOL SHAPIRO LLP

                              By: */s/ Sean R. Matt*

                                 Steve W. Berman (*pro hac vice*)
                                 Sean R. Matt  (*pro hac vice*)
                                 HAGENS BERMAN SOBOL SHAPIRO LLP
                                 1301 Second Avenue, Suite 2000
                                 Seattle, Washington  98101
                                 Telephone:  (206) 623-7292

Facsimile:    (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:  (213) 330-7150
Facsimile:    (213) 330-7152
*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL HISTORY AND THE WORK
      ACCOMPLISHED FOR THE CLASS ............................................................ 3

      A.    This Litigation Was Hard Fought. ......................................................... 3

      B.    The Proposed Settlement Was Negotiated At
            Arm's Length. ......................................................................................... 5

      C.    The Parties Have No Agreement on the Amount Of
            Fees or Expenses. ................................................................................... 6

      D.    Class Counsel Vigorously Represented the Class. ................................ 6

III.  ARGUMENT ..................................................................................................... 7

      A.    Class Counsel's Lodestar is Reasonable. .............................................. 8

            1.    The number of hours billed is reasonable. .................................. 8

            2.    The hourly rates are reasonable. ............................................... 10

      B.    The Lodestar is Reasonable and Should Not be Adjusted
            Up or Down. .......................................................................................... 12

            1.    Class Counsel achieved a favorable result for the Class. ................. 12

            2.    Class Counsel performed superior quality work to
                  achieve the Settlement. ........................................................... 13

            3.    This litigation was risky, complex, and expensive. ....................... 14

            4.    Class Counsel worked on a contingent basis ................................. 15

            5.    The reaction of the Class also supports the fee request. ................ 16

            6.    A crosscheck is not necessary to confirm the
                  reasonableness of the fee request. ........................................... 16

      C.    Class Counsel Should be Reimbursed for Their
            Litigation Expenses. ............................................................................. 16

D.    The Court Should Grant a Service Award for Each
Class Representative.......................................................................17

IV.    CONCLUSION..........................................................................................19

MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aarons v. BMW of N. Am., LLC,*
    2014 WL 4090564 (C.D. Cal., Apr. 29, 2014) ........................................................13

*Alikhan v. Goodrich Corp.,*
    2020 WL 4919382 (C.D. Cal. June 25, 2020) ........................................................11

*Allagas v. BP Solar Int'l, Inc.,*
    2016 U.S. Dis. LEXIS 187785 (N.D. Cal. Dec. 22, 2016) ........................................14

*Ashley v. Atlantic Richfield Co.,*
    794 F.2d 128 (3d Cir. 1986) ........................................................1

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ........................................................15

*Blum v. Stenson,*
    465 U.S. 886 (1984) ........................................................11

*Brown v. 22nd Dist. Agric. Ass'n,*
    2017 U.S. Dist. LEXIS 115321 (S.D. Cal. July 21, 2017) ........................................15

*In re Carrier iQ, Inc., Consumer Privacy Litig.,*
    2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016) ........................................16

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    2016 U.S. Dist. LEXIS 102408 (N.D. Cal. Aug. 3, 2016) ........................................17

*Ching v. Siemens Indus.,*
    2014 U.S. Dist. LEXIS 89002 (N.D. Cal. Jun. 27, 2014) ........................................15

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales*
    *Practices & Prods. Liab. Litig.,*
    2019 U.S. Dist. LEXIS 75205 (N.D. Cal. May 3, 2019) ........................................10, 17

*Daniel v. Ford Motor Co.,*
    2018 U.S. Dist. LEXIS 70545 (E.D. Cal. Apr. 25, 2018) ........................................15

*Dewey v. Volkswagen of Am.,*
    909 F. Supp. 2d 373 (D.N.J. 2012) ........................................................19

*Dyer v. Wells Fargo Bank, N.A.,*
    303 F.R.D. 326 (N.D. Cal. 2014) ........................................................19

*Edwards v. First Am. Corp.*,
  2016 WL 8999934 (C.D. Cal. Oct. 4, 2016) ........................................................ 11

*Fischer v. SJB-P.D. Inc.*,
  214 F.3d 1115 (9th Cir. 2000) ........................................................................... 12

*Glass v. UBS Fin. Servs.*,
  2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ..................................... 19

*Gonzales v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ..................................................................... 10, 11

*Graham v. Capital One Bank (USA), N.A.*,
  2014 WL 12579806 (C.D. Cal. Dec. 8, 2014) .................................................... 12

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015) ................................... 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................................... 7, 8

*Harris v. Vector Mktg. Corp.*,
  2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) ..................................... 19

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ................................... 16

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. Jan. 10, 2005) ................................................. 13, 14

*In re HP Printer Firmware Update Litig.*,
  2019 U.S. Dist. LEXIS 108959 (N.D. Cal. June 28, 2019) ............................... 7, 8

*Hunter v. Nature's Way Prod., LCC*,
  2020 WL 71160 (S.D. Cal. Jan. 6, 2020) ............................................................. 9

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ..................................................................... 7, 8, 16

*Jarrell v. Amerigas Propane, Inc.*,
  2018 U.S. Dist. LEXIS 58619 (N.D. Cal. Apr. 5, 2018) ..................................... 16

*Johnson v. Powers*,
  2019 U.S. Dist. LEXIS 79596 (E.D. Cal. May 10, 2019) ................................... 12

*Kakani v. Oracle Corp.*,
  2007 U.S. Dist. LEXIS 95496 (N.D. Cal. Dec. 21, 2007) ................................... 14

*Kissel v. Code 42 Software Inc.*,
  2018 WL 6113078 (C.D. Cal. Feb. 20, 2018) ........................................... 12, 15, 16

vi

MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................................14

*Leslie Conti v. American Honda Motor Co. Inc.*,
  Case No. 2:19-cv-02160-CJC-GJS (C.D. Cal.) ......................................1, 9, 11, 17

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017)................................................................19

