STEVE W. BERMAN (*pro hac vice*)
SEAN R. MATT (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone:   (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

CHRISTOPHER R. PITOUN (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:   (213) 330-7150
Facsimile:   (213) 330-7152
*christopherp@hbsslaw.com*

*Counsel for Plaintiffs and the Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JIMMY BANH, et al., on behalf of themselves and all others similarly situated, | Case Number:  2:19-cv-5984-RGK (ASx) |
| Plaintiffs, | [*The Honorable R. Gary Klausner*] |
| vs. | **NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** |
| AMERICAN HONDA MOTOR CO., INC., a California corporation, | |
| Defendants. | Hearing Date: December 6, 2021 Time:  9:00 a.m. |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on December 6, 2021, at 9:00 a.m., or as soon thereafter as the matter can be heard, in Courtroom of the Hon. R. Gary Klausner, located at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, Plaintiffs Roberta Bilbrey, Jimmy Banh, Mark Peoples, Jamal Samaha, George Quinlan, Sarah Gravlin, Alexis Chisari, Michael Brumer, Dave Jahsman, John Bartholomew, Vimal Lawrence, Mark Klein, Adam Pryor, Srikarthik Subbarao, Daniel Allan, Paul Gonzales, Eric Faden, and Kristen Gratton ("Plaintiffs") on behalf of themselves all others similarly situated, will, and hereby do, move this Court to:

1.   Enter an Order granting final approval of the Settlement described in the Amended Settlement Agreement (the "Settlement Agreement"), which is attached as Exhibit 1;

2.   Finally certify the Settlement Class;

3.   Finally determine that the Settlement is fair, reasonable, and adequate pursuant to Rule of Civil Procedure 23(e);

4.   Find that Notice to the Class was directed in a reasonable manner;

5.   Finally appoint Hagens Berman Sobol Shapiro LLP and Goldenberg & Schneider LPA as Class Counsel and designate Plaintiffs as Class Representatives;

6.   Finally approve the distribution of benefits under the Settlement;

7.   Reserve and continue jurisdiction with respect to Plaintiffs' previously filed motion for attorneys' fees, costs, and service awards (ECF No. 200) ("Plaintiffs' Fee Motion"); and

8.   Enter a final judgment dismissing the action but reserving and continuing jurisdiction regarding implementation and enforcement of the terms of the Settlement.

As discussed below in the Memorandum of Points and Authorities, the Parties have reached this Settlement in good faith, and it has been well received by Class Members. The Settlement fairly reimburses Class Members for their economic losses incurred as a result of the conduct that formed the basis of Plaintiffs' Second Amended Complaint. Moreover, the notice program ordered by the Court has timely commenced and is providing the best notice practicable under the circumstances. The Class Representatives and Class Counsel thus respectfully request that the Court grant final approval, upon which class benefits will be provided to the Class Members consistent with the terms of the parties' Settlement Agreement.

This Motion is based upon: (1) this Notice of Motion and Motion for Final Approval of Class Action Settlement; (2) the accompanying Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Sean R. Matt in Support of Motion for Final Approval of Class Settlement, filed concurrently herewith (the "Matt Decl."); (4) the Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.), previously filed with Plaintiffs' Motion for Preliminary Approval (ECF No. 194-9); (5) the Amended Settlement Agreement attached as Exhibit 1; (6) the Declaration of Lee M. Bowron, attached as Exhibit 2; (7) the Declaration of Eldon Leaphart, attached as Exhibit 3; (8) the declarations of each of the Class Representatives, filed with Plaintiffs' Fee Motion; (9) the records, pleadings, and papers filed in this action; and (10) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated:  November 8, 2021          HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Sean R. Matt*

Steve W. Berman (*pro hac vice*)
Sean R. Matt (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:   (213) 330-7150
Facsimile:    (213) 330-7152
*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

Case No.:  2:19-cv-5984-RGK(ASx)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION .................................................................................. 1

II.    TERMS OF THE SETTLEMENT ...................................................... 3

III.   CASE HISTORY ................................................................................ 6

IV.   FINAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE ................................................................................... 8

     A.    The Rule 23(a) prerequisites are satisfied. ...................................... 9

        1.    The Settlement Class is sufficiently numerous. .................................. 9

        2.    There are common questions of law and fact. .................................... 9

        3.    Plaintiffs' claims are typical of the Settlement Class Members' claims. ............................................................................. 9

        4.    Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Settlement Class. ............................... 10

     B.    The Settlement Class meets the requirements of Rule 23(b). ...................... 10

        1.    Common questions of law and fact predominate. ............................. 10

        2.    A Class Action is a superior means of resolving these claims. ....................................................................................... 10

V.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED ........................................... 11

     A.    The Rule 23(e)(2) and (3) factors support final approval. ........................... 12

        1.    Rule 23(e)(2)(A): the Class Representatives and Class Counsel have vigorously represented the Class. .............................. 12

        2.    Rule 23(e)(2)(B): the Settlement resulted from good faith, informed, arm's-length negotiations. ................................................ 14

Motion for final Approval of
Class Action Settlement

3. The relief under the Settlement balances the risks and expense of continued litigation with the benefits being offered to Class Members, thereby satisfying Rule 23(e)(2)(C)(i)-(iii). ................................................................... 15

4. Rule 23(e)(2)(C)(iv): there are no undisclosed side agreements. ........................................................................... 17