*Marshall v. Northrup Grumman Corp.*,
  2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ....................................................11

*McCrary v. Elations Co., LLC*,
  2016 U.S. Dist. LEXIS 24050 (C.D. Cal. Feb. 25, 2016)....................................17

*McLeod v. Bank of Am., N.A.*,
  2019 U.S. Dist. LEXIS 40869 (N.D. Cal. Mar. 13, 2019)...................................19

*In re Myford Touch Consumer Litig.*,
  2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) .....................................................10

*Nelson v. Avon Prods.*,
  2017 U.S. Dist. LEXIS 26451 (N.D. Cal. Feb. 24, 2017) ....................................18

*Norris v. Mazzola*,
  2017 U.S. Dist. LEXIS 208610 (N.D. Cal. Dec. 19, 2017)..................................14

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (C.D. Cal. 2008) ...............................................................15

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) .........................................................................19

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) .................................................................9

*In re Philips/Magnavox TV Litig.*,
  2012 U.S. Dist. LEXIS 67287 (D.N.J. May 14, 2012)........................................10

*Pike v. Cty. of San Bernardino*,
  2020 WL 1049912 (C.D. Cal. Jan. 27, 2020) ......................................................18

*Prandini v. National Tea Co.*,
  557 F.2d 1015 (3d Cir. 1977)................................................................................1

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010) ...............................................................................11

*Ridgeway v. Wal-Mart Stores Inc.*,
  269 F. Supp. 3d 975 (N.D. Cal. 2017) .................................................................19

MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

*Rivera v. Agreserves, Inc.*,
   2017 WL 445710 (E.D. Cal. Feb. 1, 2017)..........................................................10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...........................................................................18

*Rutti v. Lojack Corp., Inc.*,
   2012 WL 3151077 (C.D. Cal. July 31, 2012)..................................................16

*In re Toyota Motor Corp.*,
   2013 U.S. Dist. LEXIS 94485 (C.D. Cal. June 17, 2013) ...............................19

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
*Sales Practices, & Prods. Liab. Litig.,,*
   2013 WL 12327929 (C.D. Cal. July 24, 2013)........................10, 12, 13, 14, 15, 17

*Urakchin v. Allianz Asset Mgmt. of Am., L.P.*,
   2018 WL 8334858 (C.D. Cal. July 30, 2018) ..................................................12

*Velez v. Wynne*,
   220 F. App'x 512 (9th Cir. 2007) ....................................................................12

*Viceral v. Mistras Grp., Inc.*,
   2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb. 17, 2017) ...............................19

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................12, 14, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales*
*Practices, & Prods. Liab. Litig.*,
   2016 U.S. Dist. LEXIS 148374 (N.D. Cal. Oct. 25, 2016)..............................17

*In re Volkswagen "Clean Diesel" Mktg., Sales*
*Practices, & Prod. Liab. Litig.*,
   2017 WL 1352859 (N.D. Cal. Apr. 12, 2017) .................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales*
*Practices, & Prods. Liab. Litig.*,
   2017 U.S. Dist. LEXIS 114353 (N.D. Cal. July 21, 2017)..............................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .................................................................11, 15

*Wilson v. Metals USA, Inc.*,
   2019 U.S. Dist. LEXIS 39854 (E.D. Cal. Mar. 12, 2019) .................................8

*Yamada v. Nobel Biocare Holding AG*,
   825 F.3d 536 (9th Cir. 2016) ..............................................................................8

*Zepeda v. PayPal, Inc.*,
   2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)..........................................................................14

**Other Authorities**

Fed. R. Civ. P. 23 ..........................................................................................................5, 7

Fed. R. Civ. P. 68 ..........................................................................................................2, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs and Defendant American Honda Motor Company, Inc. ("AHM") have agreed to a proposed settlement resolving class claims regarding an alleged defect in the "Infotainment System" contained in 2019-2020 Acura RDX vehicles.  Since Class Counsel filed this action and a closely related action involving similar technology in Honda cars (*Leslie Conti v. American Honda Motor Co. Inc.*, Case No. 2:19-cv-02160-CJC-GJS (C.D. Cal.)), AHM has issued three recalls, dozens of dealer communications, and numerous software updates designed to address the Infotainment System problems at issue in the cases.  The proposed settlement builds upon this work by, among other things, requiring an independent engineering expert to confirm the efficacy of AHM's countermeasures, extending the vehicles' warranties to ensure the countermeasures are effective in the field, compensating qualifying vehicle owners for the inconvenience and hassle they have experienced due to the Infotainment System problems, and providing a mechanism for qualifying vehicle owners to receive reimbursement for eligible out-of-pocket expenses.

This hard-struck bargain did not come easily.  Rather, it took considerable time, effort, and skill from Class Counsel, whose efforts were complicated by unprecedented obstacles posed by the COVID-19 pandemic. Between *Conti* and this action, which were litigated and ultimately settled in parallel,[1] there have been six complaints, four motions to dismiss, three motions to strike expert testimony, two motions to compel arbitration, two

---

[1]  Although the *Banh* and *Conti* actions involve different vehicles, the Infotainment Systems and technology at issue in them are closely related. Accordingly, the parties' discovery in the two cases overlapped considerably.  For that reason, the actions were litigated together, mediated together, and ultimately settled in parallel.  As discussed in greater detail in the Declaration of Todd Naylor in Support of Motion for Attorneys' Fees, Costs, and Service Awards ("Naylor Decl."), at ¶¶ 15-21, Class Counsel has endeavored to allocate their time entries proportionately to each case and to scrupulously avoid double billing (i.e., billing time in separate cases for the same worked performed).  *See also, e.g., Prandini v. National Tea Co.*, 557 F.2d 1015, 1019 n.3 (3d Cir. 1977) ("double payment for the same effort should be avoided by some apportionment of the fee between the two cases"), *questioned on other grounds*, *Ashley v. Atlantic Richfield Co.*, 794 F.2d 128 (3d Cir. 1986).

motions to compel discovery, a vigorous opposition to class certification, and *dozens* of ancillary filings. Class Counsel has taken or defended 13 depositions, reviewed or produced nearly 25,000 pages of documents, responded to nearly 60 sets of written discovery requests (with multiple supplemental responses), issued 11 subpoenas, and worked with numerous experts. Despite their tireless efforts, Class Counsel have not been paid for the approximate 6,016 hours of work attributable to this case or reimbursed for the $477,701.11 in expenses they have incurred in this case to date.