5. Rule 23(e)(2)(D): the Settlement treats all Class Members equitably relative to one another. ......................................... 17

B. Adequate Notice has been provided under Rule 23(c)(2)(B) and 23(e)(1). ........................................................................... 17

C. Plaintiffs have complied with all additional approval factors. .................... 18

1. Class Counsel's view of the Settlement should be afforded substantial weight. ............................................... 18

2. Class Members have generally reacted positively to the Settlement. ...................................................................... 19

VI. CONCLUSION ................................................................................. 20

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdullah v. U.S. Sec. Assocs.*,
    731 F.3d 952 (9th Cir. 2013) ......................................................................... 10

*Bernadette Pauley v. Cf Entm't*,
    2020 WL 5809955 (C.D. Cal. Mar. 13, 2020).................................................. 6

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ......................................................................... 18

*Bower v. Cycle Gear, Inc.*,
    2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ................................................ 14

*Cervantes v. IHG Mgmt. Md. LLC*,
    2019 WL 2970834 (C.D. Cal. Apr. 30, 2019) .................................................. 6

*Churchill Vill., L.LC. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................... 19

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................ 12, 13

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................... 12, 15

*Fed. Ins. Co. v. Caldera Med., Inc.*,
    2016 WL 5921245 (C.D. Cal. Jan. 25, 2016) ................................................. 13

*Free Range Content, Inc. v. Google, LLC*,
    2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ............................................... 18

*Glass v. UBS Fin. Serv. Inc.*,
    2007 WL 221862 (N.D. Cal. Jan 26, 2007)................................................... 19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................... 9, 11, 12, 18

*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) ................................................................... 18

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .................................................................................. 17

*LaGarde v. Support.com, Inc.*,
  2013 WL 1283325 (N.D. Cal. Mar. 25, 2013) ............................................... 13

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................................ 13

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................................. 13

*Mendez v. C-Two Grp., Inc.*,
  2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) ............................................... 14

*Mendoza v. Hyundai Motor Co.*,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .......................................... 17, 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 18

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009) .............................................. 18

*In re Ominivision Tech., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................... 15

*Rodriguez v. Farmers Ins. Co. of Ariz.*,
  2013 WL 12109896 (C.D. Cal. Aug. 4, 2013) .............................................. 15

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
  2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ............................................. 14

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ...................................................................... 15

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................... 12

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................... 16

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ............................................................................. 10

Case No.:  2:19-cv-5984-RGK(ASx)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017) ........................................................ 12

*Wren v. RGIS Inventory Specialists*,
2011 1230826 (N.D. Cal. Apr. 1 2011) ......................................................... 19

### OTHER AUTHORITIES

Adv. Cmt. Note R. 23. ..........................................................................*passim*

Fed. R. Civ. P. 23 ................................................................................*passim*

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21:632 (2004). ..................... 10

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS
§ 11:41 (4th ed. 2002) .................................................................................. 12

Case No.:  2:19-cv-5984-RGK(ASx)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# I. INTRODUCTION

Plaintiffs, on behalf of themselves and nearly 130,000 Settlement Class Members, achieved an excellent result in this litigation.  Plaintiffs and Defendant American Honda Motor Company, Inc. ("AHM") reached a proposed settlement (the "Settlement") to resolve class allegations regarding an alleged defect in the "Infotainment System" contained in 2019-2020 Acura RDX vehicles ("Class Vehicles").   This Settlement is the result of prolonged arm's-length negotiations during numerous mediation sessions between February 2020 and September 2020 with the Honorable Dickran M. Tevrizian (ret.).  Since Plaintiffs filed this case and a related lawsuit involving similar technology in Honda cars (*Leslie Conti v. American Honda Motor Co. Inc.*, Case No. 2:19-cv-02160-CJC-GJS (C.D. Cal.)), AHM has worked to address the problems Plaintiffs identified.  Between this case and *Conti*, AHM has issued three recalls, four Service Bulletins, and dozens of dealer communications relating to the Infotainment Systems at issue, in addition to numerous software updates that are wirelessly delivered to the Settlement Class Vehicles (referred to "Over-the-Air" updates) and also available for installation at dealerships.

The Proposed Settlement builds upon this work and provides substantial relief to the Settlement Class.  It provides for an independent engineering expert to validate the efficacy of the countermeasures that AHM has developed (who has done so; *see* Exhibit 3); facilitates the implementation of these countermeasures in the field; provides a two-year/24,000 mile warranty extension covering these issues, which an expert retained by Plaintiffs estimates provides approximately $10,500,000 in benefit to the Settlement Class (*see* Exhibit 2)[1]; obligates AHM to work in good faith to continue to improve Infotainment System performance at least through the extended warranty period; creates a Dealership Assistance and Assessment Program (the "DAAP") that will direct AHM's authorized

---

[1] Plaintiffs refile the redacted Declaration of Lee M. Bowron here as Exhibit 2. Plaintiffs have previously filed both a redacted (ECF No. 200-8) and an under seal (ECF No. 199-1) version of this declaration.