Accordingly, Plaintiffs respectfully ask the Court to approve their request for $3,402,530 in attorneys' fees and $477,701.11 in expenses they incurred to achieve this result. Class Counsel's cumulative lodestar and expense figures reflect AHM's vigorous defense, the voluminous discovery record, and the need for Plaintiffs' experts to review and analyze AHM's documents and technology on behalf of Plaintiffs and the Class.

Plaintiffs further seek Court approval of service award payments ranging from $4,000 to $10,000 to each of the eighteen Plaintiffs. The Plaintiffs include a doctor who was fighting COVID-19 on the front lines at the onset of the pandemic, high-risk individuals who were isolated in their homes, a spouse to a patient in intensive care, and a traveler stranded in India by COVID-19 travel bans.  Yet despite these hardships, Plaintiffs worked through extraordinary challenges to prosecute this action for the benefit of the Class.  In fact, eight Plaintiffs turned down individual Rule 68 settlement offers of $10,000 from AHM out of a sense of loyalty and obligation to the absent Class Members.  Given the resources each devoted to this case amid the COVID-19 pandemic, and the results achieved on behalf of the Class that would not have occurred without their assistance, the requested service awards are reasonable and should also be approved.

Despite an aggressive case schedule and unprecedented circumstances created by the pandemic, Plaintiffs and Class Counsel achieved a comprehensive settlement providing substantial relief to the Class.  Accordingly, Plaintiffs request that the Court grant this motion and approve the requested attorneys' fees, costs, and service awards as reasonable.

MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

## II.  PROCEDURAL HISTORY AND THE WORK ACCOMPLISHED FOR THE CLASS

### A.  This Litigation Was Hard Fought.

Plaintiffs initiated this action by filing the Complaint on July 11, 2019 (Dkt. No. 1), generally alleging that 2019-2020 Acura RDX vehicles were sold equipped with a "Infotainment System" that contained software and hardware defects causing it to freeze, crash, fail to boot up, fail to shut down, and suffer intermittent failures to connect to peripheral devices such as phones. Plaintiffs brought claims for violation of relevant state consumer protection acts and for breach of express and implied warranties.

AHM moved to dismiss the Complaint on September 12, 2019 (Dkt. No. 47), and Plaintiffs filed the First Amended Complaint ("FAC") on September 27, 2019 (Dkt. No. 48). On October 18, 2019, AHM filed a motion to dismiss the FAC (Dkt. No. 53) and a motion for judicial notice in support of the motion to dismiss (Dkt. No. 54).  Plaintiffs filed their opposition to the motions on October 28, 2019 (Dkt. No. 55), and AHM filed its reply on November 4, 2019 (Dkt. No. 57).  On December 17, 2019, the Court granted in part and denied in part AHM's motion to dismiss, ordering Plaintiffs to file an amended complaint consistent with the Court's order within 28 days (Dkt. No. 60). Plaintiffs filed their Second Amended Complaint ("SAC") on January 14, 2020 (Dkt. No. 64), and AHM filed its answer on January 31, 2020 (Dkt. No. 69).

Shortly thereafter, the Parties began extensive discovery, during which AHM and its related entities produced more than 20,000 pages of documents, comprised of, among other things, technical drawings, warranty records, email correspondence, company procedures, corporate documentation, and class member information.  In addition to serving AHM with multiple rounds of written discovery, Plaintiffs issued a total of 11 subpoenas to AHM corporate affiliates Honda R&D Americas, Inc., Honda of America Manufacturing, Inc., and Honda of America Financing Corp., as well as to companies that supplied parts or technology used in the Infotainment Systems. Class Counsel took the depositions of relevant employees from AHM and its related companies, including multiple 30(b)(6) depositions.  Plaintiffs also engaged a liability expert (engineer Steve Loudon) and damage

experts (marketing expert Steve Gaskin and economist Colin Weir), each of whom issued a report and had his deposition taken.  Additionally, Plaintiffs analyzed the expert reports of two experts retained by AHM and took their depositions.  Plaintiffs managed to accomplish all of this even though discovery was greatly complicated by the COVID-19 pandemic, which was in its peak lockdown period in early- to mid-2020.  For example, AHM's affiliates temporarily furloughed their employees, thereby making it more difficult to obtain documents and testimony.  Declaration of Sean R. Matt in Support of Motion for Attorneys' Fees, Costs, and Service Awards ("Matt Decl."), ¶¶ 6-10.

AHM took extensive discovery of Plaintiffs.  Each of the 28 Plaintiffs was served with 17 interrogatories and 29 document requests.  Plaintiffs were required to supplement these responses on multiple occasions, a fact made more difficult due to COVID-19 building closures (documents were stored in inaccessible offices), and travel restrictions.  Plaintiffs and Plaintiffs' counsel were also under "stay at home" orders, which greatly restricted their access to copying and scanning equipment. Plaintiffs nevertheless managed to produce extensive information, including more than 3,000 pages of documents. AHM even noticed every Plaintiff for in-person depositions in California at the height of the pandemic, scheduling (with three weeks' notice) 28 depositions to take place over three days.  After extensive and contentious negotiations, AHM withdrew the notices but reissued notices to ten Plaintiffs.  Class Counsel prepared these Plaintiffs for their depositions, and AHM ended up deposing four Plaintiffs.  Each of these Plaintiffs presented their vehicles and cell phones for inspection after protracted negotiations over the inspection protocol. This accelerated and aggressive fact and expert discovery process concluded in July 2020, before the parties agreed to settle.  Matt Decl., ¶ 9.