Case No.: 2:19-cv-05984-RGK(ASx)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

dealerships to undergo additional training and implement additional service strategies; creates the Infotainment System Online Resource to, *inter alia*, inform Settlement Class Members about the countermeasures now available and the symptoms the countermeasures are designed to address and permit Settlement Class Members to report directly to AHM any new Infotainment System symptoms or problems they may experience; provides a mechanism to compensate qualifying Settlement Class Members for the inconvenience and hassle they may have experienced because of relevant Infotainment System problems, including two free years of AcuraLink Security Service (valued at $89 per year); and provides a mechanism for qualifying Settlement Class Members to receive full reimbursement for eligible out-of-pocket expenses. Further, the Proposed Settlement provides a mechanism for AHM to separately pay reasonable attorneys' fees and costs and Plaintiff service awards so that these payments will not dilute any of the benefits available to the Settlement Class.

The Settlement is fair, adequate, and reasonable. The Parties vigorously litigated every aspect of this complex case and completed comprehensive expert and fact discovery to better assess the strengths and weaknesses of Plaintiffs' claims and AHM's defenses. Class Counsel weighed the significant risks of continued litigation and believe that Plaintiffs and Settlement Class Members are better off with the immediate benefits under the Settlement. And the Settlement treats all Settlement Class Members equitably.

As explained below, Class Notice was made subject to Rule 23(h) requirements, and thus far, the reception of the Settlement by the Settlement Class has been overwhelmingly positive. As of the filing of this motion only 15 Class Members—out of nearly 130,000—have opted out of the Settlement. And only one has filed an objection. While one week remains before the deadline to file and objection or opt out,[2] this is an early indication that the Class appreciates the benefits received by the Settlement.

Class Counsel respectfully request that the Court grant final approval of the

---

[2] The deadline to file an objection or opt out does not run until November 15, 2021, which is 45 days from the Notice Date. ECF No. 197 at 13.

Settlement, finding it fair, adequate, and reasonable to the Settlement Class, under the standards of Rule 23(e) and the law of this Circuit.

## II.    TERMS OF THE SETTLEMENT

The Settlement Class generally includes all current owners and lessees of the Settlement Class Vehicles who reside in, and who purchased or leased their vehicles (other than for purposes of resale or distribution) in the United States, Puerto Rico, and all United States territories, as well as former owners and lessees of Settlement Class Vehicles who submit a Claim.  AHM has paid for and provided Class Notice by first class mail (and electronic mail to Settlement Class Members, where possible).  Agreement, ¶¶ 4.1-4.12; ECF No. 194-2.  Pursuant to the schedule approved by the Court, AHM, as Settlement Administrator, will on November 22, 2021, submit a declaration detailing the provision of Notice to the Class.

The major Settlement benefits are as follows:

1.    *Independent Review of Countermeasures*.  The Parties jointly retained an independent engineering expert to validate that the countermeasures that AHM implemented are robust and appropriately (and effectively) address the Infotainment System issues identified in this litigation.  Agreement, ¶ 7.6.  That report, prepared by Eldon Leaphart of Carr Engineering, is attached as Exhibit 3.

2.    *Extended Warranty*.  AHM will extend the Settlement Class Vehicles' New Vehicle Limited Warranty ("NVLW") to cover qualified Infotainment System repairs. The extension will add an additional two (2) years or 24,000 miles to the original four (4) years or 50,000 miles NVLW (thereby providing warranty coverage for covered repairs for six (6) years or 74,000 miles from the original purchase or lease date).  Agreement, ¶¶ 3.8-3.15.

3.    *Ongoing Software Updates*.  AHM will, in good faith, support the Settlement Class Vehicles by continuing to research, develop, and offer software updates to address identified Infotainment System problems for a period of no less than the Settlement Class Vehicles' Extended Warranty period.  Agreement, ¶ 3.11.

4.    *The Dealership Assistance and Assessment Program*.  Through the DAAP,

AHM will direct its authorized dealerships and their technicians to undergo additional training and implement additional service strategies to resolve problems.  Technicians will be trained to make software and/or hardware repairs for known Infotainment System problems even if the specific symptom described by the Settlement Class Member does not manifest at the time of the dealership visit.  Agreement, ¶¶ 3.6-3.7.  This is notable because Plaintiffs alleged that authorized Acura dealerships were frequently unable to replicate the often-intermittent Infotainment System issues.  As a result, the Plaintiffs were often told there was nothing the dealership could do to address the issues.  Given the uneven approaches to addressing Infotainment System problems (including Plaintiffs previously being turned away by dealers), the DAAP provides a significant benefit.

5.    *The Infotainment System Online Resource*.  AHM will create, maintain, and update for at least 24 months after the Effective Date an Infotainment System Online Resource that will, among other things (a) include a list of potential Infotainment System-related issues, that, when selected, will open a drop-down menu to offer potential solutions to the problem such as updating the vehicle's or phone's software or presenting the vehicle at a dealership for an assessment or repair; (b) provide information related to the Infotainment Systems that Settlement Class Members can review; (c) provide a means by which Settlement Class Members can report to AHM issues or symptoms they believe to be attributable to the Infotainment System; and (d) post relevant recall notices, Service Bulletins, and OTA updates relating to the Infotainment System.  Agreement, ¶¶ 3.2-3.5.

6.    *The Delayed Warranty Repair Service Benefit*.  Settlement Class Members who, prior to the Notice Date, made more than one visit to an authorized Acura dealership for Infotainment System issues that were not effectively repaired will be eligible to receive

two free years of AcuraLink Security Service, which is a $178 value ($89 per year),[3] provided that the visits appear in AHM's warranty database and the second visit was not the result of a recall or product update.  If a Settlement Class Member already subscribes to AcuraLink Security Service, he or she can tack on service for an additional two years from when their paid-for service expires.  Agreement, ¶¶ 3.16-3.17, 3.20-3.22.