Plaintiffs moved for class certification on April 9, 2020 (Dkt. No. 77), and AHM moved to compel arbitration on May 4, 2020 (Dkt. No. 85).  On May 5, 2020, AHM filed three motions seeking to strike testimony submitted by Plaintiffs' three experts in support of class certification (Dkt. Nos. 86, 87, 89), and its opposition to Plaintiffs' motion for class certification (Dkt. No. 96). On May 18, 2020, Plaintiffs filed oppositions to AHM's motions

to compel arbitration (Dkt. No. 105) and to strike Plaintiffs' experts (Dkt. Nos. 107, 109, 113).  AHM filed its reply in support of arbitration on May 22, 2020 (Dkt. No. 115) and three replies in support of its three motions to strike Plaintiffs' experts (Dkt. Nos. 118-120).

On May 28, 2020, Plaintiffs and AHM each filed competing motions to compel discovery (Dkt. Nos. 122-123).  AHM filed a supplemental brief in support of its motion on June 4, 2020 (Dkt. No. 129), and Plaintiffs responded with its own supplemental brief on June 5, 2020 (Dkt. No.132).  AHM filed a second motion to compel arbitration on June 10, 2020 (Dkt. No. 136) and a supplemental brief in support of its motion on June 13, 2020 (Dkt. No. 137).  On June 18, 2020, the Court issued an order denying without prejudice the parties' dueling motions to compel discovery (Dkt. No. 140).  Plaintiffs filed their opposition to AHM's second motion to compel arbitration on June 22, 2020 (Dkt. No. 141).  On July 27, 2020, Plaintiffs filed a motion to supplement the record for purposes of the pending class certification motion and motions to strike Plaintiffs' experts (Dkt. No. 147).

The Court granted in part and denied in part AHM's motion to compel arbitration on July 28, 2020 (Dkt. No. 153).  That same day the Court issued an order granting in part and denying in part Plaintiffs' motion for class certification, certifying a California Class comprised of "All persons or entities who purchased a new Class Car [i.e., a new 2019 or 2020 Acura RDX vehicle] from an authorized Acura dealer in California" (Dkt. No. 154).  The Order severed the claims of the remaining non-California Plaintiffs and proposed to transfer them to their home states (Dkt. No. 154).  On August 11, 2020, AHM filed a Rule 23(f) Petition for Leave to Appeal with the Ninth Circuit Court of Appeals.  Plaintiffs filed their opposition to AHM's Rule 23(f) Petition on August 21, 2020.

## B.    The Proposed Settlement Was Negotiated At Arm's Length.

On February 25, March 24, September 3, and October 1, 2020, the Parties conducted formal private mediation sessions with the Honorable Dickran M. Tevrizian (ret.). The Parties also conducted several informal mediation sessions with Judge Tevrizian.  Only limited progress was made in the February and March sessions, but mediation efforts intensified after the Court issued its orders on the salient motions to certify a class, exclude

witnesses, and compel arbitration.  Thanks in part to Judge Tevrizian's persistent attention, the mediation was successful, and the parties signed a Memorandum of Understanding in October 2020 and, later, a Settlement Agreement.  *See generally* Declaration of Mediator Hon. Dickran M. Tevrizian in Support of Motion for Preliminary Approval of Class Settlement (Dkt. No. 194-9), ¶¶ 4-9.  *See also id.* at ¶7 ("The negotiations were conducted at arm's length, spirited, prolonged, and difficult…. The level of advocacy for all parties throughout the mediation process was exceptionally informed, ethical, and effective.").

**C.    The Parties Have No Agreement on the Amount Of Fees or Expenses.**

On June 3, 2021, the Court granted Plaintiffs' renewed motion for preliminary approval of the Class settlement, preliminarily approved the Settlement as fair and reasonable, and ordered Plaintiffs to issue notice to the Class (Dkt. No. 197).  The major Settlement terms are set forth at pages 5-8 of Plaintiffs' renewed motion (Dkt. No. 194), which are incorporated herein by reference.  AHM has agreed to pay Class Counsel's reasonable attorneys' fees and expense reimbursements in an amount consistent with the terms of the Settlement Agreement and as approved by the Court.  Importantly, AHM's payment of attorneys' fees and expense reimbursement will not impact or diminish any of the Settlement benefits available to the Class.  At the time of settlement, and indeed through the date of the filing of this Motion, there was no agreement on the amount of fees, expenses, or service awards to be paid.

**D.    Class Counsel Vigorously Represented the Class.**

Class Counsel invested substantial time and resources investigating and litigating this action. Tasks performed by Class Counsel include: (1) investigating the claims; (2) meeting and communicating regularly with Plaintiffs; (3) researching and drafting the complaint and amended complaints; (4) reviewing Plaintiffs' documents and preparing them for production; (5) drafting responses (and supplemental responses) to AHM's voluminous written discovery requests; (6) drafting discovery requests and a protective order and issuing 11 third-party subpoenas; (7) negotiating the production of extensive Electronically-Stored Information ("ESI"); (8) reviewing more than 20,000 pages of documents; (9)

preparing for and participating in more than a dozen depositions; (10) retaining and consulting with liability and damages experts; (11) researching and responding to a motion to dismiss; (12) researching and responding to AHM's three motions to strike Plaintiffs' experts; (13) researching and responding to AHM's two motions to compel arbitration; (14) briefing and arguing two dueling motions to compel discovery; (15) briefing a hotly contested class certification motion; (16) drafting mediation statements and participating in contentious mediation sessions; (17) drafting the Settlement Agreement and class notices; (18) researching and drafting the preliminary approval brief and renewed preliminary approval brief; (19) working with the independent engineering expert as necessary to provide relevant information related to the litigation and the Infotainment System; (20) working to develop the Settlement website; (21) overseeing administration of the Settlement; and (22) responding to communications from Class Members with questions about the Settlement.  Matt Decl., ¶ 4; Naylor Decl., ¶ 3.