7.     *The Related Warranty Repair Service Benefit*.  Settlement Class Members who, on or before the Notice Date of this settlement, made more than one service visit for a single Infotainment System issue not resolved during the initial warranty service visit (provided both service visits appear in AHM's warranty database and relate to the same Infotainment System issue and the second visit was not the result of a recall or product update), will be *automatically* eligible to receive two free years of AcuraLink Security Service, which is a $178 value ($89 per year).  Those Settlement Class Members who qualify will *not* have to file a claim form to obtain this benefit.  Agreement, ¶¶ 3.18-3.22.

8.     *Compensation for Certain Costs Related to Delayed Warranty Claims*.  Claim Forms can be filed seeking reimbursement for (a) qualifying transportation costs incurred if the Settlement Class Member returned a Settlement Class Vehicle more than once to a dealership to obtain a repair for Infotainment Systems Symptoms; and/or (b) qualifying battery recharging costs incurred as a result of a car battery that drained because the Infotainment System did not turn off when it should have.  Agreement, ¶¶ 3.23-3.26.

9.     *Attorneys' Fees and Costs*.  AHM will pay Class Counsel's reasonable attorneys' fees and expense reimbursements in an amount consistent with the terms of the Settlement Agreement and as approved by the Court.  Agreement, ¶¶ 5.3-5.7.  AHM's

---

[3] The AcuraLink Security Service app allows vehicle owners to connect to their vehicle from their smartphone. Some of the features included are "Automatic Collision Notification," in which a live agent will reach out to check on the driver and request that help be sent in the event of a collision; "Emergency Call Function," in which a live agent will request that help be sent in the event of an emergency; "Enhanced Roadside Assistance," which allows the driver to easily summon towing and repair services using a button in their vehicle; and "Last Mile Function," which provides walking directions to the driver's final destination when he or she exits the vehicle. *See* https://acuralink.acura.com/#/compatibility?year=2020&model=RDX.

Case No.:  2:19-cv-5984-RGK(ASx)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

payment of attorneys' fees and expense reimbursement will not impact or diminish any of the Settlement benefits available to the Class.  The Parties have not reached an agreement on the amount of fees and expenses, which the Court will resolve in association with Plaintiffs' Fee Motion.

>    10.    *The Release.*

In exchange for these benefits, all Settlement Class Members who do not opt-out of the Settlement Class will be subject to a release of their claims against AHM related to Infotainment Systems and Infotainment System Symptoms, as asserted, or as could have been asserted, in the litigation or any other proceedings.  Agreement, ¶¶ 6.1-6.6.  The Parties agreed to a reasonably targeted release, which the Court preliminarily approved.  "Released Claims" are defined as follows: "Released Claims" means any claims the class members had or could have had with respect to "any conduct, act, omissions, facts … related to or arising out of the Infotainment Systems[,] … as asserted, or as could have been asserted in the Litigation or any other proceedings, and ***that are based on the same factual predicate asserted in the Second Amended Complaint*** (the operative complaint) filed in the Litigation…." (Emphasis added). The scope of the release satisfies Ninth Circuit precedent and is similar to releases previously approved by this Court.  *See Bernadette Pauley v. Cf Entm't*, 2020 WL 5809955, at *9 (C.D. Cal. Mar. 13, 2020); *Cervantes v. IHG Mgmt. Md. LLC*, 2019 WL 2970834, at *5-6 (C.D. Cal. Apr. 30, 2019).

## III.   CASE HISTORY

Plaintiffs allege that the Settlement Class Vehicle Infotainment Systems suffered from software and hardware defects that caused the systems to freeze, crash, fail to boot up, fail to shut down, or suffer intermittent failures to connect to peripheral devices such as phones. *See* Plaintiffs' Corrected Second Amended Complaint, ECF No. 66-1 ("SAC"). Plaintiffs initiated this action on July 11, 2019, contending that AHM should have disclosed the defects prior to sale or remedied the defects under warranty within a reasonable period of time after sale.  Plaintiffs brought claims for violation of relevant state consumer protection acts and for breach of express and implied warranties.  Over the course

of the litigation, some Plaintiffs were dismissed, others compelled to arbitration, and a few non-California Plaintiffs' claims were severed and set to be transferred to their respective home states' district courts.  *See* ECF Nos. 103, 127, 153, 154.  On October 18, 2019, AHM moved to dismiss Plaintiffs' First Amended Class Action Complaint.  On December 17, 2019, the Court granted the motion in part and denied it in part (ECF No. 60), after which Plaintiffs filed the SAC on January 14, 2020.  AHM answered the SAC, denying all material allegations, liability, and interposing affirmative defenses.  ECF No. 69.