Class Counsel have performed this work without compensation for their time and paid substantial out-of-pocket expenses in the prosecution of the Class claims. Class Counsel assumed the financial risks involved in the representation and agreed to advance all costs of this litigation.  In the event that Class Counsel did not successfully resolve this matter or prevail at trial and any related appeals, Class Counsel would have been paid nothing.  Matt Decl., ¶ 12; Naylor Decl., ¶ 34.

## III.   ARGUMENT

"Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement." *In re HP Printer Firmware Update Litig.*, 2019 U.S. Dist. LEXIS 108959, at *6 (N.D. Cal. June 28, 2019) (citing Fed. R. Civ. P. 23(h)). "Courts in this circuit determine attorney's fees in class actions using either the lodestar method or the percentage-of-recovery method." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). The lodestar method "may prove more convenient" in a case where "valuing the settlement is difficult

or impossible." *Id.* at *47 (citations omitted).

"Because this is not a common fund case and attorney's fees will be assessed against defendant without reducing the relief available to the class, it appears the lodestar method is the appropriate method for determining whether the attorney's fees provision at issue is reasonable at this stage." *Wilson v. Metals USA, Inc.*, 2019 U.S. Dist. LEXIS 39854, at *23 (E.D. Cal. Mar. 12, 2019)) (collecting cases); *Yamada v. Nobel Biocare Holding AG,* 825 F.3d 536, 546 (9th Cir. 2016) (finding lodestar method appropriate "where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation").

## A.    Class Counsel's Lodestar is Reasonable.

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *In re Hyundai*, 926 F.3d at 570 (quoting *Hanlon*, 150 F.3d at 1029)).

### 1.    The number of hours billed is reasonable.

The current billing rates for each attorney or staff who contributed to this case, along with the hours billed and resulting lodestar as of October 29, 2021, are set forth at ¶¶ 15-16 in the Matt Decl. and ¶¶ 28-32 in the Naylor Decl.   Class Counsel maintained contemporaneous and detailed time records, which include a description of all work

performed and expenses incurred.[2]  The time committed by each firm was necessary to the successful resolution of this litigation, and all attorneys made sure to efficiently allocate work, coordinate assignments, and prevent the unnecessary duplication of work.  Matt Decl., ¶¶ 17, 25-27; Naylor Decl., ¶ 6.

Moreover, because of the substantial overlap between the *Conti* and *Banh* cases, some of Class Counsel's time and expenses are fairly allocable to both cases. Naylor Decl., at ¶¶ 8-14.  Notably, Class Counsel has meticulously avoided double billing by charging time and expenses to one case or the other, but never both.  Matt Decl., ¶¶15-17.  As more fully explained in the Naylor Decl., Class Counsel allocated to the *Conti* action 50% of all time and expense spent on mediation and settlement, and 25% of all time spent and expenses incurred on document discovery and depositions of AHM and its related companies' personnel.  Naylor Decl., at ¶¶ 16-24; Matt Decl., at ¶¶ 21-24.  These adjustments reduce Class Counsel's lodestar and expenses in this case.

Class Counsel anticipate conducting significant uncompensated work following this filing.  In addition to responding to possible objectors and preparing for and presenting at the fairness hearing and addressing any appeals, Class Counsel will be required to oversee the administration of the Settlement and respond to questions or issues raised by Class

---

[2] Courts do not require counsel to submit detailed time records in support of a lodestar fee application.  *See, e.g., Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1165 (C.D. Cal. 2010) (noting that plaintiffs provided summaries of work performed at each stage of the litigation supported by declarations to support fee request but offered to produce detail time records for in-camera review if the Court so requests); *Hunter v. Nature's Way Prod., LCC*, 2020 WL 71160, at *8 (S.D. Cal. Jan. 6, 2020) ("Class Counsel has not provided detailed time records, but instead provides general summaries of each firm's billing time. The summaries and declarations provide a sufficient showing of the hours counsel performed on this case."). Nonetheless, Plaintiffs are providing the Court with their detailed time entries.  Because the billing records contain significant discussion of attorney work product that would need to be redacted in case the Court declines final approval and the case returns to active litigation, Plaintiffs have not publicly filed their detailed time entries and have, instead, submitted an application to have them reviewed *in camera*.  *See Plaintiffs' Application for Leave to Submit Class Counsel's Detailed Time Records for In Camera Review.*

Members. *See In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287, at *47 (D.N.J. May 14, 2012) (recognizing that time submitted in connection with a fee petition filed before final approval "does not include the fees and expenses…expended after [that date] on tasks such as preparing for and appearing at the fairness hearing").

The 6,016 hours billed by Class Counsel were reasonable, appropriate, and necessary for the effective prosecution of this case. As set forth above, this case saw extensive early motion practice, over a dozen depositions, the production of tens-of-thousands of pages of documents, inspections of vehicles, the submission of numerous expert reports, and contested class certification proceedings (and extensive briefing related thereto). To put the reported billable hours into perspective, the number of hours spent on this case is substantially lower than those recently approved in other automobile class actions. *See, e.g., In re Myford Touch Consumer Litig.,* 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) (23,400 hours); *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 75205, at *29 (N.D. Cal. May 3, 2019) (95,951.4 hours); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 114353, at *728 (N.D. Cal. July 21, 2017) (120,418 hours); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 WL 12327929, at *32 (C.D. Cal. July 24, 2013) (165,930 hours).

Although Plaintiffs were able to resolve the action before trial, courts recognize that Class Counsel "should not be 'punished' for efficiently litigating[.]" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1352859, at *6 (N.D. Cal. Apr. 12, 2017); *see also Rivera v. Agreserves, Inc.*, 2017 WL 445710, at *13 (E.D. Cal. Feb. 1, 2017) ("[a]warding Plaintiff a lesser amount of fees based on a lower multiplier would penalize Plaintiff's counsel for achieving a stellar result with maximum efficiency").