Shortly thereafter, the Parties began extensive discovery, during which AHM and its related entities produced more than 20,000 pages of documents, comprised of, among other things, email correspondence, company procedures, corporate documentation, and class member information.  Plaintiffs issued subpoenas to AHM corporate affiliates Honda R&D Americas, Inc. and Honda of America Manufacturing, Inc., and to companies that supplied parts or technology used in the Infotainment Systems.  Matt Decl., ¶ 5.   Class Counsel took the depositions of relevant AHM employees and those of its related companies, including multiple 30(b)(6) depositions.  Plaintiffs engaged a liability expert (engineer Steve Loudon) and damage experts (marketing expert Steve Gaskin and economist Colin Weir), each of whom issued a report and had their depositions taken. Plaintiffs also analyzed the expert reports of two experts retained by AHM and took their depositions.  *Id.*, ¶¶ 5-7.  Plaintiffs themselves produced extensive information, including over 3,000 pages of documents, and prepared for depositions. Several Plaintiffs sat for depositions.  *Id.*  Fact and expert discovery concluded before the Parties agreed to settle.

The Court granted in part and denied in part Plaintiffs' April 9, 2020, Motion for Class Certification.  The Court's July 28, 2020, Order appointed one Named Plaintiff (Jimmy Banh) as the class representative of the following certified Class: "All persons or entities who purchased a new Class Car [*i.e.*, a new 2019 or 2020 Acura RDX vehicle] from an authorized Acura dealer in California."  The Order severed the claims of the remaining non-California Plaintiffs and proposed to transfer them to their home states.  ECF No. 154.

Motion for final Approval of
Class Action Settlement

On May 4, 2020, AHM filed a Motion to Compel Arbitration, which the motion was granted in part and denied in part. Also, on May 4, 2020, AHM filed Motions to Strike the Declarations of Plaintiffs' experts Steve Loudon, Colin B. Weir and Steven P. Gaskin, which the Court denied. On August 11, 2020, AHM filed a Rule 23(f) Petition for Leave to Appeal with the Ninth Circuit Court of Appeals, which remains pending but has been stayed so that the Court can evaluate the Proposed Settlement.

On February 25, March 24, September 3, and October 1, 2020, the Parties conducted formal private mediation sessions with the Judge Tevrizian (ret.), and several additional informal mediation sessions were held with Judge Tevrizian. Matt Decl., ¶ 8. While only limited progress was made in the February and March sessions, mediation efforts intensified after the Court issued its orders on the salient motions to certify a class, exclude witnesses, and compel arbitration. The mediation process was successful, and the Parties signed a Memorandum of Understanding in October and, later, a Settlement Agreement. *See* Declaration of Mediator Hon. Dickran M. Tevrizian (Ret.) in Support of Motion for Preliminary Approval of Class Settlement ("Tevrizian Decl."), ECF No. 194-9.

Along with this action, Class Counsel also filed a closely related action involving Infotainment System technology in certain model year Honda vehicles (*Leslie Conti v. American Honda Motor Co. Inc.*, Case No. 2:19-cv-02160-CJC-GJS (C.D. Cal.)). Although the *Banh* and *Conti* actions involve different vehicles, the Infotainment Systems and technology at issue in them are similar. Consequently, the Parties' discovery in the two cases overlapped considerably, and the actions were litigated in a parallel track, mediated together, and ultimately also settled in parallel. The *Conti* case is before Judge Cormac Carney, and the final approval hearing in the *Conti* case is scheduled for January 4, 2022.

The Court granted preliminary approval of the Settlement here on June 3, 2021, finding that the Settlement would likely be found to be fair, adequate, and reasonable to Class Members pending final approval. ECF No. 197.

## IV.   FINAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE

In its preliminary approval Order, the Court found that it would likely be able to

certify the Settlement Class (ECF No. 197) after having already determined that certification of a California Class was proper (ECF No. 154). Plaintiffs briefly address the Rule 23 (a) and (b) elements below.

## A.   The Rule 23(a) prerequisites are satisfied.

### 1.   The Settlement Class is sufficiently numerous.

Class members must be so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Settlement Class consists of about 130,000 Class Members, and thus "easily satisfie[s] the threshold requirement." ECF No. 197 at 5. Numerosity is established.

### 2.   There are common questions of law and fact.

The second requirement of Rule 23 is the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2). The Court has already found that both the California Class and the Settlement Class met the commonality threshold, because "all claims being settled involve the same defect in the Infotainment System, found in the same vehicles of the same make and model, and covered by the same warranty." ECF No. 154 at 23; ECF No. 197 at 6.

### 3.   Plaintiffs' claims are typical of the Settlement Class Members' claims.

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Instead, typicality can be satisfied where a plaintiff suffered a similar injury, and other Class Members were injured by the same course of conduct. ECF No. 194 at 25. Here, the Court has already found that both Plaintiffs and Class Members suffered the same injury (*i.e.* defects in the Infotainment System) that arose out of the same conduct by AHM. ECF No. 154 at 23; ECF No. 197 at 6. And Plaintiffs' interest in obtaining a fair, reasonable, and adequate settlement of the claims asserted are identical to the interests of the Settlement Class Members. ECF No. 194 at 16. Thus, typicality is established.

4.    **Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Settlement Class.**

The final element of Rule 23(a) requires that the representative plaintiffs will fairly and adequately represent the interests of the class.   Here, AHM did not dispute that adequacy is satisfied.   ECF No. 154 at 23.   And the Court's Preliminary Approval Order found that "there is no evidence of any conflicts of interest between Plaintiffs and the members of the proposed class."   ECF No. 197 at 6.   Further, significant evidence exists that Plaintiffs and Class Counsel have consistently protected the interests of the Settlement Class.   ECF No. 194 at 16-17; ECF No. 197 at 6-7.   The adequacy element has been met.