### 2.    The hourly rates are reasonable.

"[P]revailing market rates in the relevant community set the reasonable hourly rate for purposes of computing the lodestar amount." *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In general, "the relevant community is the forum in which the

district court sits," *id.*, and because counsel should be compensated for the delay in payment, it is appropriate to apply each biller's current rates for all hours. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994). Counsel's rates are reasonable if they are within the range charged by and awarded to attorneys of comparable experience, reputation, and ability for similar work, i.e., complex class action litigation. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Judge Tevrizian provided a sworn declaration in this matter in which he opined that Class Counsel was "highly capable, experienced, and informed," and that based upon his "observations and first-hand experience, [Class] counsel have substantial expertise in the fields of class actions and complex litigation resolution" such that their "level of advocacy … was exceptionally informed, ethical, and effective." Tevrizian Decl. (Dkt. No. 194-6), at ¶¶ 7-9. Accordingly, Class Counsel's rates reflect their skill, experience, reputation, and ability for similar work. *See Conti*, Dkt. 73 at PAGE ID # 1349 (Judge Cormac J. Carney commenting that Class Counsel "have extensive experience litigating complex matters, including automobile class actions" and that they have "represented the class capably").

The hourly rates sought by Class Counsel here range from $225-$325 for paralegals, $375-650 for associates, and $625-825 for partners. Matt Decl., ¶ 16; Naylor Decl., ¶¶ 28-32. These rates are consistent with the prevailing market rates in this forum for attorneys of comparable experience, reputation, and ability. *See* Declaration of Robert A. Curtis in Support of Motion for Attorneys' Fees, Costs, and Service Awards ("Curtis Decl."), at ¶¶ 5-6. Moreover, the rates Class Counsel seek are consistent with those that have been approved by the Ninth Circuit and judges in the Central District. *See, e.g., Marshall v. Northrup Grumman Corp.*, 2020 WL 5668935, at *7 (C.D. Cal. Sept. 18, 2020) (approving attorney rates between $490 and $1,060 per hour); *Alikhan v. Goodrich Corp.*, 2020 WL 4919382, at *8 (C.D. Cal. June 25, 2020) (approving rates of up to $950 per hour); *Edwards v. First Am. Corp.*, 2016 WL 8999934, at *5 (C.D. Cal. Oct. 4, 2016) (rates of up to $990 found reasonable); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (2008 hourly rates of up to $875 for a partner, and $700 for an attorney with 23 years

of experience); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858, at *6 (C.D. Cal. July 30, 2018) (approving billing rates between $600 and $825 per hour for attorneys with more than ten years of experience, and $325 to $575 per hour for attorneys with 10 or fewer years of experience, and $250 per hour for paralegals and clerks); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) (rates  ranging $475-$975 for partners, $300-$490 for associates, $150-$430 for paralegals and $250-$340 for litigation support staff); *In re Toyota*, 2013 WL 12327929, at *33 n.13 (rates ranging from $150 to $950).

**B.      The Lodestar is Reasonable and Should Not be Adjusted Up or Down.**

Once calculated, the lodestar should be adjusted only in rare or exceptional cases. *See, e.g., Velez v. Wynne*, 220 F. App'x 512 (9th Cir. 2007) (district court abused its discretion by reducing the presumptively reasonable lodestar without an explanation of the exceptional circumstances supporting such reduction).  There is a "'strong presumption… that the lodestar figure represents a reasonable fee . . . ." *Johnson v. Powers,* 2019 U.S. Dist. LEXIS 79596, at *7-8 (E.D. Cal. May 10, 2019) (quoting *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1119 n.4 (9th Cir. 2000)).   Here, there is no reason to adjust the lodestar up or down because it represents a reasonable fee.

Courts in the Ninth Circuit consider a number of factors in setting an appropriate fee, including: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048-52 (9th Cir. 2002); *see also Kissel v. Code 42 Software Inc*., 2018 WL 6113078, at *4 (C.D. Cal. Feb. 20, 2018).  These factors support Class Counsel's fee request.

**1.      Class Counsel achieved a favorable result for the Class.**

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Graham v. Capital One Bank (USA), N.A.*, 2014 WL

12579806, at \*5 (C.D. Cal. Dec. 8, 2014); *see also In re Heritage Bond Litig.*, 2005 WL 1594389, \*8 (C.D. Cal. Jan. 10, 2005) ("result achieved" is a major factor in making fee award). The Settlement provides substantial benefits to the Class. These include the independent engineering expert's confirmation of the efficacy of AHM's countermeasures, extending the vehicles' warranties to ensure the countermeasures are effective in the field, improving the training of Acura dealership technicians to repair the Infotainment System issues, compensating certain vehicle owners with two years of for AcuraLink Security service for the inconvenience and hassle they have experienced due to the Infotainment System problems, and providing a mechanism for qualifying vehicle owners to receive full reimbursement for eligible out-of-pocket expenses. An actuarial expert with substantial experience in the field of automotive extended warranties has valued the two-years/24,000 miles extended warranty benefit alone to be worth over $10,500,000. *See* Matt Decl., Ex. 6 (Declaration of Lee Bowron), ¶8.[3]

Moreover, Class Counsel furthered the public interest by forcing AHM to implement software and hardware improvements to address the Infotainment System issues at the heart of this litigation, issuing class notice so that Class Members would be aware of the repairs and on-going efforts to improve the performance of the Infotainment System, and providing cost-free remedies under the extended warranty benefit. *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at \*14 (C.D. Cal., Apr. 29, 2014) (noting that "Class Counsel advanced the public interest by enforcing consumer protection laws…."). The results achieved here are substantial, and support Class Counsel's fee request for their lodestar.