**B.    The Settlement Class meets the requirements of Rule 23(b).**

1.    **Common questions of law and fact predominate.**

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied.   The predominance analysis focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013).   The general standards for litigation class certification also apply to settlement class certification, except that the court need not consider potential trial management problems.   MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21:632 (2004).   Here, the Court conducted an extensive predominance analysis at class certification and found that common issues predominated for fraud and warranty claims asserted on behalf of the California Class.   ECF No. 154 at 23-27.   The Court also found that common issues predominated for the Settlement Class "because the Infotainment System's defects and Defendant's knowledge of those defects is a question common to the claims of all class members that Plaintiffs seek to represent, and thus, can be resolved for all members in a single adjudication." ECF No. 197 at 8.   Nothing has changed since the Court made this determination as part of its preliminary approval of the Settlement, and therefore, issues common the Settlement Class still predominate.

2.    **A Class Action is a superior means of resolving these claims.**

A class action is superior under Rule 23(b)(3) because it represents the only realistic

method for owners and lessees of a vehicle equipped with AHM's Infotainment System to obtain relief. *See, e.g., Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation"). The Court has already explained that such a scenario is present here, because "according to the record provided, no potential members of the class has expressed desire to proceed independently." ECF No. 197 at 8. The Court also previously explained that "individual resolution of claims is likely to result in modest settlements or not be pursued at all due to high litigation cost," *id*. at 8, and that this class action allows for the efficient resolution of substantially identical claims (ECF No. 154 at 27) and that there are no manageability issues (ECF No. 197 at 8). Therefore, the Court should definitively certify the Settlement Class for purposes of final approval.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED

Rule 23 of the Federal Rules of Civil Procedure governs a district court's analysis of the fairness of a settlement of a class action. *See* Fed. R. Civ. P. 23(e). A court may approve the parties' settlement only after it determines that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Rule 23(e)(2), which was amended as of December 1, 2018, provides that a district court should approve a proposed settlement after considering several factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of the proposed award of attorney's fees, including timing of payment, and (iv) any other agreement made in connection with the Settlement; and (D) the proposal treats Class Members equitably relative to each other.

When the Rule was amended, the Advisory Committee recognized that the various

Circuits had previously generated their own lists of factors to consider in determining whether a settlement is fair, reasonable, and adequate.  In the Ninth Circuit, those factors included: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026.  The Committee has clarified that this new list of factors does not "displace" existing factors, but instead aims to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Adv. Cmt. Note R. 23.

An evaluation of these factors here confirms that both the procedure used in negotiating the Settlement and the substance of the resulting Settlement are fair, reasonable, and adequate, and thus merit final approval.[4]

**A.    The Rule 23(e)(2) and (3) factors support final approval.**

### 1.    Rule 23(e)(2)(A): the Class Representatives and Class Counsel have vigorously represented the Class.

As amended, Rule 23(e) requires a Court to ensure that in a proposed settlement, "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ.

---

[4] In evaluating the factors, the Court should be mindful that, as a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *see also* 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002) (same; collecting cases).  The Ninth Circuit favors compromise and settlement of complex class actions, *see, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1061 (N.D. Cal. 2017), and Courts are to give "proper deference to the private consensual decision of the parties" and limit inquiry to whether "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

P. 23(e)(2)(A).  Considerations at this stage can include "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases," which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Adv. Cmt. Note R. 23.  "These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings."  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

The Parties engaged in extensive motion practice and completed fact discovery and expert discovery. This discovery included: Fed. R. Civ. P. 26(a) initial disclosures; production by AHM and its affiliates of more than 20,000 pages of documents; production of 3,000 pages of Plaintiff documents; almost 67 discovery requests propounded by AHM to Plaintiffs; over a dozen depositions taken or defended by Plaintiffs; multiple depositions and vehicle inspections taken by AHM; and five expert declarations.  *See* ECF No. 194 at 10. *See also LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 25, 2013) (noting presence of discovery supports conclusions that the plaintiffs were sufficiently informed during negotiations); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming final approval where "Class Counsel conducted significant investigation, discovery and research" and "had worked with damages and accounting experts throughout the litigation").  Thus, the Parties had a full opportunity to assess the strengths and weaknesses of the claims and make an informed decision about settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citation omitted) (holding that, regardless of form, the parties need only "sufficient information to make an informed decision about settlement"); *LaGarde*, 2013 WL 1283325, at *7 (holding that parties were sufficiently informed where they "did engage in some motion practice that . . . provided the parties with a better understanding of the information available to the opposing side").  There can be no doubt that the Class Representatives and Class Counsel have vigorously represented the Class.

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

### 2.   Rule 23(e)(2)(B): the Settlement resulted from good faith, informed, arm's-length negotiations.

Under Rule 23(e)(2)(B), the Court considers whether the Settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B).  The Court considers the "conduct of the negotiations."  Adv. Cmt. Note R. 23.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."  *Id.*; *see also Fed. Ins. Co. v. Caldera Med., Inc.*, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) (citation omitted) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (quoting *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)) ("[T]he district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties.").  Additionally, the Court may look at "the treatment of any award of attorneys' fees, with respect to both the manner of negotiating the fee award and its terms."  Adv. Cmt. Note R. 23.  A presumption of fairness attaches when the settlement resulted from arm's-length negotiations.  *See, e.g.*, *Mendez v. C-Two Grp., Inc.*, 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017); *Bower v. Cycle Gear, Inc.*, 2016 WL 4439875, at *5 (N.D. Cal. Aug. 23, 2016) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.") (citation omitted).  The presumption is confirmed here.