**2.    Class Counsel performed superior quality work to achieve the Settlement.**

"Courts have recognized that the 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Toyota*, 2013 WL 12327929,

---

[3] The overall value created by this Settlement substantially exceeds the $10,500,000 value of the two-years/24,000 miles extended warranty benefit. This is because the $10,500,000 valuation does not include the two-year AcuraLink benefit, the out-of-pocket reimbursement benefits, or the costs associated with the Dealership Assessment and Assistance Program and the Infotainment System Online Resource. *See* Matt Decl., ¶ 30.

at *31 (quoting *Knight v. Red Door Salons, Inc*., 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009)).  When evaluating this factor, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage*, 2005 WL 1594389, at *12 (citations omitted).  As set forth above, the results achieved here confer significant benefits to the Class, and they were achieved after Class Counsel successfully resisted motions to dismiss, obtained certification of a California class, and completed discovery.  Class Counsel have significant experience in consumer class actions, products liability, and auto defect cases (*see* Matt Decl. at ¶ 25; Naylor Decl. at ¶ 28),  and the skill they exhibited here supports approval of the fee request.  *See* Tevrizian Decl. (Dkt. No. 194-6), at ¶¶ 7-9; *see also, e.g., Norris v. Mazzola*, 2017 U.S. Dist. LEXIS 208610, at *38 (N.D. Cal. Dec. 19, 2017) (fee award supported by the skill required in extensive motion practice and discovery, as well as the quality of work performed by highly experienced counsel); *Zepeda v. PayPal, Inc.,* 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (class counsel's consumer class action expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience or capability" given the "substantive and procedural complexities" and the "contentious nature" of the settlement); *Allagas v. BP Solar Int'l, Inc*., 2016 U.S. Dis. LEXIS 187785, at *5 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

### 3.    This litigation was risky, complex, and expensive.

Another factor to consider in determining attorneys' fees is the risk counsel took of "not recovering at all, particularly in a case involving complicated legal issues." *In re Toyota*, 2013 WL 12327929, at *31 (C.D. Cal. July 24, 2013) (internal alterations and citations omitted); *see also In re Heritage*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of costs, is a factor in determining counsel's proper fee award."); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). Consumer fraud class actions carry an inherent risk of being more uncertain than other types of class actions.  *Kakani v. Oracle Corp*., 2007 U.S. Dist. LEXIS

95496, at *12 (N.D. Cal. Dec. 21, 2007).

Here, the litigation was fraught with numerous risks. While Class Counsel were confident in Plaintiffs' claims, there is a recognized element of risk in any litigation, particularly complex and expensive class litigation. This is not just an abstract concept, as illustrated by *Daniel v. Ford Motor Co.,* where after remand the case proceeded to an 11-day trial. The jury returned a defense verdict, and the court taxed plaintiffs with $74,551.48 in costs. *See Daniel v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 70545, at *18 (E.D. Cal. Apr. 25, 2018). Class Counsel's advancement of several millions of dollars in resources, including professional time and hundreds-of-thousands of actual dollars of expenses, highlights the high level of risk they faced. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (C.D. Cal. 2008) ("The risk that further litigation might result in plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees").

### 4. Class Counsel worked on a contingent basis

"Attorneys are entitled to a larger fee award when their compensation is contingent in nature." *In re Toyota*, 2013 WL 12327929, at *32 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also Kissel*, 2018 WL 6113078, at *5. "[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee. *See In re Washington*, 19 F.3d 1291, 1299; *Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002, at *25 (N.D. Cal. Jun. 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, 2017 U.S. Dist. LEXIS 115321, at *22 (S.D. Cal. July 21, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis

warranted "an upward adjustment to the fee award").  Forgoing other work, Class Counsel litigated this class action over the last three years on a purely contingent basis (*see* Matt Decl., at ¶ 12; Naylor Decl., at ¶ 34), and the risk of non-recovery is sufficiently substantial to justify the instant fee request.

### 5.    The reaction of the Class also supports the fee request.

"The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable." *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *71 (C.D. Cal. June 10, 2005). As of the filing of this motion, Class Counsel is not aware of any class member who has filed an objection to the Settlement.[4] The absence or relatively small number of objections is further evidence that the amount of attorneys' fees is reasonable. *See, e.g., Jarrell v. Amerigas Propane, Inc.*, 2018 U.S. Dist. LEXIS 58619, at *8-9 (N.D. Cal. Apr. 5, 2018); *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 U.S. Dist. LEXIS 114235, at *30 (N.D. Cal. Aug. 25, 2016).

### 6.    A crosscheck is not necessary to confirm the reasonableness of the fee request.

The Ninth Circuit recently said that it does "not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method." *In re Hyundai*, 926 F.3d at 571. This would make "little logical sense," it explained, because "the lodestar method yields a fee that is presumptively [reasonable]." *Id*. (internal citations omitted).

## C.    Class Counsel Should be Reimbursed for Their Litigation Expenses.

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Kissel,* 2018 WL 6113078, at *6.  "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp., Inc.*, 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012). As submitted in detail in the attached declarations and summarized in the chart attached as Ex. 4 to the Matt Decl. and Exhibit  C

---

[4] While not a formal objection, Class Counsel did receive correspondence made on behalf of one Class Member expressing some concerns regarding the Settlement.

to the Naylor Decl., Class Counsel have collectively incurred over $477,701.11 in recoverable expenses.  The declarations describe in more detail the various expenses, which included the retention of three experts, taking and defending numerous depositions, attending multiple private mediation sessions, and litigating the case through class certification and the completion of discovery.  At least $400,738 of the expense total went towards expert fees.[5]  Matt Decl., ¶ 31.  And as with the lodestar figures, Plaintiffs have allocated some of the expenses to the *Conti* case, reducing the expenses claimed here.  *See* Naylor Decl., at ¶ 23, 24, 33.