As noted above, the Settlement was reached only after Judge Tevrizian worked extensively with the Parties.  Judge Tevrizian previously certified that the Settlement was the product of "arm's length, spirited, prolonged, and difficult" negotiations.  ECF No. 194-9 at ¶ 7; *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (advising that "the involvement of a neutral . . . mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

Further, there is no indicia of collusion here, as there is no clear sailing agreement or

reverter present.  The Settlement was also designed to ensure that attorneys' fees will not diminish the benefits awarded to Class Members under the settlement—as any attorneys' fees will be paid "separate and apart from any relief provided to the Settlement Class." Agreement, ¶ 5.5.  Importantly, the Parties did not begin negotiating attorneys' fees until after all material settlement benefits for the Class were negotiated.  ECF No. 194 at 13-14. Matt Decl., ¶ 8.  As this Court previously confirmed, "this settlement method circumscribes the potential collusive effect of settlement agreements."  ECF No. 197 at 10;[5] *see also Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreement on fees and expenses reasonable where "[o]nly after agreeing upon proposed relief for the Class Members, did the parties discuss attorneys' fees, expenses, and costs"); *Rodriguez v. Farmers Ins. Co. of Ariz.*, 2013 WL 12109896, at *5 (C.D. Cal. Aug. 4, 2013) (same).

### 3. The relief under the Settlement balances the risks and expense of continued litigation with the benefits being offered to Class Members, thereby satisfying Rule 23(e)(2)(C)(i)-(iii).

Under Rule 23(e)(2)(C)(i), courts in the "Ninth Circuit evaluate 'the strength of the plaintiffs' case; … complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *Extreme Networks*, 2019 WL 3290770, at *8 (quoting *Hanlon*, 150 F.3d at 1026).  In this case, AHM vigorously defended itself and denied all liability from the outset.  *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case.").  And while Plaintiffs are convinced that their claims are strong on the merits, they also recognize that there are substantial risks involved in further litigation and that it was uncertain whether the Settlement Class would be able to obtain a better outcome through continued litigation and

---

[5] Notably, Class Counsel paid for an economic valuation of the extended warranty benefit to Class Members to aid the Court in assessing Plaintiffs' Fee Petition in relation to concrete economic benefits flowing to the Settlement Class, and Class Counsel are not seeking to be reimbursed for this cost (nor are they seeking to be reimbursed for their share of the costs of the independent expert).

Case No.:  2:19-cv-5984-RGK(ASx)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

trial.  For example, it is questionable whether lessees would be entitled to any relief given the Court's arbitration ruling.  ECF No. 194 at 21.  In addition, Plaintiffs weighed the risk that AHM's Rule 23(f) Petition could succeed, and they analyzed the legal and logistical consequences of severing and transferring multiple Plaintiffs to their home districts. Plaintiffs also considered that, with continued litigation, no matter how strong the claims, the risk that any potential recovery is not guaranteed and could still be years away.  In contrast, the Settlement provides excellent relief that will be made available to Class Members as soon as possible.  Matt Decl., ¶ 9.  Accordingly, the inherent risk of presenting such a complex matter to a jury at trial and that "risk of continued litigation balanced against the certainty and immediate recovery from the Settlement" strongly favors approval.  *In re Ominivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007).

Rule 23(e)(2)(c)(ii) asks whether the methods of distribution and claims processing are effective.  Here, Class Members will receive *automatic* benefits (like the warranty extension and Infotainment System Online Resource).  The warranty extension benefit alone is valued at $10.5 million.  Bowron Decl.; ECF No. 200.  Additionally, eligible Class Members will also receive two free years of AcuraLink Security Service if AHM service records indicate they made more than one visit for an Infotainment System not resolved during the initial warranty service visit.  And Class Members can file claims for added monetary relief in the form of reimbursement of qualifying out-of-pocket expenses.  Matt Decl., ¶ 10.  As the Court has preliminarily concluded, "the recovery obtained [by Class Members] is substantial and fair."  ECF No. 197 at 11.

The Court must also assess the terms of any proposed award of attorneys' fees under Rule 23(e)(2)(c)(ii).  As discussed, the Settlement provides that AHM will pay Class Counsel's attorneys' fees and costs separately, without any reduction of the Class Member recoveries, there will be no reverter to AHM, and the Court alone will decide attorneys' fees and costs.  As discussed in Class Counsel's Fee Petition, Class Counsel are requesting an award of reasonable fees and expenses.

The Rule 23(e)(2) factors are satisfied.

**4.      Rule 23(e)(2)(C)(iv): there are no undisclosed side agreements.**

The Parties confirm that to date there are no identifiable agreements pursuant to Rule 23(e)(3).

**5.      Rule 23(e)(2)(D): the Settlement treats all Class Members equitably relative to one another.**

Rule 23(e)(2)(D) requires that the Court consider whether "the proposal treats Class Members equitably relative to each other." The crux of the inquiry is whether the agreement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted); *see also* Adv. Cmt. Note R. 23 (This factor is intended to ensure that a proposed settlement does not include "inequitable treatment of some class members vis-a-vis others."). By design, the Settlement does not grant preferential treatment to any segment of the Settlement Class. As noted above, each Class Member will receive the same automatic benefits under the Settlement and have the same opportunity to file claims for any additional relief for which they are eligible. ECF No. 194 at 23. Further, beyond the requested incentive awards, which are either well within the range generally awarded in this District or connected to a Class Representative's rejection of AHM's Rule 68 offer (*see* ECF No. 200), this Settlement does not grant the Class Representatives any preferential treatment. The Settlement, therefore, does not favor any segment of Class Members over any other, which supports final approval.