Courts routinely approve reimbursement of expenses of much greater magnitude in automobile and other class action cases.  *See, e.g., In re Chrysler-Dodge-Jeep*, 2019 U.S. Dist. LEXIS 75205, at *29 (approving $7 million in expenses); *In re Toyota*, 2013 WL 12327929, at *31-33 (awarding $27 million in expenses); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2016 U.S. Dist. LEXIS 102408, at *84 (N.D. Cal. Aug. 3, 2016) (awarding $7.67 million in expenses); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*., 2016 U.S. Dist. LEXIS 148374, at *730 (N.D. Cal. Oct. 25, 2016) (approving up to $8.5 million in expenses); *McCrary v. Elations Co., LLC*, 2016 U.S. Dist. LEXIS 24050, at *32 (C.D. Cal. Feb. 25, 2016) ("[W]hile the total amount of such costs make up a substantial portion of the total settlement amount, the Court finds Class Counsel's request to be reasonable because this case proceeded to the verge of trial and included heavy motions practice. The Court therefore approves the suggested amount for costs.").

## D.    The Court Should Grant a Service Award for Each Class Representative.

Class Counsel also request that the Court approve service awards ranging from $4,000 to $10,000 for each Plaintiff.  Service awards are typical in class actions, and "are intended to compensate class representatives for work done on behalf of the class, to make

---

[5] Notably, Class Counsel is not seeking reimbursement for the $24,115 they paid to the independent engineering expert hired to confirm the efficacy of AHM's countermeasures. Matt Decl., ¶ 20.

up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Each of the Plaintiffs expended considerable effort on behalf of the Class by, among other things, (1) meeting with Class Counsel at the outset of the case; (2) assisting with investigation of the facts; (3) reviewing the complaint prior to filing; (4) locating, sorting, producing, and supplementing personal records in response to 17 Interrogatories and 29 document requests propounded by AHM per Plaintiff; and (5) consulting with Class Counsel during the course of the litigation and settlement negotiations. *See* Exhibit A (Allen Decl.; Banh Decl.; Bartholomew Decl.; Bilbrey Decl.; Brumer Decl.; Chisari Decl.; Faden Decl.; Gonzales Decl.; Gratton Decl.; Gravlin Decl.;  Jahsman Decl.; Klein Decl.; Lawrence Decl.; Peoples Decl.; Pryor Decl.; Quinlan Decl.; Samaha Decl.; and Subbarao Decl.).  In addition, four Plaintiffs presented their vehicles and phones for inspection by AHM's expert, and four Plaintiffs had their depositions taken. *Id*.  **Notably, Plaintiffs Allen, Bilbrey, Samaha, Quinlan, Gravlin, Klein, Gonzales, and Gratton all turned down individual Rule 68 settlement offers of $10,000 each out of loyalty to the Class and their recognition of their obligations to the absent Class members who would receive no such compensation.** *Id.* Their commitment to the Class's interests and desire to remedy these issues, not just for themselves, but also the entire Class, was essential to the successful and timely prosecution of this class action and, in Class Counsel's view, warrants recognition in the form of the service awards requested. The work that each Plaintiff performed, including their best estimate of the hours they spent in the prosecution of this case, is contained in their declarations, which are submitted herewith as Exhibit A.

"Courts in this Circuit routinely grant requests for an award over $5,000 where the particular circumstances warrant such an award." *Nelson v. Avon Prods.*, 2017 U.S. Dist. LEXIS 26451, at *19 (N.D. Cal. Feb. 24, 2017); *see also Pike v. Cty. of San Bernardino*, 2020 WL 1049912, at *6 (C.D. Cal. Jan. 27, 2020) (granting $15,000 incentive awards "where class representatives devoted great time and undertook great risk in the course of

litigation"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014)
(awarding $10,000 where lead plaintiff was deposed, participated in a four-day mediation,
and spent more than 200 hours assisting in the case); *Ontiveros v. Zamora*, 303 F.R.D. 356,
366 (E.D. Cal. 2014) ($15,000); *Ridgeway v. Wal-Mart Stores Inc*., 269 F. Supp. 3d 975,
1003 (N.D. Cal. 2017) ($15,000); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1317
(S.D. Cal. 2017) ($15,000); *Viceral v. Mistras Grp., Inc*., 2017 U.S. Dist. LEXIS 23220, at
*15 (N.D. Cal. Feb. 17, 2017) ($7,500); *Harris v. Vector Mktg. Corp*., 2012 U.S. Dist.
LEXIS 13797, at *24 (N.D. Cal. Feb. 6, 2012) ($12,500); *Glass v. UBS Fin. Servs*., 2007
U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 26, 2007) ($25,000).  Indeed, Courts have
awarded amounts exceeding $9,000 in other automobile class actions.  *See In re Toyota
Motor Corp*., 2013 U.S. Dist. LEXIS 94485, at *231 (C.D. Cal. June 17, 2013) (approving
incentive awards greater than $10,000); *Dewey v. Volkswagen of Am*., 909 F. Supp. 2d 373,
395 (D.N.J. 2012) (approving $10,000 incentive awards to class representatives); *see also
McLeod v. Bank of Am., N.A*., 2019 U.S. Dist. LEXIS 40869, at *22 (N.D. Cal. Mar. 13,
2019) (approving a $15,000 incentive award in an employment case).

Accordingly, Plaintiffs request $10,000 service awards for Roberta Bilbrey, Jamal
Samaha, George Quinlan, Sarah Gravlin, Mark Klein, Daniel Allan, Paul Gonzales, and
Kristen Gratton, and $4,000 service awards for Jimmy Banh, Mark Peoples, Alexis Chisari,
Michael Brumer, Dave Jahsman, John Bartholomew, Vimal Lawrence, Mark Klein, Adam
Pryor, and Srikarthik Subbarao.  The proposed service awards are reasonable and within
the normal range of awards and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the
Court approve Plaintiffs' request for $3,402,530 in attorneys' fees, $477,701.11 in
expenses, and $120,000 in service awards for the Plaintiffs.

Dated:  November 1, 2021              HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Sean R. Matt*

Steve W. Berman (*pro hac vice*)
Sean R. Matt *(pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:  (213) 330-7150
Facsimile:   (213) 330-7152
*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*