## B.      Adequate Notice has been provided under Rule 23(c)(2)(B) and 23(e)(1).

The Court "must direct to Class Members the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2), and, upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[,]" Fed. R. Civ P. 23(e)(1)(B). "A binding settlement must provide notice to the class in a 'reasonable manner' and otherwise be 'fair, reasonable, and adequate.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Actual notice is not required, but the notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059

at *5 (N.D. Cal. Jan. 23, 2017).

The Notice Plan here satisfies both Rule 23 and due process.  A dedicated website has been established, as well as a toll-free telephone number staffed during business hours with live operators.  ECF No. 194 at 19.  As will be described in a forthcoming declaration from AHM (due for filing on November 22), a robust Long Form Notice with Claim Forms was sent by first class mail (and, where relevant, email) directly to Settlement Class Members.  The Class Notice clearly identifies the nature of this litigation, the definition of the Settlement Class, the terms of the Settlement, the benefits of the Settlement, and how Class Members could obtain these benefits.  The Notice also directs Class Members to more information on the Settlement Website and/or the toll-free number and noted the date, time, and place of the Final Approval Hearing. The Notice also outlines the Settlement Class Members' rights, the scope of release that binds Class Members who do not opt-out, the consequences of pursuing different legal options made available to Class Members, how to opt-out or object to the Settlement, and the opt-out and objection deadlines.  The Notice here contains all the information necessary for Class Members to make informed decisions about their participation in the Settlement.  *See, e.g., Hartless v. Clorox Co.*, 273 F.R.D. 630, 636 (S.D. Cal. 2011) (granting final approval of class action settlement where the notice contained a description of the lawsuit and settlement relief, a description of Class Members' rights and the settlement website and toll-free number).

**C.     Plaintiffs have complied with all additional approval factors.**

> **1.     Class Counsel's view of the Settlement should be afforded substantial weight.**

Courts within the Ninth Circuit give weight to the view of experienced counsel and the response of Class Members.  *See, e.g.*, *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).  As noted in Plaintiffs' Fee Motion (ECF No. 200), Class Counsel has extensive experience representing plaintiffs and classes in complex litigation, and Class Counsel unanimously support this Settlement.  "Class counsel's views

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

that the settlement is a good one is entitled to significant weight." *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *22 (N.D. Cal. Mar. 21, 2019) (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)); *Hanlon*, 150 F.3d at 1026; *Mendoza*, 2017 WL 342059, at *7 (holding that the recommendation of experienced counsel in consumer class actions is entitled to a presumption of reasonableness).

### 2.    Class Members have generally reacted positively to the Settlement.

Courts within the Ninth Circuit also give weight to the response of class members. *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *Nat'l Rural Telecomms.*, 221 F.R.D. at 528. While the deadline to request an opt-out or file an objection is November 15, 2021 (a week away), thus far, the response by the Settlement Class has been overwhelmingly positive.[6]  Only 15 Class Members have opted out of the Settlement, and only one has lodged an objection.[7]

These figures provide powerful evidence of the Settlement's fairness. *See, e.g., Churchill Vill., L.LC. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement with 45 objections and 500 opt-outs from class of 90,000 members); *Glass v. UBS Fin. Serv. Inc.*, 2007 WL 221862, at *5 (N.D. Cal. Jan 26, 2007) (approving settlement with 2% opt-out rate); *Wren v. RGIS Inventory Specialists*, 2011 1230826, at *11 (N.D. Cal. Apr. 1 2011) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the Class Members").

---

[6] Pursuant to the schedule approved by the Court, Plaintiffs will submit updated information regarding the final reaction of Class Members and respond to objections on November 15, 2021.

[7] To date, the only filed Objection is from Mr. Neil Schenkel.  Class Counsel contacted Mr. Schenkel on November 3, 2021, to discuss his Objection. Class Counsel will substantively respond to Mr. Schenkel's objection (and any other objections that may be filed by the deadline) on the Court-ordered deadline of November 15, 2021.

# VI.   CONCLUSION

The Settlement is fair, reasonable, and adequate under Ninth Circuit authority. Plaintiffs respectfully request that the Court grant the motion and approve the Settlement.


Dated:  November 8, 2021                     HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Sean R. Matt*
_____

Steve W. Berman (*pro hac vice*)
Sean R. Matt (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington  98101
Telephone:   (206) 623-7292
Facsimile:    (206) 623-0594
*steve@hbsslaw.com*
*sean@hbsslaw.com*

Christopher R. Pitoun (SBN 290235)
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:   (213) 330-7150
Facsimile:    (213) 330-7152
*christopherp@hbsslaw.com*

Jeffrey S. Goldenberg (*pro hac vice*)
Todd Naylor (*pro hac vice*)
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
*jgoldenberg@gs-legal.com*
*tnaylor@gs-legal.com*

Case No.:  2:19-cv-5984-RGK(ASx)

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT